

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

TYRONE HENDERSON,
CHARLES TAYLOR, and
WILLIAM WILES,
on behalf of themselves and
all others similarly situated,

          Plaintiffs,

v.

ACXIOM RISK MITIGATION, INC.,
ACXIOM INFORMATION SECURITY
   SERVICES, INC., and
ACXIOM CORPORATION,

          Defendants.

Civil Action No. 3:12CV589

CLASS ACTION

JURY TRIAL DEMANDED

## PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT

COME NOW the Plaintiffs, Tyrone Henderson, Charles Taylor, and William Wiles, on behalf of themselves and all others similarly situated and for their Complaint, state as follows:

## I.   INTRODUCTION

1.    This is a consumer class action based upon Defendants Acxiom Risk Mitigation Inc., Acxiom Information Security Services, Inc., and Acxiom Corporation's (collectively, "Acxiom") widespread violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 – 1681x ("FCRA"). Acxiom is regulated as a consumer reporting agency ("CRA") under the FCRA. The rights of consumers to have notice of, inspect, and correct consumer information sold about them are at the heart of the FCRA. Acxiom deprives consumers of these rights by willfully failing to comply with the FCRA and refusing to follow the law's requirements when it compiles and then sells information about them to third parties.

2.     The Defendants and their affiliate companies operate as a single, unified consumer reporting agency ("CRA") that compiles and maintains files on consumers on a nationwide basis. Defendants maintain an extensive database of public records regarding consumers, from which they sell consumer reports to employers and to third parties who use or rebrand the reports and sell them under different names.

3.     In compiling information and later generating consumer reports, Acxiom uses the identical database sources and information to create reports that it concedes are governed by the FCRA as those it claims are not so governed. On information and belief, Acxiom places data that it uses for supposed non-FCRA-governed products within one or more entities while placing data that it uses for FCRA-governed products into other entities. When Acxiom creates consumer reports, however, it uses data from all of these sources—FCRA-governed and supposedly non-FRCA-governed. This supposed partitioning of data, however, is ineffective to shield Acxiom from application of the FCRA because under government regulations and the prevailing caselaw, a company cannot use its organizational structure to avoid application of the FCRA.

4.     The FCRA therefore applies to the majority of Acxiom products, even though Acxiom represents to users of these products and consumers who are the subject of the reports Acxiom creates that the FCRA does not apply. As a result, Acxiom deprives consumers of rights afforded to them by the FCRA to obtain a copy of and review the information that Acxiom sells about them, to dispute and to have corrected any inaccurate or incomplete information that Acxiom is reporting, and to require that Acxiom maintain reasonable procedures to assure the maximum possible accuracy of that information before it sells it to any third party in a consumer report.

## II. JURISDICTION AND VENUE

5.   Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

6.   Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

## III. PARTIES

7.   Plaintiff Tyrone Henderson is an adult individual and citizen of the Commonwealth of Virginia who resides within the Eastern District of Virginia. Mr. Henderson is a "consumer" as that term is defined in the FCRA.

8.   Plaintiff Charles Taylor is an adult individual and citizen of the Commonwealth of Virginia who resides within the Eastern District of Virginia. Mr. Taylor is a "consumer" as that term is defined in the FCRA.

9.   Plaintiff William Wiles is an adult individual and a "consumer" as that term is defined in the FCRA.

10.   Defendant Acxiom Risk Mitigation, Inc. is a Colorado corporation with its principal place of business at 12303 Airport Way, Suite 300, Broomfield, Colorado 80021. Acxiom Risk Mitigation, Inc. is a consumer reporting agency that regularly conducts business in the Eastern District of Virginia.

11.   Defendant Acxiom Information Security Services, Inc. is an Arkansas corporation and is a consumer reporting agency that regularly conducts business in the Eastern District of Virginia. It is presently owned by Sterling Infosystems, Inc, which is based in New York.

12.   Defendant Acxiom Corporation is a Delaware corporation and is a consumer reporting agency that regularly conducts business in the Eastern District of Virginia.

## IV.   FACTUAL ALLEGATIONS

### A.   Defendants Operated as a Unified Consumer Reporting Agency

13.   Prior to January 2012, Defendants operated as a unified consumer reporting agency. They collectively maintained and collected information from various third party private and public data sources regarding the Plaintiffs and the putative class that bore on consumer "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility" for employment and other benefits and/or for the purposes detailed at 15 U.S.C. § 1681b.

14.   As Acxiom explained in its 2011 Annual Report: "In fiscal 2011 our business segments consisted of Information Services and Information Products. The Information Services segment includes the Company's global lines of business for CDI, Multichannel Marketing Services, Infrastructure Management Services and Consulting Services. The Information Products segment is comprised of the Company's global Consumer Insights and Risk Mitigation Products lines of business and the U.S. Background Screening Products line of business."

15.   Defendants then would access and use the consumer reporting purposed data only singularly collected and maintained for a variety of business segments. Acxiom Information Security Services, Inc. would repackage the data and sell it as employment purposed consumer background checks.

16.   Defendants used the same source database for the employment background checks Acxiom would concede would be governed by the FCRA they did for other products sold that Defendants would deny are governed by the FCRA. By merging the collection and data

4

maintenance functions for both "FCRA governed" and other end products, Defendants in fact were obligated to treat all data and all reports derived from it as FCRA restricted.

