UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| TYRONE HENDERSON, | ) |
| CHARLES TAYLOR, and | ) |
| WILLIAM WILES, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   Civil Action No. 3:12cv589 (REP) |
| | ) |
| ACXIOM RISK MITIGATION, INC., *et al.* | ) |
| | ) |
| Defendants. | ) |

DEFENDANTS' MEMORANDUM IN SUPPORT OF
JOINT MOTION TO TRANSFER VENUE

Defendant Sterling InfoSystems-Ohio, Inc., formerly known as Acxiom Information Security Services, Inc. ("Sterling-OH"), by counsel, submits this Memorandum in support of its Joint Motion to Transfer Venue to the United States District Court for the Northern District of Ohio, Cleveland Division. Acxiom Identity Solutions, LLC, formerly known as Acxiom Risk Mitigation, Inc. ("ARM") and Acxiom Corporation ("Acxiom Corp."), by counsel, appearing specially and without consenting to personal jurisdiction, join in the Joint Motion to Transfer Venue and in this Memorandum to seek alternative relief to that requested in ARM's and Acxiom Corp.'s Motion to Dismiss for Lack of Personal Jurisdiction, or, in the Alternative, for a Transfer of Venue.

## INTRODUCTION

This putative nationwide class action lawsuit is based on allegations that Defendants violated the Fair Credit Reporting Act ("FCRA").  Section 1404(a) of Title 28 of the United States Code allows a district court to transfer a case to another district court where the case could

have been brought if doing so would advance interests of convenience and justice.  The Court should do so here by transferring this case to the center of gravity of this case, the Northern District of Ohio, the place where a significant amount of the acts or omissions giving rise to the supposed causes of action occurred and where the majority of the relevant witnesses reside.

The law in this Court and elsewhere is clear that a plaintiff's choice of forum receives "little weight" in class actions.  A plaintiff's forum choice also receives even less weight if the facts of the case have no real connection to the forum.  The *only* connection between the case and this forum is that two of the three named Plaintiffs reside in Virginia.  In contrast, all the operative events concerning Sterling-OH's background screening services occurred outside of Virginia.  As described in detail below and in the accompanying Affidavit of Curt Schwall, no relevant Sterling-OH witnesses and no documents are in Virginia, while the great majority of such witnesses and documents, including key *non-party* witnesses, are located in the Northern District of Ohio.  Nor are there any ARM or Acxiom Corp. witnesses and documents in Virginia. For that matter, there are no contacts between Acxiom Corp. and ARM and Virginia relating in any way to this case.

In these circumstances, and consistent with highly-analogous authority in this Division and District, as well as other compelling authority addressing putative class actions in the context of similar allegations under the FCRA, all of the  § 1404(a) factors related to convenience, sources of proof, and the locus of operative events favor transfer.  Virginia has very little to do with this case, Ohio is the clear center of gravity, and this case should accordingly be transferred to the Northern District of Ohio.

## STATEMENT OF MATERIAL FACTS

Plaintiff Tyrone Henderson ("Henderson"), a Virginia resident, applied for a job with Wal-Mart in February 2009, which required him to submit to a background check for employment purposes.  (Compl. ¶ 45.)  In October 2011, Plaintiff Charles Taylor ("Taylor"), a Virginia resident, applied for a job with the Petersburg, Virginia office of DistTech, Inc. ("DistTech"), a trucking company based in North Canton, Ohio, which required him to undergo a background check.  (Compl. ¶¶ 59-61.)  Plaintiff William Wiles ("Wiles"), a Texas resident, was employed by Service King Collision Repair ("Service King"), which sought a background check on him in August 2010 due to its relationship with Allstate.  (Compl. ¶¶ 68, 71-73.)  Wal-Mart, DistTech, Service King and/or Allstate used Sterling-OH to obtain background checks on applicants and/or employees.  (Compl. ¶¶ 46, 61, 73.)  Sterling-OH received, processed, and responded to these requests for background checks from its offices in the Cleveland, Ohio area. (Affidavit ("Schwall Aff.") of Curt Schwall, attached hereto as Ex. A, at ¶¶ 3, 15.)

Wal-Mart obtained a background report on Mr. Henderson, which was prepared by Sterling-OH personnel in Ohio.  (*Id.* at ¶ 17.)  Mr. Henderson claims that Defendants used the report to make an adverse employment decision against him, based upon criminal records in the report which did not belong to him, and then notified him that he would not be hired.  (Compl. ¶¶ 47-49.)  Mr. Henderson also claims that he wrote to Defendants to request a copy of his file and to dispute the inaccurate criminal records.  (Compl. ¶¶ 51-52.)  Any correspondence from Mr. Henderson to Sterling-OH would have been sent to or received by Sterling-OH's offices in Ohio. (Schwall Aff. at ¶¶ 16, 18.)  Any correspondence from Mr. Henderson to ARM or Acxiom Corp. would have been sent to or received by them at their offices in Colorado and Arkansas, respectively, as neither has offices in Virginia.  (Declaration ("Mathis Dec.") of Leslie Mathis,

attached hereto as Ex. B, at ¶¶ 3, 5.)   Sterling-OH conducted an investigation into Mr.

Henderson's dispute of the information contained in his background report from its offices in

Ohio.   (*Id.* at ¶¶ 16, 18.)   More generally, Sterling-OH's processes related to the Wal-Mart

account are managed by Sterling-OH employees in Ohio.   (*Id.* at ¶¶ 20-21.)