17.    In January 2012, Acxiom Information Security Services, Inc. was sold to Sterling Infosystems, Inc.

18.    Hereafter, and based on these allegations, Plaintiffs refer to Defendants collectively as "Acxiom."

**B.    Acxiom Fails To Provide Consumers With All Information In Their Factual Data Files, And Fails To Report Consumer Information Accurately**

19.    Acxiom sells consumer reports about millions of consumers annually.

20.    Acxiom's reports contain vast amounts of information about an individual consumer that Acxiom has assembled and compiled, including information about where the consumer resides, the consumer's age, social security number, date of birth, employer and employment history, economic profile data regarding the consumer's home and neighboring properties, whether the consumer has filed for bankruptcy, has any liens or judgments, public records, UCC filings, professional licenses, accident history, recreational permits, and general information about the consumer's assets and property.

21.    By regularly selling such reports for a fee with the anticipated or expected use of such reports by the entities referenced above, Acxiom operates as a "consumer reporting agency" ("CRA") "that compile[s] and maintain[s] files on consumers on a nationwide basis," and a national specialty consumer reporting agency ("NSCRA") as defined by 15 U.S.C. §§ 1681a(f), a(p) and a(w), respectively.

22.    Among other things, the FCRA regulates the collection, maintenance, and disclosure of consumer-report information by CRAs and NSCRAs.

23.     The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010).

24.     In furtherance of that goal, the FCRA mandates that each CRA provide consumers with access to the information sold about them to third parties and also provide consumers with an opportunity to review and dispute any inaccuracies in their credit files. *See* 15 U.S.C. §§ 1681g(a) and 1681i(a).

25.     Specifically, each CRA is required by the FCRA to provide consumers with copies of their consumer files upon request. *See* 15 U.S.C. § 1681g(a).

26.     The term "file," when used in connection with information on any consumer, means "*all* of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." *See* 15 U.S.C. § 1681a(g) (emphasis added).

27.     "Congress clearly intended the protections of the FCRA to apply to all information furnished or that might be furnished in a consumer report" and an FCRA "'file' denotes all information on the consumer that is recorded and retained by a consumer reporting agency that might be furnished, or has been furnished, in a consumer report on that consumer." *Cortez*, 617 F.3d at 711–12 (citing *Gillespie v. Trans Union*, 482 F.3d 907, 909 (7th Cir. 2007)).

28.     After obtaining and reviewing a copy of their files, consumers have the right to dispute any inaccurate information in their credit files, and to have errors corrected by the CRA, usually within 30 days of their disputes. *See* 15 U.S.C. § 1681i(a).

29.    Separately from its failure to provide consumers with their FCRA rights to scrutinize the information Acxiom sells about them for accuracy, Acxiom also fails to maintain reasonable procedures to assure the maximum possible accuracy of the information it sells about consumers in the first place. *See* 15 U.S.C. § 1681e(b).

**C.    When Selling Reports for Employment Purposes, Acxiom Fails to Follow FCRA Strictures**

30.    Acxiom, through Acxiom Information Security Services, Inc., also sells consumer reports to employers for employment purposes, which means the report is "used for the purpose of evaluating a consumer for employment, promotion, reassignment or retention as an employee." 15 U.S.C. § 1681a(h).

31.    When a CRA sells a report for employment purposes and that report contains public-record information that is "likely to have an adverse effect upon a consumer's ability to obtain employment," the FCRA mandates that the CRA take one of two actions:

   a)    notify the consumer, "at the time" it provides the report to the user, that it is providing the report to the employer; or

   b)    maintain strict procedures to ensure that the public-record information in the report is complete and up to date.

15 U.S.C. § 1681k(a).

32.    On information and belief, Acxiom takes the first action—sending a notice in the mail—for all consumers on whom it sells reports for employment purposes. Also on information and belief, Acxiom does not attempt to ensure that the information it reports is complete and up to date or otherwise follow the alternative of "strict procedures" for FCRA compliance.

33.    Acxiom's notice process does not achieve the result that the FCRA envisions— that is, the employer and consumer both see the report at nearly the same time.

34.     Instead, based on information and belief, Acxiom provides the employer with the purchased report nearly instantaneously (or, at least, a few minutes after the employer orders it) over the Internet, while the notice letter that is supposed to go to the consumer "at the time" the employer receives the report is mailed some days later.

35.     Thus, in most instances, the employer obtains its copy of the Acxiom report and has made its negative hiring decision and communicated that decision to the consumer before Acxiom's FCRA-notice letter ever arrives.

36.     The FCRA also imposes requirements on parties that use consumer reports to take adverse actions against employees or applicants. In that context, an adverse action means "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee." 15 U.S.C. § 1681a(k)(1)(B)(ii).

37.     In some instances, Acxiom makes a hiring decision for an employer based on an employer's hiring criteria provided to Acxiom. The employer essentially abdicates its hiring responsibility to Acxiom, so Acxiom evaluates the applicant's background on behalf of the employer and then makes the hiring decision. If the applicant is not hired, Acxiom takes an FCRA-recognized adverse action against that applicant.

38.     The FCRA mandates that a person taking an adverse action based in part on the contents of a consumer report must, *before* taking the adverse action, provide the consumer with a copy of the report on which the adverse decision is based and a written description of the consumer's FCRA rights. 15 U.S.C. § 1681b(b)(3)(A). The prevailing caselaw in this area proscribes a five-day period as a reasonable amount of time between providing the consumer with these documents and actually taking the adverse action.

39.     When Acxiom makes hiring decisions on behalf of employers, it does not follow Section 1681b's strictures. While Acxiom may mail the consumer a pre-adverse action letter, Acxiom has in reality already concluded that the consumer cannot be hired and is sending the notice in an ineffective attempt to comply with Section 1681k's notice requirement.