DistTech obtained a background report on Mr. Taylor, which was prepared by Sterling-

OH personnel in Ohio.   (*Id.* at ¶ 17.)   Mr. Taylor claims that Defendants furnished his

background report to DistTech, that DistTech told him that he would not be hired because of

information contained in the report that was inaccurate, that Defendants did not send him a copy

of the report or provide him any notices at the time they sent his report to DistTech, but later sent

him a notice that they had provided the report to DistTech.   (Compl. ¶¶ 61-66.)   The background

report and any related notices from Sterling-OH were generated from the company's offices in

Ohio.   (Schwall Aff. at ¶¶ 15-17.)   Mr. Taylor also claims he contacted Defendants regarding

information contained in the background report, and Defendants did nothing to investigate his

dispute.   (Compl. ¶ 67.)   Mr. Taylor contacted Sterling-OH about his background report,

although he did not dispute any information contained in the report, through Sterling-OH

personnel in Ohio. (Schwall Aff. at ¶ 18.)

Sterling-OH prepared a background report on Mr. Wiles, who was employed by Service

King, as a result of Service King's relationship with Allstate.   (*Id.* at ¶ 17.)   Several criminal

convictions appeared on the report, and Mr. Wiles claims those convictions did not belong to

him, allegedly resulting in Service King demoting him and/or reassigning him to another

location.   (Compl. ¶¶ 74-76.)   Mr. Wiles claims that he received a notice from Defendants

confirming that Allstate ordered the report for employment purposes, and that he contacted

Defendants to dispute the convictions.   (Compl. ¶¶ 80-81.)   Any notice directed to Mr. Wiles

regarding his background report was sent from Sterling-OH's offices in Ohio, and Sterling-OH conducted an investigation into Mr. Wiles' dispute of the information contained in his report from its offices in Ohio. (Schwall Aff. at ¶¶ 16, 18.) Moreover, Sterling-OH's processes related to the Allstate account are managed by employees in Ohio. (*Id.* at ¶¶ 22-23.)

Sterling-OH provides employment screening services nationwide through its offices in Ohio. (*Id.* at ¶ 3.) During the time period relevant to this lawsuit, Sterling-OH maintained offices in Fairlawn, Ohio and Independence, Ohio, however, the office in Fairlawn, Ohio has since closed. (*Id.* at ¶ 6.) The Independence, Ohio office is and has always been Sterling-OH's headquarters. (*Id.* at ¶¶ 3, 9, 14.) Sterling-OH does not have, nor ever has had, any offices in Virginia. (*Id.* at ¶¶ 4, 6.)[1] Sterling-OH's activities, as they relate to Mr. Henderson, Mr. Taylor and Mr. Wiles were handled out of its offices in the Cleveland, Ohio area. (*Id.* at ¶¶ 3, 6, 15, 16, 18, 32-34.) Indeed, all of Sterling-OH's services are handled out of its Ohio offices on a nationwide basis.

Plaintiffs allege that prior to January 2012, Sterling-OH was owned by Acxiom Corp. Plaintiffs alleged Sterling-OH, Acxiom Corp., and ARM operated a "unified" consumer reporting agency. (Compl. ¶¶ 2, 17.) Based on these allegations, Plaintiffs' Complaint uses the terms "Acxiom" and "Defendants" (Compl. ¶ 18) to make undifferentiated allegations against the three companies, thereby conflating the conduct of Sterling-OH in the operation of its background screening business with the business of its former parent, Axciom Corp., and its former sister company, ARM. *See, e.g.,* Compl. ¶¶ 97-98.

Plaintiffs seek recovery under the FCRA for five separate nationwide classes on the following grounds, that (1) Defendants failed to disclose all information contained in a

---

[1] Indeed, Sterling-OH has no property or bank accounts in Virginia, has paid no income taxes in Virginia, has not been registered to do business in Virginia, and has not had a registered agent for service of process in Virginia. (*Id.* at ¶¶ 10-12.)

consumer's file pursuant to a request under 15 U.S.C. § 1681g(a)(3) (Compl. ¶¶ 86-101); (2) Defendants failed to provide notice to consumers "at the time" they furnished a consumer report for employment purposes under 15 U.S.C. § 1681k(a)(1) (Compl. ¶¶ 102-116); (3) Defendants failed to comply with 15 U.S.C. § 1681b(b)(3)(A) by taking adverse actions related to pending employment applications before sending pre-adverse action notices to consumers (Compl. ¶¶ 117-137); (4) Defendants failed to perform a reinvestigation to determine the accuracy of information disputed by a consumer within 30 days of the request for reinvestigation under 15 U.S.C. § 1681i(a)(1)(A) (Compl. ¶¶ 138-152); and (5) Defendants issued consumer reports to Allstate when Allstate lacked a permissible purpose to obtain those reports under 15 U.S.C. § 1681b(a). (Compl. ¶¶ 153-165.) Plaintiffs each also allege an individual claim for the violation of 15 U.S.C. § 1681e(b) on the grounds that Defendants failed to establish or follow reasonable procedures to ensure maximum possible accuracy in the preparation of the consumer reports it furnished about them. (Compl. ¶¶ 166-170.) Each of these alleged violations of the FCRA depend entirely upon inquiry into the actual conduct of Sterling-OH, Acxiom Corp., and ARM. As explained below, the background screening business was operated by Sterling-OH, hence much of the conduct relevant here was taken by Sterling-OH, and all employees with knowledge of Sterling-OH's practices related to these claims are located in Ohio, as are many former employees with relevant knowledge.

The principal location for Sterling-OH's witnesses and records relating to Mr. Henderson, Mr. Taylor and Mr. Wiles, and services provided to Wal-Mart, DistTech, Service King and Allstate, is Independence, Ohio. (Schwall Aff. at ¶¶ 3, 6, 13-18, 20-34.) The primary relationship manager for Wal-Mart works in Independence, Ohio. (*Id.* at ¶ 20.) The primary relationship manager for Wal-Mart at the time that Mr. Henderson applied for employment there

6

is no longer employed by Sterling-OH, but remains in the Cleveland, Ohio area.  (*Id.* at ¶ 21.)
The primary relationship manager for Allstate works in Independence, Ohio.  (*Id.* at ¶ 22.)  A
sales representative for the Allstate account at the time that Service King requested Mr. Wiles'
background report is no longer employed by Sterling-OH, but remains in the Cleveland, Ohio
area.  (*Id.* at ¶ 23.)