**D.     Acxiom Sells Reports Without Having an FCRA Purpose for Doing So**

40.     The FCRA restricts the sale of consumer reports by CRAs for only enumerated purposes.

41.     Those purposes include in response to the consumer's instructions, for use in credit transactions, for employment purposes, in the underwriting of insurance, and in determining the consumer's eligibility for a license, to name a few. *See* 15 U.S.C. § 1681b(a).

42.     The FCRA sets forth specific requirements CRAs must follow to justify selling a report to a user.

43.     When issuing reports for employment purposes, for example, CRAs must obtain specific certifications from users that include asserting that the user has obtained the consumer's permission to obtain the report before doing so. 15 U.S.C. § 1681b(b)(1), (2).

44.     By whatever system it uses, Acxiom fails to properly establish that users have an FCRA purpose for obtaining reports from Acxiom.

**E.     The Experiences Of The Representative Plaintiffs**

**(1)     Plaintiff Tyrone Henderson**

45.     Tyrone Henderson applied for a job at Wal-Mart in February 2009, which required he submit to a background check as a condition of employment.

46.     In or about March 2009, Wal-Mart purchased a background check on Henderson from Acxiom, for an employment purpose.

47.     Immediately thereafter and in accordance with Defendant's standard procedures, Acxiom furnished to both Wal-Mart and to itself, as the agent of Wal-Mart and the party responsible for making the actual hiring decision for Wal-Mart.

48.     Unbeknownst to Henderson, Acxiom used the consumer report it obtained and/or created to take an adverse-employment action against him. As authorized under their contract with Wal-Mart, Acxiom applied Wal-Mart's pre-defined hiring criteria and coded Mr. Henderson as ineligible for employment. Acxiom then notified Henderson directly that he was not hired. Thereafter, Acxiom informed Wal-Mart of Acxiom's decision and action.

49.     Acxiom's decision to code Henderson as ineligible for hire was based upon several "hits" attributed to Henderson and furnished in his Acxiom consumer report. These hits include purported felony conviction public records from Westmoreland Count, Pennsylvania.

50.     The Westmoreland records, however, did not belong to Plaintiff Henderson. Rather, they regarded an unrelated man with a similar name, but entirely different Social Security Number.

51.     In 2009 and again in 2011, Henderson wrote to Acxiom and requested a full copy of his file, including all inquiries made to Acxiom and also disputing the inaccurate Westmoreland County records.

52.     In 2009, Acxiom provided a report that they represented to be a full copy of Henderson's file held or maintained by Acxiom. When Henderson wrote again in 2011, Acxiom ignored his request and has, to date, never responded.

53.     In 2012, through Counsel's investigation of this case, Henderson has learned for the first time that Acxiom maintains substantial information regarding consumers beyond that which it disclosed in its 2009 report to Henderson. Upon information and belief, Henderson

alleges that such information includes, by example only and without limitation: financial information, health history and medical information, marketing data, buying patterns, property ownership, and other substantial and otherwise private information regarding Henderson.

54.     Upon information and belief, Henderson also alleges that Acxiom's supposed "full" file provided to Henderson also omitted a list of third parties to whom information about Henderson had been furnished.

55.     Acxiom knew or should have known about its legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission.

56.     Acxiom obtained or had available substantial written materials that apprised it of its duties under the FCRA.

57.     Despite knowing of these legal obligations, Acxiom acted consciously in breaching its known duties and deprived Henderson and other members of the Classes of their rights under the FCRA.

58.     Henderson alleges that Acxiom's conduct as alleged herein was consistent with its established and systematically executed procedures and policies for compliance with the FCRA.

**(2)   Plaintiff Charles Taylor**

59.     Charles Taylor applied for employment on October 6, 2011 at the Petersburg, Virginia office of DistTech, a trucking company based in North Canton, Ohio.

60.     Mr. Taylor's application was faxed to the Ohio office and Mr. Taylor was told to call back on Friday, October 14, 2011.

61.     On around October 12, 2011, DistTech purchased a consumer report on Taylor, for employment purposes, from Acxiom.

62.     When Mr. Taylor placed the call, he was told by a DistTech representative that he "was not hireable" because of information contained in his background report performed by Acxiom.

63.     Acxiom did not send Mr. Taylor a copy of his background report or provide other notice or disclosures at the time that it sold the report to DistTech.

64.     On October 19, five days after DistTech told Taylor that it would not hire him because of his background, Taylor received the FCRA-mandated notice letter from Acxiom, alerting Taylor that Acxiom had provided DistTech with a report on him for employment purposes.

65.     Acxiom's cover letter that accompanied Mr. Taylor's report is dated October 13, 2011.

66.     The Acxiom report on Mr. Taylor was inaccurate because it lists him as a fugitive in his criminal history, but he has never been charged as such.

67.     Mr. Taylor contacted Acxiom to dispute the inaccuracy, but Acxiom took no action whatsoever to reinvestigate Mr. Taylor's criminal history.

**(3)     Plaintiff William Wiles**

68.     William Wiles is employed by Service King Collision Repair and was a manager at one of its locations from March 16, 2009 until August 25, 2010.

69.     Mr. Wiles has never applied to, nor been employed by, Allstate.

70.     When he applied for work at Service King, Mr. Wiles signed a document that permitted Service King to procure a consumer report on him for employment purposes. That document did not authorize anyone else to obtain such reports.