Personnel responsible for receiving and processing requests for background reports from
Sterling-OH's customers work in Ohio.  (*Id.* at ¶ 15.)  Personnel responsible for initiating work
orders regarding background reports are located in Ohio, and they receive and review the results
of those orders in Ohio, and deliver the results to their customers from Ohio.  (*Id.*)  Personnel
responsible for preparing and mailing the various notices to applicants and/or employees in
connection with their background reports are located in Ohio.  (*Id.*)  Personnel responsible for
receiving, investigating and responding to disputes from applicants and/or employees regarding
information contained in their background reports are located in Ohio.  (*Id.* at ¶ 16.)

Sterling-OH's records are maintained in Ohio.  (*Id.* at ¶ 13.)  Electronic records are
maintained via servers that are housed in Ohio.  (*Id.*)  Personnel responsible for information
management systems that maintain records regarding background checks prepared for Sterling-
OH's customers, as well as notices sent to applicants and/or employees of Sterling-OH's
customers, work in Independence, Ohio, and accessing these records requires the involvement of
such Ohio personnel.  (*Id.* at ¶ 31.)

Sterling-OH has identified by name eight current employees working in its Independence,
Ohio headquarters with relevant knowledge of Plaintiffs' claims and Sterling-OH's defenses.
(*Id.* at ¶¶ 1, 20, 22, 24, 26, 27, 31.)  In addition, Sterling-OH has identified by name six former
employees, who remain in the Cleveland, Ohio area, and also generally identified eight

additional former employees with last known addresses in Ohio, all with relevant knowledge of the facts that give rise to this matter.  (*Id.* at ¶¶ 21, 23, 25, 28, 29, 30, 32-34.)  In contrast, Sterling-OH has no locations, employees, records, witnesses or documents in Virginia.  (*Id.* at ¶¶ 4, 6, 13, 14.)  As for Acxiom Corp. and ARM, they have no witnesses or documents in Virginia, and no contacts whatsoever with Virginia concerning Plaintiffs.  (Mathis Dec. at ¶¶ 3, 5.)

<u>ARGUMENT</u>

**I.     The § 1404(a) factors favor transfer.**

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  *Id.*  After determining that the claims could have been pled in the transferee forum, a court "should 'consider and balance' a number of factors" in exercising its discretion under § 1404(a), which "much necessarily must turn on the particular facts of each case."  *Samsung Elecs. Co., v. Rambus Inc.*, 386 F. Supp. 2d 708, 715, 716 (E.D. Va. 2005).  "The statute provides no guidance as to the weight that should be given to the various factors," but the "principal factors to consider … are plaintiff's choice of forum, witness convenience, access to sources of proof, party convenience, and the interest of justice."  *Id.* at 716.

In making a showing that transfer is warranted, the moving party is required to go beyond generalities and present specific facts.  *See Mullins v. Equifax Information Services, LLC,* 2006 U.S. Dist. LEXIS 24650, *25 (E.D. Va. April 28, 2006) (moving party should present information sufficient to allow court to assess materiality of witnesses).

**A.     The action could have been brought in Ohio.**

This action could have been brought in the United States District Court for the Northern District of Ohio, Cleveland Division.  The FCRA grants original jurisdiction to federal courts. *See* 15 U.S.C. § 1681(p).  Federal claims may be brought in the district where a substantial part

of the acts or omissions giving rise to the action occurred.  28 U.S.C. § 1391(b)(2).  At all relevant times, Sterling-OH was headquartered in Independence, Ohio in the Northern District of Ohio.  Plaintiffs' claims are based in large part actions and activities of Sterling-OH which occurred in Sterling-OH's offices in Ohio.  Additionally, Plaintiffs allege that the trucking company to which Mr. Taylor applied for employment was based in Ohio and that he sent his application there.  (Compl. ¶¶ 59-60.)  Because a substantial portion of the omissions or acts giving rise to this action occurred in the Northern District of Ohio, this civil action could have been brought in that forum at least to the same extent as it has been brought here.

> **B.**     **Plaintiffs' choice of forum receives little weight in this case.**

"The first factor to be considered is the level of deference that should be given to [the plaintiff's] choice of this forum."  *Samsung Elecs.*, 386 F. Supp. 2d at 716.  "[P]laintiff's choice of forum is typically entitled to substantial weight," *id.*, but, that is not true here.

This Court and many others have recognized that courts should "give less weight to the plaintiff's choice of forum in class actions."  *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 633 (E.D. Va. 2006); *accord* 17 MOORE'S FED. PRACTICE - CIVIL 111.13[1][c][ii] ("[I]n certain kinds of actions in which the plaintiff's choice of forum is largely fortuitous, such as class actions and shareholder derivative actions, where putative class members may reside in many different states, the plaintiff's choice of forum is given less weight."); *Klingensmith v. Paradise Shops*, 2007 U.S. Dist. LEXIS 51591 at *6 (W.D. Pa. 2007) ("The United States Supreme Court has held that a plaintiff's choice of forum should be accorded less deference in class action suits since all members of the class could conceivably bring suit in his or her home forum.") (citations omitted); *Owner-Operator Indep. Drivers Ass'n v. N. Am. Van Lines, Inc.*, 382 F. Supp. 2d 821, 824 n.3 (W.D. Va. 2005) ("[P]laintiffs fail to persuasively address

[defendant's] argument that also under myriad case law … this proposition [of deference] is weakened considerably where there are hundreds of potential plaintiffs, such as in this class action.").