71.     Allstate used the economic influence it has over Service King to convince Service King to provide Allstate with the identifying information of all of Service King's management-level employees.

72.     Allstate used this information to obtain background reports, from Acxiom, on Service King employees, despite the fact that it had no authorization to do so.

73.     On August 20, 2010, Allstate ordered—from Acxiom—a consumer report on Mr. Wiles, indicating to Acxiom that the report was "for employment purposes." Later, Mr. Wiles received a letter from Acxiom confirming that Allstate ordered the report and that the report was supposedly "for employment purposes."

74.     Mr. Wiles' consumer report contained several criminal convictions that do not belong to him, the result of an identity theft, from Allegheny County, Pennsylvania.

75.     Based on these criminal convictions, Allstate contacted Service King and stated that Allstate would not send any of its claims-service business to Service King so long as Mr. Wiles remained employed as a manager.

76.     Fearing the loss of Allstate's business, Service King chose to heed Allstate's ultimatum, and demoted Mr. Wiles from his position as manager, cut his salary, and reassigned him to another Service King location.

77.     Mr. Wiles is aware that Allstate orders consumer reports on Service King managers at least every seven months, and Mr. Wiles is also aware of other Service King employees that have been demoted or terminated as a result of Allstate's refusal to send business to locations whose managers' backgrounds do not meet Allstate's standards.

78.     On information and belief, Allstate engages in this conduct nationwide, with all of its auto-repair-service providers.

79.     Several days after his demotion, Mr. Wiles persuaded Service King to provide him a copy of the consumer report that was the basis of Allstate's decision.

80.     Mr. Wiles received his FCRA-mandated notice letter from Acxiom on August 28, eight days after Acxiom provided the report to Allstate and several days after the decision had been made to demote Mr. Wiles. On information and belief, Acxiom uses an automated system to compile the necessary information and create these notice letters for mailing.

81.     Mr. Wiles contacted Acxiom on August 26 to dispute the convictions because they resulted from an identity theft, and Acxiom demanded fingerprint evidence from Mr. Wiles in order to complete its reinvestigation. Acxiom completed this reinvestigation on September 27, outside of the FCRA's 30-day window in which to conduct the reinvestigation. After conducting two reinvestigations, Acxiom refused to change the contents of Mr. Wiles' report.

82.     Even though he brought the inaccurate convictions to Service King's attention, Service King refused to go against Allstate's demand and reinstate Mr. Wiles to his former position. Had Mr. Wiles remained in management at Service King, he would have been awarded shares in the company that are currently valued at between $400,000 and $500,000. Because he was demoted, however, Mr. Wiles was precluded from obtaining these shares in Service King.

83.     As of result of Acxiom's conduct, the Plaintiffs have suffered damages in the form of (a) lost employment, (b) lost wages and equity, (c) lost credit opportunity, (d) harm to reputation, and (e) emotional distress.

84.     At all times pertinent hereto, Acxiom was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of Acxiom.

85.     At all times pertinent hereto, the conduct of Acxiom, as well as that of its agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal laws and the rights of the Plaintiffs.

## V.     CLAIMS FOR RELIEF

### Count I (Class Action) – Violation of 15 U.S.C. § 1681g(a) – The "1681g" Class

86.     Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set forth fully herein.

87.     Plaintiff Tyrone Henderson brings this action on behalf of the following Class, of which he is a member:

> All persons residing in the United State of America and its Territories (a) about whom any Acxiom entity had maintained a consumer file, and (b.) who requested their consumer file from any Acxiom entity, (c) within five years preceding the filing of this Complaint and continuing through the conclusion of this action.

88.     **Numerosity.** FED. R. CIV. P. 23(a)(1). Upon information and belief, Plaintiff alleges that the members of the Class are so numerous that joinder of all is impractical. The names and addresses of members of the Class are identifiable through documents maintained by Acxiom, and members of the Class may be notified of the pendency of this action by published and/or mailed notice.

89.     **Predominance.** FED. R. CIV. P. 23(a)(2). Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members. They include, without limitation: whether Acxiom indeed provides consumers with all of the information it possesses about them when they request their Acxiom file; whether Acxiom's partitioning of information protects some of this information from the application of the FCRA to it; whether Acxiom's violations of the FCRA were willful; and what amount of statutory and punitive damages is appropriate for this alleged violation of the FCRA.

90. **Typicality.** FED. R. CIV. P. 23(a)(3). Plaintiff's claims are typical of the claims of the Class members. Plaintiff is entitled to relief under the same causes of action as the other members of the Class. Without limitation, the procedures of Acxiom were uniform and systemic. The reports obtained and used regarding Plaintiff and the circumstances for which such reports were furnished was uniform and typical of the facts for each member of the Class.

91. **Adequacy.** FED. R. CIV. P. 23(a)(4). Plaintiff is an adequate representative of the Class because his interests coincide with, and are not antagonistic to, the interests of the members of the Class he seeks seek to represent, he has retained counsel competent and experienced in such litigation, and intends to prosecute this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiff and his counsel.

92. **Superiority.** FED. R. CIV. P. 23(b)(3). Questions of law and fact common to the Class predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages suffered by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Acxiom's conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. In fact, because of the manner in which Acxiom has violated the FCRA, very few Class members—and almost none who are unrepresented by counsel—will ever know that they have been subject to an Acxiom report. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Acxiom's conduct. By contrast, the class action

device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

93.    **Injunctive Relief Appropriate for the Class.** Class certification is appropriate because Acxiom has acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiffs and the Class Members. FED. R. CIV. P. 23(b)(2).