Indeed, the forum choice in a nationwide class action is generally regarded as insignificant because, where class members reside in districts across the country, "there will be numerous potential plaintiffs, each possibly able to make a showing that a particular forum is best suited for the adjudication of the class' claim." *Byerson*, 467 F. Supp. 2d at 633.

In fairness, courts have differed over whether the plaintiffs' choice of forum is entirely irrelevant or to be given some, if little, weight.[2]  This Court, however, has settled on a "little weight" formulation. *Byerson*, 467 F. Supp. 2d at 633 ("In class actions, 'the named plaintiff's choice of forum is afforded little weight….").  Here, Plaintiffs' Class Action Complaint ("Complaint") explicitly alleges five nationwide classes.  Additionally, not even all of the named Plaintiffs themselves reside in Virginia.  Hence, despite the fact that two of the named Plaintiffs reside in this District, their choice of forum must be "afforded little weight." *Byerson*, 467 F. Supp. 2d at 633.

C.     **The case should be transferred because the operative events and key facts occurred elsewhere.**

Apart from the some slight or limited deference possibly afforded to the Plaintiffs' choice of forum, it is equally well settled that courts will overrule a plaintiff's choice of forum in a class case where the chosen forum is not "the nucleus of operative facts." *Samsung*, 386 F. Supp. 2d at 716; *accord* 17 MOORE'S FED. PRACTICE - CIVIL § 111.13[1][c][iii] ("Even if the plaintiff

_____

[2] *Compare Georgouses v. NaTec Res., Inc.*, 963 F. Supp. 728, 730 (N.D. Ill. 1997) ("[B]ecause plaintiff alleges a class action, plaintiff's home forum is irrelevant.") *with Berenson v. Nat'l Fin. Servs.*, LLC, 319 F. Supp. 2d 1, 3 (D.D.C. 2004), *appeal dismissed*, 485 F.3d 35 (1st Cir. 2007) ("While this Court is not prepared to conclude that this first consideration is irrelevant in a case of this nature, certainly in a class action suit in which the plaintiffs propose to represent a class of potential plaintiffs who reside throughout the country, the plaintiffs' choice of forum deserves less weight than it is typically given.").

resides in the chosen forum, if the operative events did not take place in that district, many courts assign the plaintiff's choice of forum less weight.") (footnotes and cross-references omitted); *see, e.g.*, *Klutho v. 21st Century Ins. Co.*, 2007 U.S. Dist. LEXIS 86947 at *5 (N.D. Ill. 2007) ("A plaintiff's choice of forum is afforded less deference, however, when another forum has a stronger relationship to the dispute or when the forum of plaintiff's choice has no significant connection to the situs of material events.").

Indeed, the fact that the operative facts and events from which Plaintiffs' claims arose took place elsewhere exerts considerable weight in favor of transfer. *See, e.g.*, *Polygroup Ltd. v. General Foam Plastics Corp.*, 2012 U.S. Dist. LEXIS 90223, at *16 (E.D. Va. June 27, 2012) (granting motion to transfer because "[t]he actions which the Plaintiffs allege give rise to this suit (i.e., breach of that contract), occurred in the Norfolk Division"); *Finkel v. Subaru of Am., Inc.*, 2006 U.S. Dist. LEXIS 69064 at *16 (E.D. Va. 2006) ("courts are traditionally willing to transfer cases to the districts in which the events giving rise to the suits occurred . . . because often the majority of the significant witnesses and the physical evidence also are located there" (citations omitted)); *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 635 (E.D. Va. 2003) ("if there is little connection between the claims and this judicial district, that would militate against a plaintiff's chosen forum").[3]

As explained above, this is a case about Defendants' FCRA policies and procedures and related acts and omissions. *See Klingensmith*, 2007 U.S. Dist. LEXIS 51591 at *7-8 (concluding, in an FCRA national class action, that "[t]he focus of the litigation will be on [defendant's] actions, not on any class members' actions"). For Plaintiffs, as well as the other

---

[3] In fact, in other cases, Plaintiffs' counsel has argued, and this Court has recognized, the centrality of the location of sources of proof in determining venue in consumer cases. *Byerson*, 467 F. Supp. 2d at 634 (citing Plaintiffs' counsel's declaration that "significant" sources of proof lay within this Division as weighing against transfer).

members of the putative classes nationwide, Ohio is the principal relevant location, as the operative events giving rise to Plaintiffs' claims regarding the preparation of background reports, preparation of notices to consumers, and investigation and response to consumer disputes and/or requests for information from consumers took place in Ohio.  (Schwall Aff. at ¶¶ 15, 16.)  In contrast, none of Defendants' actions occurred in this District.  (*Id.* at ¶¶ 4, 6, 13-16.)

Consistent with the foregoing authority, and especially in putative class actions, "[m]ultiple courts considering § 1404 transfer motions in FCRA cases have noted that the situs of the material events ... is generally the place where the defendant credit reporting agency conducted its business."  *Murphy v. Trans Union, LLC*, 2012 U.S. Dist. LEXIS 115610, at *14-15 (E.D. Pa. Aug. 15, 2012) (granting motion to transfer venue in putative FCRA class action after consideration of the factors under §1404(a)); *see also Smith v. HireRight Solutions, Inc.*, 2010 U.S. Dist. LEXIS 55477, at *4 (E.D. Pa. June 7, 2010) (citing *Bogollagama v. Equifax Info. Servs.*, 2009 U.S. Dist. LEXIS 110821, at *3 (E.D. Pa. Nov. 30, 2009) (finding that operative facts in an FCRA case arose in forum where credit reports were compiled and issued); *Barela v. Experian Info. Solutions, Inc.*, 2005 U.S. Dist. LEXIS 19105, at *4 (N.D. Ill. Apr. 4, 2005) (noting that an assessment of the relevant events and alleged harms in an FCRA case points to the defendant's place of business as the appropriate venue); *Ayling v. Travelers Prop. Cas. Corp.*, 1999 U.S. Dist. LEXIS 16716, at *5 (E.D. Pa. Oct. 27, 1999) ("Where plaintiff's cause of action arises from strategic policy decisions of a defendant corporation, the defendant's headquarters can be considered the place where events giving rise to the claim occurred.")).  Thus, although transfer would be appropriate regardless of the subject matter of the claims pled, the need for a transfer of venue is particularly acute in the context of this FCRA class action,