94.    The FCRA obligates CRAs like Acxiom to furnish to a requesting consumer "all information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a).

95.    In addition to the employment-related information that Acxiom provides third parties (like Wal-Mart in the case of Plaintiff Henderson), Acxiom collects and maintains a trove of additional information regarding consumers such as income, financial data, buying activity, purchase histories, home purchases, births, marriages, divorces, and other demographic data, to name a few examples.

96.    When Mr. Henderson requested his file from Acxiom, all Acxiom provided was the identical information it provided Wal-Mart and withheld everything else.

97.    Acxiom's failure to disclose all of the information it possesses when Plaintiff Henderson properly requested that information violated 15 U.S.C. § 1681g(a)(3) as to him and other members of the Section 1681g Class.

98.    The conduct, action, and inaction of Acxiom was willful, rendering Acxiom liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

99.     Plaintiff and other members of the putative Class are entitled to recover costs and attorneys' fees as well as appropriate equitable relief from Acxiom in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

100.    As a result of these FCRA violations, Acxiom is liable to Plaintiff and to each Section 1681g Class Member, for statutory damages from $100 to $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and for attorneys' fees and costs pursuant to § 1681n.

101.    In the alternative, if the Court finds that such violation was merely negligent, Plaintiffs reserve the right to seek class certification of a liability-only class pursuant to Fed. R. Civ. P. 23(b)(3).

### Count II (Class Action) – Violation of 15 U.S.C. § 1681k – The "1681k" Class

102.    Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set forth fully herein.

103.    Plaintiffs Charles Taylor and William Wiles bring this action on behalf of the following Class, of which they are members:

> All natural persons residing within the United States and its Territories who (a) were the subject of an Acxiom report sold to a third party, (b) that was furnished for an employment purpose, (c) that contained at least one record of a criminal conviction or arrest, civil lien, bankruptcy or civil judgment obtained directly from a source other than the courthouse or governmental entity that maintains such record (i.e. information from a non-governmental database), (d) within five years preceding the filing of this Complaint and continuing through the conclusion of this action, and (e) to whom Acxiom did not place in the United States mail postage pre-paid, on the day it furnished any part of the report, a written notice that it was furnishing the subject report and containing the name of the person that was to receive the report.

104.    **Numerosity.** FED. R. CIV. P. 23(a)(1). Upon information and belief, Plaintiffs allege that the members of the Class are so numerous that joinder of all is impractical. Acxiom

sells criminal record history information to thousands of businesses throughout the country, and its reports to such businesses and the disclosures it provides to consumers in writing are standardized, form documents, produced by the same practices and procedures applicable to all subjects of the reports. The names and addresses of members of the Class are identifiable through documents maintained by Acxiom, and members of the Class may be notified of the pendency of this action by published and/or mailed notice.

105. **Predominance.** FED. R. CIV. P. 23(a)(2). Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members. They include, without limitation: whether Acxiom willfully violated section 1681k of the FCRA by failing to notify consumers contemporaneously of the fact that criminal record information is being sent to prospective employers; whether Acxiom willfully violated section 1681k of the FCRA by failing to maintain strict procedures to insure that the information is complete and up to date; and, what amount of statutory and punitive damages is appropriate for this alleged violation of the FCRA.

106. **Typicality.** FED. R. CIV. P. 23(a)(3). Plaintiffs' claims are typical of the claims of the Class members. Plaintiffs are entitled to relief under the same causes of action as the other members of the Class. Without limitation, Acxiom's procedures were uniform and systemic. The reports obtained and used regarding Plaintiffs and the circumstances for which such reports were furnished was uniform and typical of the facts for each member of the Class.

107. **Adequacy.** FED. R. CIV. P. 23(a)(4). Plaintiffs are adequate representatives of the Class because their interests coincide with, and are not antagonistic to, the interests of the members of the Class they seek seek to represent, they have retained counsel competent and.

experienced in such litigation, and intend to prosecute this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

108.    **Superiority.** FED. R. CIV. P. 23(b)(3). Questions of law and fact common to the Class predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages suffered by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Acxiom's conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. In fact, because of the manner in which Acxiom has violated the FCRA, very few Class members—and almost none who are unrepresented by counsel—will ever know that they have been subject to an Acxiom report. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Acxiom's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

109.    **Injunctive Relief Appropriate for the Class.** Class certification is appropriate because Acxiom has acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiff and the Class members. FED. R. CIV. P. 23(b)(2).

110.    In furnishing consumer reports for an employment purpose that contained adverse public records, Acxiom has uniformly elected not to attempt compliance with the "strict· procedures" option stated at FCRA section 1681k(a)(2).

111.    Accordingly, Acxiom was obligated pursuant to FCRA section 1681k(a)(1) to provide notice to consumers "at the time" it furnished the consumer report to the respective employer.

112.    Pursuant to section 1681n of the FCRA, Acxiom is liable for willfully violating FCRA section 1681k(a) by failing to notify consumers contemporaneously of the fact that adverse public and criminal record information is being provided to employers or prospective employers and otherwise comply with 15 U.S.C. § 1681k.

113.    The conduct, action, and inaction of Acxiom was willful, rendering Acxiom liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

114.    Plaintiff and other members of the putative Class are entitled to recover costs and attorneys' fees as well as appropriate equitable relief from Acxiom in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

115.    As a result of these FCRA violations, Acxiom is liable to Plaintiff and to each Class Member, for statutory damages from $100 to $1,000 pursuant to 15 U.S.C. §1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and for attorneys fees and costs pursuant to § 1681n.