where the majority of operative facts giving rise to Plaintiffs' claims occurred in Sterling-OH's offices in the Cleveland, Ohio area.

### D. The ease of access to sources of proof weighs in favor of transfer to Ohio.

The sole connection between this suit and Virginia is that two out of three of the named Plaintiffs in this putative nationwide class action reside here.  However, it is important to note that even as to the two Virginia Plaintiffs, little occurred in Virginia itself.  While Mr. Henderson and Mr. Taylor simply applied for employment in Virginia, Mr. Wiles had no contact with Virginia whatsoever, as he is a Texas resident who is employed by a company located in Texas. (Schwall Aff. at ¶ 35.)

In contrast, the majority of the relevant sources of proof in this case are located at Sterling-OH's place of business in the Northern District of Ohio.  The documentary evidence regarding Sterling-OH's procedures, including the preparation of background reports, and the preparation of notices and dispute-handling, will presumably involve a variety of Sterling-OH's records.  Although some of those records may be located in other locations, many are located in Ohio and/or maintained electronically via servers housed in Ohio.  (*Id.* at ¶ 13.)  None are located in this District.  (*Id.*)  Moreover, key non-party records will also be located elsewhere -- for example, at the headquarters of Wal-Mart in Bentonville, Arkansas and at the headquarters of Allstate in Northbrook, Illinois.  The balance of conveniences as to sources of proof therefore weights in favor of transfer to the Northern District of Ohio.  *See Koh*, 250 F. Supp. 2d at 638 (citing *Telepharmacy Solutions, Inc. v. PickPoint Corp.*, 238 F.Supp. 2d 741, 743 (E.D. Va. 2003) (granting motion to transfer due, in part, to the fact that the sources of proof were available at the place of business of the defendants where the products in question were made).

### E.      Party and witness convenience factors favor transfer.

As might be expected, given the greater factual connection to Ohio, the party and witness convenience factors weigh heavily in favor of transfer.  "The party convenience factor includes assessment of the ease of access to sources of proof, the cost of obtaining the attendance of witnesses, and the availability of compulsory process."  *Samsung*, 386 F. Supp. 2d at 717 n.13. Witness convenience is also "of considerable importance in determining whether a transfer of venue is appropriate under Section 1404(a)."  *Id.* at 718.  In fact, "[w]itness convenience is often dispositive in transfer decisions."  *Koh*, *supra* at 636.  And, "[t]he ability to conduct a trial in a manner that does not 'unduly burden' the witnesses is of central importance in making a trial easy, expeditious, and inexpensive."  *Southeastern Textile Machinery, Inc. v. H. Warshow & Sons, Inc.* 2006 WL 213723, at *3 (W.D. Va. 2006); *accord Koh,* 250 F.Supp.2d at 630.  In this case, the convenience of the parties and witnesses weighs in favor of transfer because the Northern District of Ohio is substantially more convenient for the great majority of both party and non-party witnesses.

### 1.      The location of material, non-party witnesses in Ohio compels transfer.

The inability to compel attendance of such material non-party witnesses at trial counsels strongly in favor of transfer.  *NanoEntek, Inc. v. Bio-Rad Laboratories Inc.*, 2011 WL 6023189, at *6 (E.D. Va. 2011) ("Courts afford greater weight to the convenience of nonparty witnesses."); *Koh*, 250 F. Supp. 2d at 637 ("Two of these potential witnesses are non-parties whose inconvenience is entitled to greater weight in the §1404 analysis.").  And, the identified non-party witnesses in Ohio are beyond the subpoena power of the Court, given that Ohio is more than 100 miles away and in another state.  *See* Fed. R. Civ. P. 45(c)(3)(A)(ii) & (B)(iii).

14

Over the time period addressed in the Complaint, and following the acquisition of Sterling-OH by Sterling Infosystems, Inc., a number of Sterling-OH's employees with significant knowledge of the policies and procedures of Sterling-OH relevant to this lawsuit have left the company, although to the best of Sterling-OH's knowledge, they continue to reside in the Cleveland, Ohio area. For example, among potentially others, the following former employees of Sterling-OH have knowledge relevant to the claims set forth in Plaintiffs' Complaint:

| Witness | Title | Knowledge | Location (last known) |
|---------|-------|-----------|-----------------------|
| Michael Cool | Vice President and General Manager | Company's products, services, compliance procedures, and resolution of Mr. Henderson's dispute | Ohio |
| Robert Campbell | Director of Operations | Company's production departments relating to background reports | Ohio |
| Christina Basmagy | Operations Leader | Company's production departments relating to background reports | Ohio |
| Lisa Geber | Account Manager | Services provided to Wal-mart | Ohio |
| Hollie Zelenka | Sales Representative | Services provided to Allstate | Ohio |
| Jeannine Payne | Compliance Associate | Investigation of Mr. Henderson's dispute; communications with Mr. Taylor | Ohio |

(Schwall Aff. at ¶¶ 21, 23, 25, 28-30.) All of these former employees will be relevant, and many will be key witnesses to this action. In addition, Sterling-OH has generally identified eight additional former employees with last known addresses in the Cleveland, Ohio area who were involved in some fashion in the process of preparing Plaintiffs' background reports, providing related notices and/or investigating Plaintiffs' disputes about information contained in their reports. (*Id.* at ¶¶ 32-34.)