116.    In the alternative, if the Court finds that such violation was merely negligent, Plaintiffs reserve the right to seek class certification of a liability-only class pursuant to Fed. R. Civ. P. 23(b)(3).

**Count III (Class Action) – Violation of 15 U.S.C. § 1681b(b)(3) – The "1681b" Class**

117.   Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set forth fully herein.

118.   Plaintiff Tyrone Henderson brings this action on behalf of the following Class, of which he is a member:

> All natural persons residing within the United States and its Territories who, beginning five years before the filing of this Complaint and continuing through the conclusion of this action, (a.) were the subject of an Acxiom report for the purpose of a new employment application and (b.) for whom, based in part on the contents of that report, Acxiom adjudicated the "hire or do not hire" employment decision on behalf of the employer.

119.   **Numerosity.** FED. R. CIV. P. 23(a)(1). Upon information and belief, Plaintiff alleges that the members of the Class are so numerous that joinder of all is impractical. The names and addresses of members of the Class are identifiable through documents maintained by Acxiom, and members of the Class may be notified of the pendency of this action by published and/or mailed notice.

120.   **Predominance.** FED. R. CIV. P. 23(a)(2). Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members. They include, without limitation: whether Acxiom took adverse-employment actions against Class Members; whether Acxiom provided Class Members with the appropriate FCRA notice before taking the adverse actions; whether Acxiom's violations of the FCRA were willful; and, what amount of statutory and punitive damages is appropriate for this alleged violation of the FCRA.

121.   **Typicality.** FED. R. CIV. P. 23(a)(3). Plaintiff's claims are typical of the claims of the Class members. Plaintiff is entitled to relief under the same causes of action as the other members of the Class. Without limitation, the procedures or failures of Acxiom were uniform

and systemic. The reports obtained and used regarding Plaintiff and the circumstances for which such reports were furnished was uniform and typical of the facts for each member of the Class.

122. **Adequacy.** FED. R. CIV. P. 23(a)(4). Plaintiff is an adequate representative of the Class because his interests coincide with, and are not antagonistic to, the interests of the members of the Class he seeks seek to represent, he has retained counsel competent and experienced in such litigation, and intends to prosecute this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiff and his counsel.

123. **Superiority.** FED. R. CIV. P. 23(b)(3). Questions of law and fact common to the Class predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages suffered by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Acxiom's conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. In fact, because of the manner in which Acxiom has violated the FCRA, very few Class members—and almost none who are unrepresented by counsel—will ever know that they have been subject to an Acxiom report. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Acxiom's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

124. **Injunctive Relief Appropriate for the Class.** Class certification is appropriate because Acxiom has acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiff and the Class members. FED. R. CIV. P. 23(b)(2).

125. The FCRA requires that any person "using a consumer report for employment purposes" who intends to take "an adverse action based in whole or in part on the report" must provide the consumer with a copy of the report on which the decision is based and a written description of the consumer's rights under the FCRA *before* taking such adverse action." 15 U.S.C. § 1681b(b)(3).

126. In this context, an "adverse action" includes "any . . . decision . . . that adversely affects any current or prospective employee." 15 U.S.C. § 1681a(k)(1)(B)(ii).

127. While Acxiom is undoubtedly a CRA and subject to FCRA strictures, by virtue of its agreements with users such as Wal-Mart, it is also a "person" that regularly uses consumer reports to make adverse-action decisions on behalf of Wal-Mart by comparing the consumer reports of Wal-Mart applicants to hiring criteria provided to Acxiom by Wal-Mart and determining whether applicants meet those criteria.

128. Applicants that do not meet Wal-Mart's criteria are summarily denied employment by Acxiom, without Wal-Mart taking any part in the decision.

129. Acxiom then contacts Wal-Mart to let it know that the applicant cannot be hired.

130. When taking such adverse actions against Wal-Mart applicants, however, Acxiom fails to first provide the applicants with the reports on which the decision is based or a summary of the applicants' FCRA rights.

131. Instead, Acxiom belatedly sends consumers a pre-adverse action notice, ostensibly to meet the requirement that it provide consumers with notice before taking the adverse action and in the letterhead of the employer so as to disguise the role played by Acxiom. In truth, at the time it sends the notice to the consumer, Acxiom has already decided that the consumer will not be hired. The sending of the notice is nothing but an attempt to technically comply with the FCRA's notice requirements.

132. Since Acxiom is fully aware that it makes Wal-Mart's hiring decisions and it is the only one with knowledge of the timing of the decision such that it alone can issue a proper 1681b(b)(3) notice *before* it takes an adverse action, Acxiom is also aware that no consumer against whom it takes an adverse action properly receives notice before the adverse-action decision is made.

133. At best, Acxiom has negligently designed and operates a system in which it takes adverse employment actions against consumers without providing proper notice. At worst, its violations were willful.

134. For these reasons, Acxiom has been willfully violating 15 U.S.C. § 1681b(b)(3)(A) by taking adverse actions related to pending employment applications *before* it sends to consumers pre-adverse action notices.

135. Plaintiff and members of this Class seek a classwide determination that Acxiom willfully violated 15 U.S.C. § 1681b(b)(3)(A) and, following that determination, the opportunity for individuals to obtain statutory and punitive damages.

136. Plaintiff and the Class seek such relief, along with reasonable attorneys' fees and costs, pursuant to 15 U.S.C. §§ 1681o and n.