Sterling-OH has no power to force its former employees to come to Virginia to testify in person in this case. Several now work for competitors of Sterling-OH, or have other jobs or

school commitments.  The Eastern District of Virginia does not have subpoena power over these former employees because most, if not all, continue to reside in the Northern District of Ohio. As a result, the former employees' appearances can only be secured by compulsory process in Ohio.  Similarly, employees of at least one of Sterling-OH's customers, DistTech, will likely be witnesses, and those witnesses are also in Ohio.

In contrast to the lack of compulsory process in the Eastern District of Virginia, the Northern District of Ohio could compel the attendance of the former employees and third parties at trial because they live either in the district or within 100 miles of the district.  Transfer is therefore warranted.  *See, e.g.*, *Klingensmith*, 2007 U.S. Dist. LEXIS 51591, at *10 ("Because Terment is located in Atlanta, it is beyond this Court's subpoena powers . . . .  I consider this factor to weigh heavily in favor of a transfer."); *Ramsey v. Fox News Network, LLC*, 323 F. Supp.2d 1352, 1356 (N.D. Ga. 2004) ("Given the fact that, when possible, live testimony is preferred over other means of presenting evidence, the convenience of the non-party witnesses weighs most heavily on the Court in deciding on a motion to transfer venue.").  Finally, unlike the defendants' perfunctory effort in *Mullins*, Defendants here have come forward with a showing of specific witnesses with specific information so as to allow, and indeed compel, the conclusion that this factor favors transfer.

## 2.    Convenience to party witnesses compels transfer.

Another consideration in the transfer analysis is the cost to the parties of making their employees available for deposition and trial.  *Orthoflex, Inc. v. Thermotek, Inc.*, 2010 WL 5069700, *4 (N.D. Ill. Dec. 3, 2010) (finding burden of inconvenience on the defendants outweighed burden on the plaintiffs).  Further, although party witnesses can be expected to travel to Richmond and receive somewhat less consideration in § 1404(a) balancing, such travel still

involves increased costs and inconvenience.  *E.g.*, *NanoEntek, Inc.*, 2011 WL 6023189, *6 ("[I]t would strain credulity for the court not to recognize that transfer of trial to their home district would minimize travel, time, and expense, to some degree, for these witnesses"); *Orthoflex*, 2010 WL 5069700, *4 ('securing the attendance of the multiple Thermotek employees each having specific knowledge concerning [the issues] comes at great cost to Thermotek should the proceedings remain in this district.  Thermotek would also be adversely affected by the time away from work that would be necessary to allow these employees to travel to and testify in this district.").

The cost of obtaining the attendance of the majority of witnesses will be substantially increased in the Eastern District of Virginia.  While only two witnesses live in Virginia (*i.e.*, two of the three Plaintiffs),[4] as noted above, approximately eight of the necessary witnesses Sterling-OH has identified so far are employed in the Northern District of Ohio.  These witnesses include:

| Witness | Title | Knowledge | Location |
|---|---|---|---|
| Curt Schwall | Vice President and General Manager | Information set forth in Affidavit attached as Ex. A | Ohio |
| Sheryl Toth | Director of Operations | Production departments relating to background reports | Ohio |
| Veronique Laverdiere | Compliance Manager | FCRA compliance procedures; investigation of Mr. Henderson and Mr. Wiles' disputes | Ohio |
| Kristy Nahrstedt | Account Manager | Services provided to Wal-mart | Ohio |
| Patti Yakich | Account Manager | Services provided to Allstate | Ohio |
| Caroline Rosset | Compliance Specialist | Investigation of Mr. Wiles' dispute | Ohio |
| Timothy Holgate | IT Infrastructure Leader | Electronic records | Ohio |
| James Likovic | Strategist Leader | Electronic records | Ohio |

---

[4] In fact, one of the Virginia Plaintiffs, Tyrone Henderson, will likely be dismissed from this action because his claim is barred by the Fair Credit Reporting Act's statute of limitations.  Accordingly, Virginia's already minimal interest in this action will be further reduced.

(Schwall Aff. at ¶¶ 1, 20, 22, 24, 26, 27, 31.)  In addition, Sterling-OH has generally identified nine additional current employees, resident in Sterling-OH's Independence, Ohio headquarters, who were involved in some fashion in the process of preparing Plaintiffs' background reports, providing related notices and/or investigating Plaintiffs' disputes about information contained in their reports.  (*Id.* at ¶¶ 32-34.)

"Their cooperation and any costs of attendance at trial or depositions will be easier to obtain and cheaper the closer they are to their homes or businesses." *Nales v. S. Ry. Co.*, 20 Va. Cir. 393, 396 (Richmond 1990).  The distance from Cleveland to Richmond is 463 miles.  The average price of a regular airplane ticket round trip from Cleveland to Richmond with one stop is $550.00, and the trip requires an average travel time of 3 to 4 hours each way.  *See* **Exhibit C** (flight schedules and prices from Orbitz.com.)  This favors transfer.  *See, e.g.*, *Newman v. Advanced Tech. Innovation Corp.*, 2012 U.S. Dist. LEXIS 55984, at *13 (E.D. Va. Apr. 20, 2012) ("[T]he inconvenience to those party witnesses [in Massachusetts] of litigating in this forum will be assigned substantial weight.").