137.   In the alternative, if the Court finds that such violation was merely negligent, Plaintiffs reserve the right to seek class certification of a liability-only class pursuant to Fed. R. Civ. P. 23(b)(3).

**Count IV (Class Action) – Violation of 15 U.S.C. § 1681i – The "Reinvestigation" Class**

138.   Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set forth fully herein.

139.   Plaintiffs Charles Taylor, and William Wiles bring this action on behalf of the following Class, of which they are members:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) who, within two years before the filing of this Complaint and continuing through the conclusion of this action, disputed with Acxiom items contained in their Acxiom-generated consumer reports, but for whom Acxiom did not complete the reinvestigation of the disputed items within 30 days.

140.   **Numerosity.** FED. R. CIV. P. 23(a)(1). Upon information and belief, Plaintiffs allege that the members of the Class are so numerous that joinder of all is impractical. Acxiom sells criminal record history information to thousands of businesses throughout the country, and its reports to such businesses and the disclosures it provides to consumers in writing are standardized, form documents, produced by the same practices and procedures applicable to all subjects of the reports.   The names and addresses of members of the Class are identifiable through documents maintained by Acxiom, and members of the Class may be notified of the pendency of this action by published and/or mailed notice.

141.   **Predominance.** FED. R. CIV. P. 23(a)(2). Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members. They include, without limitation: whether Acxiom willfully violated section 1681k of the FCRA by failing to notify consumers contemporaneously of the fact that

criminal record information is being sent to prospective employers; whether Acxiom willfully violated section 1681k of the FCRA by failing to maintain strict procedures to insure that the information is complete and up to date; and, what amount of statutory and punitive damages is appropriate for this alleged violation of the FCRA.

142.  **Typicality.** FED. R. CIV. P. 23(a)(3). Plaintiffs' claims are typical of the claims of the Class members. Plaintiffs are entitled to relief under the same causes of action as the other members of the Class. Without limitation, Acxiom's procedures were uniform and systemic. The reports obtained and used regarding Plaintiffs and the circumstances for which such reports were furnished was uniform and typical of the facts for each member of the Class.

143.  **Adequacy.** FED. R. CIV. P. 23(a)(4). Plaintiffs are adequate representatives of the Class because their interests coincide with, and are not antagonistic to, the interests of the members of the Class they seek seek to represent, they have retained counsel competent and experienced in such litigation, and intend to prosecute this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

144.  **Superiority.** FED. R. CIV. P. 23(b)(3). Questions of law and fact common to the Class predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages suffered by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Acxiom's conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. In fact, because of the manner in which Acxiom has violated the FCRA, very few Class members—and almost none who are unrepresented by counsel—will ever know that they have been subject to an Acxiom report. Even if the members of the Class themselves

could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Acxiom's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

145.    **Injunctive Relief Appropriate for the Class.**  Class certification is appropriate because Acxiom has acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiffs and the Class members. FED. R. CIV. P. 23(b)(2).

146.    The FCRA mandates that CRAs conduct a free, reasonable reinvestigation to determine the accuracy of information that a consumer disputes as incomplete or inaccurate. 15 U.S.C. § 1681i(a)(1)(A). The CRA has 30 days within which to complete its reinvestigation. *Id.*

147.    Plaintiffs all disputed the accuracy of information contained in their Acxiom reports, and Acxiom failed each time to complete the reinvestigation within the 30-day window. In the case of Plaintiff Henderson's second dispute, Acxiom appears to have done nothing at all.

148.    Acxiom's failure to timely complete its reinvestigations of the disputes of Plaintiffs and other members of the putative Class violated 15 U.S.C. § 1681i(a)(1)(A).

149.    The conduct, action, and inaction of Acxiom was willful, rendering Acxiom liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

150. Plaintiffs and other members of the putative Class are entitled to recover costs and attorneys' fees as well as appropriate equitable relief from Acxiom in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and o.

151. As a result of these FCRA violations, Acxiom is liable to Plaintiffs and to each Class Member, for statutory damages from $100 to $1,000 pursuant to 15 U.S.C. §1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and for attorneys' fees and costs pursuant to § 1681n.

152. In the alternative, if the Court finds that such violation was merely negligent, Plaintiffs reserve the right to seek class certification of a liability-only class pursuant to Fed. R. Civ. P. 23(b)(3).

### Count V (Class Action) – Violation of 15 U.S.C. § 1681b(a) – The "Impermissible Pull" Class

153. Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set forth fully herein.

154. Plaintiff William Wiles brings this action on behalf of the following Class, of which he is a member:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) who were the subject of an Acxiom consumer report furnished to a third party but, at the time Acxiom issued the report, it had no circumstance under the Fair Credit Reporting Act to do so, within five years before the filing of this Complaint and continuing through the conclusion of this action.

155. **Numerosity.** FED. R. CIV. P. 23(a)(1). Upon information and belief, Plaintiff alleges that the members of the Class are so numerous that joinder of all is impractical. The names and addresses of members of the Class are identifiable through documents maintained by

Acxiom, and members of the Class may be notified of the pendency of this action by published and/or mailed notice.

156. **Predominance.** FED. R. CIV. P. 23(a)(2). Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members. They include, without limitation: whether Acxiom had an FCRA-recognized circumstance for issuing reports; whether Acxiom's violations of the FCRA were willful; and, what amount of statutory and punitive damages is appropriate for this alleged violation of the FCRA.