Nor is this merely a shifting of costs from Defendants to Plaintiffs.  While two of the named Plaintiffs may reside in the Eastern District of Virginia, the third, Mr. Wiles, resides in Texas.  And while at least one of Plaintiffs' counsel resides in Virginia, another (Mr. Caddell) resides in Texas and the third (Mr. Francis) resides in Pennsylvania.  The remaining members of the putative nationwide classes are all over the nation.  For the reasons explained herein, the Northern District of Ohio is far more convenient than the Eastern District of Virginia.

**F.     The interest of justice factor favors transfer, but this factor is not necessary for transfer to be warranted.**

The final § 1404(a) factor, the interest of justice, "encompasses public interest factors aimed at 'systemic integrity and fairness.'" *Byerson*, 467 F. Supp. 2d at 635.  Systemic integrity, in turn, focuses on "judicial economy and the avoidance of inconsistent judgments." *Id.* "Fairness is assessed by considering docket congestion, interest in having local controversies decided at home, knowledge of applicable law, unfairness in burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law." *Id.*   In class action cases, "[t]he interest of justice weighs particularly heavily … because class actions so significantly implicate the rights of persons who are not actually before the court." *Id.* at 637.

In this case, transfer would facilitate the efficient administration of justice by allowing the case to be "litigated before a court that is 'closer to the action.'" *Georgouses*, 963 F. Supp. at 731.  The *Georgouses* court noted that "the allegations focus on defendants' actions" in the transferee forum. *Id.*  And, in granting the § 1404(a) motion, the court explained that "Section 1404(a) is designed to prevent waste of time, energy, and money, as well as to protect litigants, witnesses, and the public against inconvenience and expense.  Transfer … will promote all of those goals." *Id.* (citation omitted).  The same is true here.

In this case, because nationwide classes have been pled, every state could be considered the home forum.  What is more, even among the three named Plaintiffs, there are varying home forums.  This Court possesses no compelling connection to the events from which Plaintiffs' claims arose, and the material evidence and witnesses are elsewhere in the United States.  In turn, transfer to the Northern District of Ohio, the situs of this controversy, would promote the public interest in the efficient administration of justice.  For the same reasons, it would be largely unfair to burden citizens within the Eastern District of Virginia with lengthy jury duty. *See Jaffe*

*v. LSI Corporation*, 2012 WL 2248044 (E.D. Va, June 15, 2012) (finding that it is "undoubtedly more fair to burden jurors" in the situs of the controversy than in Richmond).   Under these circumstances, there is little reason why the citizens of the Eastern District of Virginia should be required to decide this case.

The other interest-of-justice considerations are neutral.  The case arises under federal, rather than state law, has only been pending in this Court for a brief period with no substantive litigation having been undertaken and with no trial date set, and there is no risk of inconsistent judgments.  Plaintiffs may try to point to other past FCRA cases including ones filed by Mr. Henderson in this Court to argue that this Court has an enhanced familiarity with the relevant FCRA issues and applicable law and should retain the case in the interests of judicial economy. This argument would contradict settled law.  "When courts consider a potential venue's relative familiarity with the applicable law [under 28 U.S.C. § 1404], they are referring to the application of state law in diversity cases."  *Royal Ins. Co. of Am. v. United States*, 998 F. Supp. 351, 355 (S.D.N.Y. 1998) (citations omitted).  Where federal law governs, however, "[a]ll federal courts are presumed to be fully capable of applying nationally applicable legal principles."  *Id.; see also Byerson*, 467 F. Supp. 2d at 634 ("[B]ecause this action arises under federal law, this Court cannot be presumed to have greater knowledge of the practicable law than does the federal court in South Carolina.").  Accordingly, the balance of the interest-of-justice considerations weighs in favor of transfer.

## II.   Compelling judicial authority counsels in favor of transfer.

The above principles have been synthesized in a number of persuasive cases that confirm that this case should be transferred to the Northern District of Ohio.  Indeed, other courts within Virginia have transferred cases with facts that are analogous to those in this case.

For instance, in *Owner-Operator Indep. Drivers Ass'n [OOIDA] v. N. Am. Van Lines, Inc.*, in analyzing the convenience factors in the context of a consumer-protection class action, the court found that "the proposed class of plaintiffs in the action presently before this court reside in various states across the country;" that the defendant's headquarters, "which is also the site of the majority of evidence relevant to the plaintiffs' claims," was elsewhere; and that "the contacts relating to the plaintiffs' cause of action concerning violations of the federal leasing regulations … all occurred" elsewhere. *OOIDA*, 382 F. Supp. 2d at 825.  The court held that "because there is no connection to the harm alleged in the complaint to the chosen forum of Virginia beyond the mere fact that only one named plaintiff resides in the Western District of Virginia, the court finds that Indiana has a greater factual connection to the underlying dispute" and granted the § 1404(a) motion for transfer.  *Id.* at 825, 826; *see, e.g., Georgouses*, 963 F. Supp. at 731 (granting a § 1404(a) motion in a class action where the transferee district was the situs of the material events, most convenient for the defendants, the location of the documentary evidence, and closer to the action such that the administration of justice was served).