157. **Typicality.** FED. R. CIV. P. 23(a)(3). Plaintiff's claims are typical of the claims of the Class members. Plaintiff is entitled to relief under the same causes of action as the other members of the Class. Without limitation, the procedures or failures of Acxiom were uniform and systemic. The reports obtained and used regarding Plaintiff and the circumstances for which such reports were furnished was uniform and typical of the facts for each member of the Class.

158. **Adequacy.** FED. R. CIV. P. 23(a)(4). Plaintiff is an adequate representative of the Class because his interests coincide with, and are not antagonistic to, the interests of the members of the Class he seeks seek to represent, he has retained counsel competent and experienced in such litigation, and intends to prosecute this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiff and his counsel.

159. **Superiority.** FED. R. CIV. P. 23(b)(3). Questions of law and fact common to the Class predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages suffered by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Acxiom's conduct. It

would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. In fact, because of the manner in which Acxiom has violated the FCRA, very few Class members—and almost none who are unrepresented by counsel—will ever know that they have been subject to an Acxiom report. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Acxiom's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

160.    **Injunctive Relief Appropriate for the Class.** Class certification is appropriate because Acxiom has acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiff and the Class members. FED. R. CIV. P. 23(b)(2).

161.    Allstate ordered from Acxiom a report on Mr. Wiles, who was not its employee or an applicant for employment with Allstate, for employment purposes.

162.    When Acxiom issued the report to Allstate, it had no reason to believe that Allstate would use the report for employment purposes, meaning that Acxiom issued the report without a permissible purpose under 15 U.S.C. § 1681b(a).

163.    In issuing the report to Allstate without a permissible purpose, Acxiom violated 15 U.S.C. § 1681b(a).

164. Acxiom's conduct, action, and inaction were willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

165. As a result of these FCRA violations, Acxiom is liable to Plaintiff and to each Class Member, for statutory damages from $100 to $1,000 pursuant to 15 U.S.C. §1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and for attorneys' fees and costs pursuant to § 1681n.

### Count VI – Violation of 15 U.S.C. § 1681e(b) – Individual Claims of Named Plaintiffs

166. Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set forth fully herein.

167. Each Named Plaintiff's Acxiom report contained inaccurate criminal-history information, and that inaccurate information contributed to the Plaintiffs' employers or potential employers taking adverse action against them.

168. Acxiom violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished regarding the Plaintiffs.

169. As a result of this conduct by the Acxiom, the Plaintiffs suffered actual damages, including without limitation, by example only, and as described herein on his behalf by counsel: loss of employment, loss of income and equity, damage to reputation, embarrassment, humiliation, and other emotional and mental distress.

170. Acxiom's violations of 15 U.S.C. § 1681e(b) were negligent, entitling Plaintiffs to recover actual damages, costs, and attorneys' fees from Acxiom under 15 U.S.C. § 1681o.

## VI.   JURY DEMAND

171.   Plaintiffs demand trial by jury on all issues.

WHEREFORE, Plaintiffs respectfully pray for relief against Acxiom as follows:

a.     An order certifying the proposed Classes set forth above under Federal Rule of Civil Procedure 23, and appointing Plaintiffs and the undersigned Counsel of Record to represent those Classes;

b.     The creation of a common fund available to provide notice of and remedy for Acxiom's FCRA violations;

c.     Statutory and punitive damages for themselves and the Classes under Counts I–II and IV–V;

d.     A classwide liability determination for themselves and the Class;

e.     After the conclusion of the Class proceedings, actual damages for themselves, individually, under Claim VI;

f.     Attorneys' fees, expenses, and costs;

g.     Pre-judgment and post-judgment interest as provided by law; and

h.     All other relief the Court deems just and proper.

Dated: August __, 2012

Respectfully submitted,

TRONE HENDERSON,
CHARLES TAYLOR and
WILLIAM WILES,
on behalf of themselves and
all others similarly situated,

BY: _____
Leonard A. Bennett (VSB #37523)
Matthew Erausquin
CONSUMER LITIGATION ASSOCIATES P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, VA 23601
Telephone:  (757) 930-3660
Facsimile:  (757) 930-3662

Michael A. Caddell (*pro hac vice* forthcoming)
Cynthia B. Chapman (*pro hac vice* forthcoming)
Craig C. Marchiando (*pro hac vice* forthcoming)
CADDELL & CHAPMAN
1331 Lamar, Suite 1070
Houston TX 77010-3027
Telephone:  (713) 751-0400
Facsimile:  (713) 751-0906
mac@caddellchapman.com
cbc@caddellchapman.com
ccm@caddellchapman.com

James Francis (*pro hac vice* forthcoming)
David Searles (*pro hac vice* forthcoming)
FRANCIS & MAILMAN, P.C.
19th Floor
100 S. Broad St.
Philadelphia, PA 19110
Phone: (215) 735.8600
Fax: (215) 940-8000
email: jfrancis@consumerlawfirm.com

Christopher Colt North
**THE CONSUMER & EMPLOYEE RIGHTS LAW
FIRM, P.C.**
751-A Thimble Shoals Boulevard
Newport News, VA 23606
Phone: (757) 873-1010
Fax: (757) 873-8375
cnorthlaw@aol.com

Dale W. Pittman
**THE LAW OFFICE OF DALE W. PITTMAN,
P.C.**
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, Virginia 23803
Telephone: (804) 861-6000 - Telephone
Fax: (804) 861-3368 - Fax
dale@pittmanlawoffice.com

*Attorneys for Plaintiffs and the Classes*