The same conclusion has also obtained in cases also involving comparable claims under the FCRA.  First, in the strikingly-similar case of *Steven Beverley, et al. v. ChoicePoint, Inc., et al.*, 3:07cv541 (RLW), Judge Williams granted the defendants' motion to transfer plaintiffs' FCRA class action complaint to North Carolina.  In that case, the only substantive connection between the case and the Eastern District of Virginia was that one of the two named plaintiffs resided in Virginia.  In contrast: (1) all the operative events concerning ChoicePoint's allegedly-deficient procedures occurred in North Carolina; (2) all relevant ChoicePoint documents were in North Carolina; and (3) the vast majority of non-ChoicePoint witnesses were located outside of the forum.  *See* 3:07cv541 (Dkt. No. 26 pp. 2-3) (Order granting Motion to transfer) (attached

hereto as **Exhibit D**).  On the basis of these considerations, while also noting that the plaintiff's choice of forum in the putative FCRA class action was to be granted "little weight," the court transferred the case to the Western District of North Carolina for all further proceedings.  *See id.*

This case is also much like that of *Klingensmith v. The Paradise Shops, Inc*.  There, the court there granted a § 1404(a) motion to transfer venue to the Northern District of Georgia.  The defendant was a company headquartered in Atlanta, Georgia, that operated gift shops in airport locations around the United States, including one within the Western District of Pennsylvania. 2007 U.S. Dist. LEXIS 51591, at *2.  The two named plaintiffs, one of whom resided in the Western District of Pennsylvania, brought suit under the FCRA "on behalf of a national class of debit and credit card holders … who received receipts that contained more than the last five digits of the card number and/or the expiration date on the receipts" and seeking statutory damages.  *Id.* at *3.  In holding that the case should be transferred, the court discounted the plaintiffs' choice of forum because: (1) it was a class action complaint, *id.* at *6; (2) "[t]he focus of the litigation will be on [the defendant's] actions, not on any class members' actions," *id.* at *7-8; and (3) the material witnesses and records regarding the issue were in Atlanta.  *Id.* at *8.

Furthermore, in *Klutho v. 21st Century Ins. Co.*, 2007 U.S. Dist. LEXIS 86947 at *5 (N.D. Ill. 2007), the court granted a § 1404(a) motion in a FCRA class action, despite the fact that some class members resided in the forum, because "the primary issue in this case will likely concern whether defendant acted willfully . . .  and this did not occur in Illinois.  The mailer was sent from a California address and all employees responsible for the mailer are located in California."  *Id.* at *6. This case contains allegations of similar willfulness issues and facts.

Much like these cases, where the witnesses (both party and non-party), documents, and relevant conduct under the FCRA occurred outside of the plaintiff's chosen forum, this action

also has no substantive connection to Virginia.  Rather, all such considerations squarely point to

Ohio.  Therefore, this Court should reach the same conclusion as the above courts and transfer

this action to the clear center of gravity, the Northern District of Ohio.

CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter an order

transferring the matter to the United States District Court for the Northern District of Ohio.

Respectfully submitted,

STERLING INFOSYSTEMS-OHIO, INC.,
Formerly known as Acxiom Information Security
Services, Inc.

ACXIOM IDENTITY SOLUTIONS, LLC,
Formerly known as Acxiom Risk Mitigation, Inc.
and ACXIOM CORPORATION

_____/s/_____
Charles K. Seyfarth (Va. Bar No. 44530)
LeCLAIRRYAN, A Professional Corporation
Riverfront Plaza – East Tower
951 E. Byrd Street, Eighth Floor
Richmond, Virginia 23219
Telephone: (804) 916-7159
Facsimile:  (804) 916-7259
Charles.Seyfarth@leclairryan.com

Megan S. Ben'Ary (Va. Bar No. 47349)
LeCLAIRRYAN, A Professional Corporation
2318 Mill Road, Suite 1100
Alexandria, VA  22314
Telephone: (703) 684-8007
Facsimile:  (703) 647-5983
Megan.Benary@leclairryan.com

**_Counsel for Defendant, Sterling InfoSystems-Ohio,_**
**_formerly known as Acxiom Information Security Services, Inc._**

_____/s/_____

David N. Anthony (VSB No. 31696)
Alan D. Wingfield (VSB No. 27489)
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia  23219
Telephone: (804) 697-1200
Facsimile:  (804) 697-1339
david.anthony@troutmansanders.com
alan.wingfield@troutmansanders.com

**_Counsel for Defendants, Acxiom Identity Solutions, LLC, formerly known as Acxiom Risk Mitigation, Inc. and Acxiom Corporation_**

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of October 2012, I filed a true and correct copy of the foregoing on the Court's Electronic Case Filing System, which will send a notice of electronic filing to:

Leonard A. Bennett, Esq.
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd, Suite 1A
Newport News, VA 23601
Telephone:  (757) 930-3660
Facsimile:  (757) 930-3662
lenbennett@cox.net

Dale W. Pittman, Esq.
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb St.
Petersburg, VA 23803
Telephone:  (804) 861-6000
Facsimile:  (804) 861-3362
dale@pittmanlawoffice.com

Michael A. Caddell, Esq.
Cynthia B. Chapman, Esq.
Craig C. Marchiando, Esq.
CADDELL & CHAPMAN
1331 Lamar St, Suite 1070
Houston, TX 77010
Telephone: (713) 751-0400
Facsimile:  (713) 751-0906
ccm@caddellchapman.com
mac@caddellchapman.com

Matthew J. Erausquin, Esq.
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Rd, Suite 600
Alexandria, VA 22314
Telephone: (703) 273-6080
Facsimile:  (888) 892-3512
matt@clalegal.com

James A. Francis, Esq.
David A. Searles, Esq.
FRANCIS & MAILMAN PC
Land Title Building
100 S Broad Street, 19th Floor
Philadelphia, PA 19110
Telephone:  (215) 735-8600
Facsimile:   (215) 940-8000
dsearles@consumerlawfirm.com
jfrancis@consumerlawfirm.com

***Counsel for Plaintiffs***

        /s/
Megan S. Ben'Ary (Va. Bar No. 47349)
LeCLAIRRYAN
2318 Mill Road, Suite 1100
Alexandria, VA  22314
Telephone: (703) 684-8007
Facsimile:  (703) 647-5983
Megan.Benary@leclairryan.com
***Counsel for Sterling InfoSystems-Ohio,
formerly known as Acxiom Information
Security Services, Inc.***

25