**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| **TYRONE HENDERSON,** ) | |
| **CHARLES TAYLOR, and** ) | |
| **WILLIAM WILES,** ) | |
| on behalf of themselves and ) | |
| all others similarly situated, ) | |
| ) | |
| **Plaintiffs,** ) | **Case No. 3:12-cv-00589-REP** |
| ) | |
| **v.** ) | |
| ) | |
| **ACXIOM RISK MITIGATION, INC.,** ) | **CLASS ACTION** |
| **ACXIOM INFORMATION SECURITY** ) | |
| **SERVICES, INC., and** ) | |
| **ACXIOM CORPORATION,** ) | |
| ) | **JURY TRIAL DEMANDED** |
| **Defendants.** ) | |
| ) | |

**PLAINTIFFS' OPPOSITION TO**
**DEFENDANTS' JOINT MOTION TO TRANSFER VENUE**

Plaintiffs, Tyrone Henderson, Charles Taylor, and William Wiles, on behalf of themselves and all others similarly situated, oppose the request of Defendants Acxiom Information Security Services, Inc. ("AISS"), Acxiom Risk Mitigation ("ARM"), and Acxiom Corporation ("Acxiom Corp.") to transfer this case to the Northern District of Ohio. In support of their Opposition, Plaintiffs state:

The Northern District of Ohio bears at best a tangential relationship to this case, and it is no more convenient a location in which to litigate this case than is this District. Indeed, since the newly formed Sterling is the only Defendant with any ties at all to the Northern District of Ohio, a venue change would be solely for the convenience of Sterling, AISS's new owner.  Since the venue of Plaintiffs' choosing is presumed the correct one and the Defendants bear the burden of showing otherwise, it is incumbent upon them to make a ***strong*** showing of inconvenience to

warrant transfer. Defendants have not done so, utterly failing to provide the specificity that courts in this District have previously held is required. In short, the Defendants' desire to treat Plaintiffs' decision to sue in the District in which they reside as an insignificant fact because they also allege class claims cannot stand. The case is properly brought in this District and Division, and Defendants have not carried their burden to show that the balance of equities *strongly* favors moving the case to the Northern District of Ohio. The Court should decline Defendants' invitation to transfer the case, and should retain venue here in Richmond.

## I.    FACTUAL BACKGROUND

This is a consumer class action based upon Defendants' serial violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x ("FCRA"). Though brought in part as a national class action, the case centers upon FCRA violations as to two residents of this District AND Division—Tyrone Henderson and Charles Taylor—and a third Plaintiff who resides in Texas. In fact, Plaintiffs are prosecuting substantial individual claims under 15 U.S.C. § 1681e(b) for the inaccuracy of their background checks and will seek to prove at trial their individualized actual damages.  Plaintiffs Henderson and Taylor each applied for work from within this District, and each respective employer's decision not to employ Mr. Henderson and Mr. Taylor was based at least in part on an Acxiom consumer report obtained by those employers. (Ex. 1, Declaration of Tyrone Henderson ("Henderson Decl.") ¶¶ 3, 6; Ex. 2, Declaration of Charles Taylor ("Taylor Decl.") ¶¶ 3, 6.) And nearly all of the information Defendants would compile regarding Virginia residents Henderson and Taylor would of course be obtained from public records sources in Virginia.   When Plaintiff Henderson sought further information from Acxiom regarding the contents of his Acxiom report that communication emanated from this District. (Ex. 1, Henderson Decl. ¶¶ 8–10.) Similarly, Plaintiffs Taylor also contacted Acxiom about inaccuracies

in his Acxiom-created background report, and that communication again emanated from this District. (Ex. 2, Taylor Decl. ¶¶ 9–10.) They also received their replies from Acxiom within this District. (Ex. 1, Henderson Decl. ¶ 8; Ex. 2, Taylor Decl. ¶ 8.) Importantly, with the possible exception of telephone calls or written correspondence regarding Defendants' FCRA violations, Plaintiffs have had not had any contact with Ohio. (Ex. 1, Henderson Decl. ¶ 8; Ex. 2, Taylor Decl. ¶ 8.) If Plaintiffs did have any contact with Ohio through their communications with Defendants, those communications originated within this District. (Ex. 1, Henderson Decl. ¶ 8; Ex. 2, Taylor Decl. ¶ 8.)

Apart from themselves, Plaintiffs Henderson and Taylor also have key witnesses and documentary evidence supporting their allegations located in this District. Plaintiff Henderson has identified at least six witnesses—three of whom are family members—who he expects to call at trial, and Taylor has identified four fact witnesses—including his wife—who he expects to call at trial. (Ex. 1, Henderson Decl. ¶¶ 6–7; Ex. 2, Taylor Decl. ¶¶ 6–7.) Neither is aware of any witnesses located in Ohio who would support their claims for damages due to Defendants' FCRA violations. (Ex. 1, Henderson Decl. ¶ 12; Ex. 2, Taylor Decl. ¶ 13.)

Despite these concrete connections to the District of Plaintiffs' residence, Defendants ask the Court to transfer the case to a District that only Acxiom Information Security Services, Inc., doing business as an absorbed entity within Sterling Infosystems, Inc. ("Sterling") claims to be convenient.[1] In fact, Ohio is not even home for Sterling as its headquarters and relevant home

---

[1] Upon the purchase of Acxiom Information Security Services, Inc. by Sterling Infosystems, Inc., the Defendant has been fully absorbed into the "Sterling family" without separate executive management, marketing or compliance resources.  For example, any customer or consumer who previously entered the AISS website would be redirected to the single website for Sterling Infosystems. (Ex. 6, Internet screenshot redirecting viewers to Sterling's website.) Sterling boasts:

remains in New York, where certainly all executive, management depositions will take place.

(*See* Ex. 3, at 2 contact information from Sterling's website (showing "Corporate Headquarters"

with New York Address).) Further, Sterling's Independence location, one of many worldwide,

serves only as Sterling's "Regional Headquarters" and even then only since May of this year.

(*See* Ex. 5, Sterling Press Release ("NEW YORK, May 1, 2012 – Sterling Infosystems, Inc.,

today announced it will open a new regional headquarters in Independence, OH.   After careful

consideration, the company selected the Cleveland area over Virginia, Georgia, and various other

locations.  Sterling is the largest background checking company in North America.").) In all,

Sterling has over 2,200 employees and at least 6 offices throughout the United States. (Ex. 7,

information about Sterling from its website, at 3.) While Defendants strain to establish an

exclusive connection to Ohio for purposes of their Motion, the truth is that Ohio is no more an

appropriate place to transfer the case than any other in which the Defendants operate. The Court

should therefore deny Defendants' Motion.

---

> The acquisition of AISS is an important milestone in the company's continued growth and supports Sterling's strategy to provide the broadest unified background screening suite worldwide. With over a decade as one of the fastest growing background screening companies, Sterling now serves a diverse base of over 10,000 customers ranging from leading Fortune 500 firms to small and medium sized businesses.

(Ex. 4, information on purchase of AISS from Sterling Infosystems' website at 3.)  They would then be welcomed by the Sterling CEO, confirming:

> We are extremely enthusiastic about the prospects ahead as we blend the considerable talents of Acxiom/AISS into the Sterling community. Acting as one, we will strive enhance your experience so that you continue to enjoy the same quality and ease of use that you have come to expect as a dedicated user.

(*Id.* at 4.) Even if the corporate formalities were effective to maintain a technical barrier and preserve the separateness of the Sterling parent and Sterling Acxiom subsidiary, the most critical witnesses and evidence for this case would still be derived from Sterling Infosystems, Inc., as it was the entity in existence at the time Plaintiffs' claims accrued and that oversaw the FCRA processes and procedures at issue in this case.

## II.    ARGUMENT AND AUTHORITIES

### A.    The Standard for Transferring Venue

28 U.S.C. § 1404(a) governs transfer of venue, and provides that "for the convenience of the parties and witnesses, in the interest of justice, a district court *may* transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (emphasis added).  Whether transfer is proper, therefore, is within the Court's discretion. *Samsung Elecs. Co., Ltd. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 715 (E.D. Va. 2005). In conducting its transfer analysis, the Court must engage in two inquiries: "(1) whether the claims might have been brought in the transferee forum, and (2) whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum."  *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003). Transfer is inappropriate if the result is simply a shifting of the burdens of litigation from one party to the other. *MuscleDriver USA, LLC v. Smith*, No. 0:11–1777–MBS–PJG, 2012 WL 1825231, at *7 (D.S.C. April 17, 2012).

The party challenging venue has the burden of demonstrating that venue is improper. *Nossen v. Hoy*, 750 F. Supp. 740, 742 (E.D. Va. 1990); *Kraft v. Hoskins*, 311 F. Supp. 1404, 1405 (E.D. Va. 1970). Where, as here, venue is proper in the plaintiff's chosen district, Judge Jackson recently described the movant's burden as "heavy." *Smithfield Packing Co., Inc. v. V. Suarez & Co., Inc.*, 857 F. Supp. 2d 581, 585 (E.D. Va. 2012) (citing *Beam Laser Sys., Inc. v. Cox Commc'ns, Inc.*, 117 F. Supp. 2d 515, 518 (E.D. Va. 2000)). Similarly, this Court has previously explained:

> The burden is on the moving party to show that transfer to another forum is appropriate, and the movant "must show that 'the balance of convenience among the parties and witnesses is *strongly* in favor of the forum to which transfer is sought.'"

*Carolina Cas. Ins. Co. v. Mares*, 826 F. Supp. 149, 152 (E.D. Va. 1993) (emphasis in original, citations omitted). In conducting its analysis, the Court should consider factors such as "(1) ease of access to sources of proof; (2) the convenience of parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the possibility of a view; (6) the interests in having local controversies decided at home; and (7) the interests of justice." *Smithfield*, 857 F. Supp. 2d at 585 (quoting *AFA Enters., Inc. v. Am. States Ins. Co.*, 842 F. Supp. 902, 909 (S.D. W. Va. 1994)).

**B.     The Court Should Deny the Motion Outright, as Defendants Have Not Properly Supported It**

Without even reaching the analysis of the factors set out above, the Court should deny Defendants' Motion for a fundamental failure—it is not supported by sufficient evidence to establish that transfer is warranted. This District has long required motions to transfer venue to be supported by detailed evidence, which naturally aids the Court's analysis of the true difficulties the parties face should transfer be denied:

> Witness convenience is often dispositive in transfer decisions. But the influence of this factor cannot be assessed in the absence of reliable information identifying the witnesses involved and specifically describing their testimony. *This type of particularized information, typically submitted in affidavit form, is necessary to enable the court to ascertain how much weight to give a claim of inconvenience.* Inconvenience to a witness whose testimony is cumulative is not entitled to greater weight.  By contrast, greater weight should be accorded inconvenience to witnesses whose testimony is central to a claim and whose credibility is also likely to be an important issue.

*Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1258 (E.D. Va. 1988) (emphasis added).

Although they acknowledge that specifics about witness testimony are required to carry their burden of persuasion for transfer (Dkt. No. 23 at 8), Defendants fail in their attempt to meet this standard by submitting the names of current and former employees and giving terse

descriptions of their "knowledge." (*See* Dkt. No. 23 at 15, 17.) Without more, however, there is simply no way to cull the cumulative testimony from that which is central to Plaintiffs' claims and Defendants' defenses. This problem is exacerbated by the following, non-specific examples of supposed witness evidence that exists in the proposed transferee district:

- "at least five other Sterling employees were involved in the processes of preparing Mr. Henderson's background report, communicating with Mr. Henderson about the report and/or investigating his dispute about information contained in the report."

- "at least eleven Sterling employees were involved in the process of preparing Mr. Taylor's background report and/or communicating with Mr. Taylor about the report."

- "at least five Sterling employees were involved in the processes of preparing Mr. Wiles' background report, communicating with Mr. Wiles about the report and/or investigating his dispute about information contained in the report."

(Dkt. No. 23-1 ¶¶ 32–34.) These designations reek of cumulative and uncontroversial evidence but, as Defendants have failed to show what the testimony of each of these unnamed "employees" would be, such an inquiry cannot even be undertaken. Further, and more basically to the point, is the problem that absent the specific testimony that would be elicited from these witnesses, the Court cannot determine whether that evidence would even be probative. For example, a person "involved in the process of preparing Mr. Henderson's background report" could be the person who inserted paper into a printer from which the report was printed. That evidence, however, has little probative value for Mr. Henderson's claim. Under such circumstances, a defendant has failed in its charge to persuade the Court that transfer is proper, so the Motion should be denied. *See Bd. of Trs.*, 702 F. Supp. at 1258 ("There is no detailed description of the supervisors' testimony and no convincing showing that the supervisors' testimony would be probative.").

Along these same lines, Defendants have also omitted the locations of former-employee witnesses they identify, content instead to explain that their "last known address is in the

Cleveland, Ohio area." (Dkt. No. 23-1 ¶¶ 21, 23, 25, 28–30, 32–34.) Such specious conduct cannot go unchallenged, particularly where specificity is required for Defendants to meet their burden of showing transfer is proper. While perhaps full addresses may need to be redacted from a public filing, Defendants must certainly be required to prove that these witnesses are subject to the subpoena power of the Northern District of Ohio court (since the Defendants raise that very point (Dkt. No. 23 at 16)), as well as when those employees left Sterling and their addresses last checked. As Defendants have currently set out their evidence, the Court simply cannot evaluate whether these witnesses in fact still reside within the Northern District of Ohio's subpoena power because even Sterling—a company that certainly should be able to locate current addresses— does not know where they are. Again, specifics are a must, and Defendants fall short.

Defendants' argument is also a gross overstatement, or even misleading suggestion that Sterling's Ohio current and former employees identified for this Motion are important to the case or will offer necessary testimony. That assertion is objectively false. Sterling only purchased Acxiom Information Security Services, Inc. in 2012 and all of the facts as to each Named Plaintiff had already occurred before this transaction. Further, even though Sterling has identified the names of particular current or former employees in Ohio, it offers no explanation as to why such witnesses would be material or important to this case.  There is little factual dispute in the case regarding the proffered subject matter for the Sterling/ASIS employees Sterling has rounded up.  In fact, the witnesses that Sterling has tried to identify regard the individual creation of the consumer reports for the Named Plaintiffs. These issues are not alleged or particularly material for the class claims, but instead regard the Plaintiffs' individual accuracy claims. (*See* Dkt. No. 1 ¶¶ 166–70.) In fact, Sterling boasts that most of its background checks are "automated" and are completed "in less than 4 hours." (Ex. 8, information from Sterling's website at 4.) With the little

human involvement in Sterling's processes this evidence exhibits, there is minimal need for multiple witnesses for the Class claims.

Further, the processes at issue in this case and challenged by Plaintiffs on a class basis are in fact standardized and system-wide procedures that are to be proven largely based on procedures, policies and other written documents. Even Sterling concedes that its electronic records are maintained close to the District, in Maryland. (Dkt. No. 23-1 ¶ 13.). In contrast, the Sterling witnesses that will matter most—those that will necessarily be called by Defendant to defend Plaintiffs' claim that it "willfully" violated the FCRA—are its executive and compliance witnesses. And though a low-level compliance employee may reside in Ohio, the employees who most publically champion Sterling's FCRA compliance position are in New York. (*See* Ex. 9, Linkedin profile of Joe Rotondo, VP of Compliance with Sterling Testing Systems (noting location of Sterling Testing Systems in New York); *see also* Ex. 10, schedule of events from Sterling Infosystems' website at 3 (listing Joe Rotondo, VP of Regulatory Compliance for Sterling Infosystems, as a presenter for a Nov. 9, 2012 webinar entitled "The FCRA and the Background Check Process"); Ex. 11, presentation regarding FCRA compliance (showing Joseph Rotondo as presenter and attributing New York phone number to him).) Alternatively, as to the Defendant's exposure before the 2012 sale to Sterling, those management witnesses remain in Arkansas, the home of co-Defendant Acxiom Corp.

## C.  Defendants Have Failed to Meet Their Heavy Burden to Show That Transfer to the Northern District of Ohio is Proper

### 1.  Transfer is inappropriate, as Defendants have not shown that this case could have been brought in the Northern District of Ohio

To successfully show that transfer is proper under 28 U.S.C. § 1404(a), the movant must initially show that the requested venue is one in which the case originally "might have been

brought." 28 U.S.C. § 1404(a). Relying on Supreme Court authority more than 50 years old, courts within this District have repeatedly concluded that key to this threshold demonstration is proof that, at the time the case was filed, the district court in the transferee venue "could have exercised personal jurisdiction over the defendants and the district was a proper venue for the action *without waiver or consent by the defendants*." *Nationwide Mut. Ins. Co. v. The Overlook, LLC*, No. 4:10cv00069, 2010 WL 2520973, at *3 (E.D. Va. June 17, 2010) (citing *Kontoulas v. A.H. Robins Co., Inc.*, 745 F.2d 312, 315 (4th Cir. 1984)) (emphasis added); *see Inline Connection Corp. v. Verizon Internet Servs., Inc.*, 402 F. Supp. 2d 695, 699 (E.D. Va. 2005) ("Thus, the threshold matter this Court must consider is whether this *entire action* could have originally been brought by Plaintiff in the District of Delaware, with respect to both personal jurisdiction and venue.") (emphasis added). As that final italicized clause indicates, a party seeking transfer cannot dodge this requirement by simply consenting to personal jurisdiction and venue in the transferee forum. *U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd.*, 357 F. Supp. 2d 924, 930 (E.D. Va. 2005).

The Defendants here have completely failed to address this requirement in their briefing. Instead, they repeatedly mention Sterling's connection to the Northern District of Ohio, and that Mr. Taylor's prospective employer was based in Ohio and Mr. Taylor sent his application there. (Dkt. No. 23 at 8–9.) This discussion of the issue then simply ends with *ipse dixit* result that "[b]ecause a substantial portion of the omissions or acts giving rise to this action occurred in the Northern District of Ohio, this civil action could have been brought in that forum at least to the same extent as it has been brought here." (*Id.* at 9.) This is not enough to warrant transfer.

Setting aside the glib nature of Defendants' discussion of the aspects of venue that they do address, there is no mention whatsoever of a connection with the Northern District of Ohio

and Defendants ARM or Acxiom Corp. for venue purposes. (*See id.*) Further, Defendants' brief is bereft of any evidence regarding personal jurisdiction over ARM or Acxiom Corp. in Ohio. (*See generally id.*)[2] While these two Defendants apparently agree to submit to the jurisdiction of the Northern District of Ohio court should this Court grant the Motion to Transfer, multiple courts have held that waiver of jurisdiction is insufficient to show that the case "might have been brought" in the transferee district. *Nationwide Mut.*, 2010 WL 2520973, at *3; *Inline Connection*, 402 F. Supp. 2d at 699; *U.S. Ship Mgmt.*, 357 F. Supp. 2d at 930. In light of this failure to establish that the case "might have been brought" in Ohio as to ARM and Acxiom Corp., the Defendants have failed to meet the initial requirement for transfer under 28 U.S.C. § 1404(a). The Court should therefore terminate its analysis and deny Defendants' Motion.

### 2.   Contrary to Defendants' assertion, Plaintiffs' choice of venue in Richmond should not be idly cast aside

Defendants next argue that, because this is a national class action, Plaintiffs' choice of this venue is entitled to "little weight." (Dkt. No. 23 at 9–10.) Since the potential Class Members are scattered across the nation, the argument goes, Plaintiffs' forum choice is insignificant. (*Id.*) In this instance, however, Defendants have wholly failed to do what other courts considering such an assertion have suggested is required, that is, support the assertion with actual evidence. *See Ellis v. Costco Wholesale Corp.*, 372 F. Supp. 2d 530, 543 (N.D. Cal. 2005) ("Courts may take into account the distribution of a putative class in assessing transfer requests."); *Berenson v. Nat'l Fin. Servs., LLC*, 319 F. Supp. 2d 1, 3 (D.D.C. 2004) (considering defendant's motion-to-transfer argument—that plaintiff's choice of forum is irrelevant in national class action—against

---

[2] Defendants likewise fail to address personal jurisdiction and venue for ARM and Acxiom Corp. in the Northern District of Ohio in their brief in support of their Motion to Dismiss for Lack of Personal Jurisdiction, or, In the Alternative, For a Transfer of Venue. (*See generally* Dkt. No. 27.)

*evidence* defendants provided showing "the potential members of the plaintiffs' class if certification is granted, which lists the percentage of potential class members who reside in various jurisdictions throughout the country"). Defendants here provide nothing—no existence of a national class, no evidence of class size, and no evidence of national distribution. Instead, Defendants ask the Court to rest its decision solely on the supposition that there are Class Members outside this District. Certainly more is required for Defendants to meet their heavy burden of showing transfer is proper.

Further contrary to Defendants' position, courts within this Circuit have not so readily agreed and have given this factor the greatest weight—even in class actions—especially where, as here, plaintiffs have chosen to sue in their home district. *See D'Addario v. Geller*, 264 F. Supp. 2d 367, 391 (E.D. Va. 2003) (giving plaintiffs' choice of venue "substantial weight" in shareholder derivative suit); *Doe v. Connors*, 796 F. Supp. 214, 222 (W.D. Va. 1992) (finding "no reason to grant th[e] decision [to sue in plaintiffs' home district] anything but the strongest weight" in class action case). Even the principal case upon which Defendants rely for their line of argument, *Byerson v. Equifax Information Services, LLC*, 467 F. Supp. 2d 627, 633 (E.D. Va. 2006), actually supports respecting Plaintiffs' choice of forum in a class action:

> But here, the Plaintiffs' choice of forum is amenable to inexpensive discovery and trial because the forum is home both to the Plaintiffs and to key non-party witnesses. Where that is the case, a plaintiff's choice of forum is entitled to significant weight that is not materially diminished merely because the case is a class action.

467 F. Supp. 2d 627, 633 (E.D. Va. 2006). As Plaintiffs and key non-party witnesses reside in this District, Defendants' argument loses its luster.

Plaintiffs' Richmond venue choice deserves the appropriate, high level of deference. Plaintiffs chose to sue in the District where two of the three of them reside. (Ex. 1, Henderson

Decl. ¶ 3; Ex. 2, Taylor Decl. ¶ 3.) Those resident Plaintiffs applied for work in this District and, when those employers procured inaccurate Acxiom reports about them, they contacted Acxiom to dispute the inaccuracies from this District. (Ex. 1, Henderson Decl. ¶ 8; Ex. 2, Taylor Decl. ¶ 8.) Those communications originated here, and the responses were received here. (Ex. 1, Henderson Decl. ¶ 8; Ex. 2, Taylor Decl. ¶ 8.) The derogatory information contained in Plaintiff Taylor's Acxiom report pertains to records maintained in the Commonwealth of Virginia. (Ex. 2, Taylor Decl. ¶ 11.) Plaintiffs chose this District because it is convenient for them to attend the trial of their case, and because they want a jury of their peers—Virginians who live in this District—to decide the case. (Ex. 1, Henderson Decl. ¶¶ 5, 11; Ex. 2, Taylor Decl. ¶¶ 5, 12.) Apart from the fact that their Acxiom reports may have been partially created in Ohio and the employer to which Mr. Taylor applied for work has a facility in Ohio, the Plaintiffs have no connection to Ohio. (Ex. 1, Henderson Decl. ¶ 8; Ex. 2, Taylor Decl. ¶ 8.) In similar instances, including class cases, the Court has accorded plaintiff's venue choice the most deference, and refused to transfer. (*See* Ex. 12, Dkt. No. 50, *Souter v. Equifax Info. Servs.*, No. 3:10-cv-00107 (E.D. Va.) (denying motion to transfer venue in class action case brought in Richmond by plaintiffs who were not Richmond residents); *see also* Ex. 13, Dkt. No. 66, *Graham v. LexisNexis Risk & Info. Analytics Group, Inc.*, No. 3:09-cv-00655 (E.D. Va.) (refusing to transfer venue in Fourth Circuit class action filed in Richmond by named plaintiffs who were Richmond residents).) The Court should conclude likewise here, and maintain venue in Richmond.

### 3. The fact that some evidence is within the Northern District of Ohio does not favor transfer because other pertinent evidence is spread across the Country

In making their self-serving arguments for transfer to the Northern District of Ohio, the Defendants take too narrow a view of Plaintiffs' claims, mentioning only those portions of the

Complaint that may lend a modicum of support to their position. Simply put, this is not a case that merely involves the issuance of inaccurate consumer reports about the Plaintiffs—it is a case about the interrelation of Acxiom's parents and subsidiaries and their combined use of data that is gathered and sold for FCRA as well what Defendants have concluded are non-FCRA purposes. (*See* Dkt. No. 1 ¶¶ 13–16.) The investigation of Plaintiffs' claims will therefore require discovery of greater breadth than simply Sterling's offices and witnesses who work or once worked there. Defendants agree on this point, explaining that with regard to Plaintiffs' allegations, "[e]ach of these alleged violations of the FCRA depend entirely upon inquiry into the actual conduct of Sterling, Acxiom Corp., and ARM." (Dkt. No. 23 at 6 (discussing multiple paragraphs of the Complaint).) While Plaintiffs have always held this position, it is also apparent to the Defendants that the scope of this case will reach far outside the Northern District of Ohio.

As Defendants necessarily concede, ARM was a Colorado corporation headquartered in Broomfield, Colorado,[3] and Acxiom Corp. is a Delaware corporation with offices in Arkansas. (Dkt. No. 28 ¶¶ 10–11; Dkt. No. 23 at 3.) Sterling InfoSystems, Inc., which now owns Defendant AISS, is based in New York. (Dkt. No. 28 ¶ 11.) One of Defendants' witnesses also explains that Sterling maintains electronic records in Ohio and Maryland and, before its acquisition by Sterling (when it was owned by Acxiom), maintained those records in Ohio and Arkansas. (Dkt. No. 23-1 ¶ 13.) Sterling has employees in the Northern District of Ohio, but also has one in Wisconsin and two in Tennessee. (*Id.* ¶ 14.) Since Plaintiffs' allegations touch not only on the accuracy of their reporting but also upon the nature by which all of these Defendants gather, hold, transfer among them, and sell information about American consumers, it is obvious that witnesses and documentary discovery will likely be found in locations in addition to the

---

[3] ARM's Answer does not reveal the location of its current principal place of business. (*See* Dkt. No. 29 ¶ 10.)

Northern District of Ohio. Defendants seek to establish Ohio as "the nucleus of operative facts" for this case (*see* Dkt. No. 23 at 10–11), but the fact is this case will not likely have one. For example, Sterling fails to note to the Court that it houses some information technology facilities in Georgia, since it seeks staff at that location. (*See* Ex. 14, employment postings from Sterling's website (showing multiple postings of employment opportunities with Sterling in Marietta, Georgia).) Electronic information is certainly an important piece of this case, but even that piece is spread from at least Ohio to Maryland to Arkansas to Georgia. Decisions regarding corporate policy, FCRA training, and FCRA compliance—each an important touchstone for Plaintiffs' claims—all likely took place *outside* Ohio because no parent company is headquartered there.[4]

Defendants' arguments ignore this reality, instead focusing solely on Sterling and how evidence located in Ohio supposedly merits transfer there. In taking this position, however, Defendants actually support keeping the case in Richmond because it shows that the Northern District of Ohio is but one of at least three possible venues for this case. As Defendants posit: "[m]ultiple courts considering § 1404 transfer motions in FCRA cases have noted that the situs of the material events . . . is generally the place where the defendant credit reporting agency conducted its business." (Dkt. No. 23 at 12 (citing cases).) Thus, in keeping with this argument, Arkansas or Colorado (or wherever ARM currently calls home) is just as appropriate a place in which to transfer the case as the Northern District of Ohio because Acxiom Corp. and ARM are headquartered in those states.

---

[4] Additionally, while Defendants assert that Sterling Ohio has "always" and "[a]t all relevant times" been headquartered in Independence, Ohio (*see* Dkt. No. 23 at 5, 9), the fact is that Sterling Ohio has only existed since early this year. (Ex. 4, information regarding Sterling's acquisition of AISS, at 3 (noting transaction close date as January, 2012).) Sterling's Independence facility was opened sometime *after* May 1, 2012. (Ex. 5, Sterling May 1, 2012 press release, at 3 (regarding opening of Independence facility).) "Always" has therefore been a period of approximately six months, and Sterling Ohio did not even exist at the time Acxiom issued its reports on Plaintiffs.

Defendants' cited authority does not compel a different result. Three of those cases, *Murphy v. Trans Union, LLC*, 2012 U.S. Dist. LEXIS 115610, at *14-15 (E.D. Pa. Aug. 15, 2012), *Bogollagama v. Equifax Information Services*, 2009 U.S. Dist. LEXIS 110821, at *3 (E.D. Pa. Nov. 30, 2009), and *Barela v. Experian Information Solutions, Inc.*, 2005 U.S. Dist. LEXIS 19105, at *4 (N.D. Ill. Apr. 4, 2005), involved plaintiffs who, unlike here, sued in districts which were not their homes. Further, *Smith v. HireRight Solutions, Inc.*, 2010 U.S. Dist. LEXIS 55477, at *4 (E.D. Pa. June 7, 2010), *Bogollagama*, and *Barela* all involved transfers requested when the case involved a single defendant, not three, with offices in at least three locations, as is the case here. Defendants' other case, *Ayling v. Travelers Property Casualty Corp.*, 1999 U.S. Dist. LEXIS 16716, at *5 (E.D. Pa. Oct. 27, 1999) found transfer proper where there was already a similar pending case in Connecticut, the requested venue. There are no cases pending in other districts between any of the Parties here. None of these cases supports uprooting this case and moving it to an unrelated district.

Indeed, to follow Defendants' logic, no FCRA class action could ever be filed in a district other than the one in which the *defendant* resides, because no other place has an equal or greater connection to the case. Such a position completely re-writes the permissive venue statute, and also flies in the face of a multiple decisions by this Court refusing to transfer venue to one requested by FCRA defendants. (*See* Ex. 12, Dkt. No. 50, *Souter v. Equifax Info. Servs.*, No. 3:10-cv-00107 (E.D. Va.); *see also* Ex. 13, Dkt. No. 66, *Graham v. LexisNexis Risk & Info. Analytics Group, Inc.*, No. 3:09-cv-00655 (E.D. Va.)); *Mullins v. Equifax Info. Servs., LLC*, No. Civ.A. 3:05CV888, 2006 WL 1214024, at *1 (E.D. Va. April 28, 2006).

### 4.     The access to sources of proof favor no one other district over this one

In claiming that the ease of access to sources of proof favors the Northern District of Ohio, Defendants further support keeping the case in Richmond by admitting that "key non-party records will also be located elsewhere -- for example, at the headquarters of Wal-Mart in Bentonville, Arkansas and at the headquarters of Allstate in Northbrook, Illinois." (Dkt. No. 23 at 13.) Defendants therefore identify two *new* locations of documentary evidence, in addition to Defendants' own offices in Arkansas, Colorado (or wherever ARM is currently headquartered), and New York, bringing the total number of locations of relevant evidence to at least five, in four states.[5] Defendants further confuse the issue of access to proof by failing (or being unable) to identify the location of important, relevant evidence:

> The documentary evidence regarding Sterling's procedures, including the preparation of background reports, and the preparation of notices and dispute-handling, will *presumably* involve a variety of Sterling's records. Although some of those records *may* be located in other locations, *many* are located in Ohio and/or maintained electronically via servers housed in Ohio.

(*Id.* at 13 (emphasis added).) Put simply, Defendants clearly show that at least four additional districts could potentially be proper ones in which the case could have been brought, and Defendants do not sufficiently differentiate the Northern District of Ohio from any of the others when it comes to location of evidence. Where specifics are required to meet their heavy burden, Defendants provide none.

Separately, the physical location of documentary evidence is nearly irrelevant because of the ease with which information can be exchanged. Being in the electronic-data-exchange

---

[5]In addition, Sterling touts itself as a "truly global" organization, having "12 offices on 3 continents" as well as over 2,200 employees. (Ex. 7, information taken from Sterling's website, at 3, 5.) While Sterling has chosen not to include such facts in its Motion, it is of course likely that any of these 2,200 employees may have relevant information, and other relevant information would be located at Sterling's offices in the United States.

business, Defendants must certainly understand courts' recognition that information in hard copy or stored electronically is easily moved from one place to another. As technology has improved, the location of documentary evidence has become less of a factor in the venue analysis. *See, e.g.*, *Red Strokes Entm't, Inc. v. Sanderson*, No. 3:12–cv–0008, 2012 WL 1514892, at *14 (M.D. Tenn. May 1, 2012) ("[G]iven the advent of electronic discovery, and the relative ease in which documents can be transported, their location should generally play a neutral role in determining whether to transfer a case."); *Wyandotte Nation v. Salazar*, 825 F. Supp. 2d 261, 271 (D.D.C. 2011) ("With respect to the location of documents, in this digital age of easy and instantaneous electronic transfer of data, the Court does not find that the 'ease of access to sources of proof' factor carries any weight in the transfer analysis."); *Oakley v. Remy Int'l, Inc.*, No. 2:09–0107, 2010 WL 503125, at *5 (M.D. Tenn. Feb.5, 2010) ("The Court recognizes that in the modern era of photocopying, scanning, fax machines, email, overnight delivery services, etc., the location of documents should be considered a neutral factor when deciding to transfer venue under § 1404(a).") (internal quotation marks omitted); *see* 15 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3853 (3d ed. 2012) ("However, since most records and documents now can be transported easily or exist in miniaturized or electronic form, especially, for example, the ubiquitous e-mail, their location is entitled to little weight."). This factor supports keeping the case in Richmond.

### 5. Party and witness convenience require keeping this case here, as Defendants fail to provide specifics warranting transfer

#### a. Defendants have failed to show that convenience of the Parties and their witnesses requires moving the case to Ohio

Defendants do not even address Party convenience, since it is obvious that Plaintiffs would suffer more by a move to the Northern District of Ohio than would the two well-funded,

nationally operating corporations that do not operate in Ohio or would Sterling Ohio by traveling to Richmond. This topic is likely also avoided so that Defendants do not have to address the obvious hole in it—Acxiom Corp. and ARM will be forced to travel if the case remains here or it is moved to the Northern District of Ohio because neither has offices there. (*See* Dkt. No. 23 at 3.) This factor undoubtedly favors keeping the case in Richmond, as Defendants' studious avoidance of the topic shows.

The relative financial strength of the Parties is an important consideration for the Court's burden analysis. *AGCS Marine Ins. Co. v. Associated Gas & Oil Co., Ltd.*, 775 F. Supp. 2d 640, 648 (S.D.N.Y. 2011); *see Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 290 (S.D.N.Y. 2004) ("The relative means of the opposing parties may support or discourage transfer of venue if there is a significant financial disparity between the parties."); *see also Food Sciences Corp. v. Nagler*, No. 09-1798 (JBS), 2010 WL 1186203, at *6 (D.N.J. March 22, 2010) ("Because the only factor weighing in favor of Defendant for transfer of venue is the disparity in financial resources between the parties, the Court finds that there is an insufficient basis upon which to transfer the case to Defendant's preferred venue."). Plaintiffs are of modest means, and traveling to the Northern District of Ohio to attend and testify at the trial of this case, to attend and testify at the preliminary and/or final approval hearing for any settlement that is reached, and to be present at any other hearings would work great hardship on them. As Plaintiff Taylor explains in his Declaration, the financial toll would be great for him to travel to Ohio, and doubly so because his wife is a key witness and would also need to travel. (Ex. 2, Taylor Decl. ¶¶ 14–15.) It would be financially difficult for him to continue as a Plaintiff if this case were moved to Ohio. (*Id.* ¶ 14.) Similarly, Plaintiff Henderson not in the best financial circumstances, as he is unemployed and lives on a fixed income provided by Social Security disability. (Ex. 1,

Henderson Decl. ¶ 4.) Like Plaintiff Taylor, the cost of travel for his witnesses is increased to him personally because three of them are family members. (*Id.* ¶¶ 6, 14.) It would be difficult financially for Plaintiff Henderson to travel to the Northern District of Ohio for the trial, and the difficulties such travel presents for Henderson personally jeopardizes his ability to continue with the case if it were to be transferred to the Northern District of Ohio. (*Id.* ¶¶ 13–15.)

As to employees who would testify for Defendants, party witnesses and those closely aligned with a particular party are presumed to be more willing to testify in a different forum. *Mullins*, 2006 WL 1214024, at *7. While the witnesses of one Party or the other here will be required to travel should the case remain in Richmond or be transferred to Ohio, the Defendants, being nationally operating conglomerates, are in a much better position to absorb those costs than are Plaintiffs and their potential witnesses. Defendants attempt to minimize this reality by stressing that "only two witnesses live in Virginia" (Dkt. No. 23 at 17), but this is not so. In their Declarations, Plaintiffs identify at least ten other witnesses, *all of whom live in this District*, who they expect to call at trial to support their claims. (See Ex. 1, Henderson Decl. ¶¶ 6–7 (identifying, by name, four fact witnesses including his wife); Ex. 2, Taylor Decl. ¶¶ 6–7 (identifying, by name, six fact witnesses, including his partner and children).) With the number of Party witnesses approaching equality from both sides, there is no point in arguing the inconvenience of travel because it is nearly equal.[6]

Defendants also miss an additional aspect of litigation that reduces the inconvenience on corporate witnesses. The Rules recognize that Defendants are certainly not required to produce for deposition each and every individual that may have knowledge pertaining to the case. Instead, as is done nearly universally in litigation such as this, corporate testimony can be

---

[6] It also bears repeating that Defendants Acxiom Corp., ARM, and their witnesses will be forced to travel regardless of transfer, as they are located outside Ohio.

provided through a 30(b)(6) representative. *See* FED. R. CIV. P. 30(b)(6). This tact saves the time, effort, and energy that would be required to produce for deposition several witnesses with knowledge of Defendants' operations. *See Coryn Group II, LLC v. O.C. Seacrets, Inc.*, 265 F.R.D. 235, 238 (D. Md. 2010) (discussing 30(b)(6) depositions and noting that in response to a notice "the corporation 'is expected to *create* a witness or witnesses with responsive knowledge,' and in doing so must make a good faith effort to 'find out the relevant facts—to collect information, review documents, and interview employees with personal knowledge'") (emphasis in original). The knowledge of several of the witnesses identified could be imparted into a single 30(b)(6) representative, thereby saving the other witnesses the inconvenience of preparing for and presenting for individual depositions. *Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda*, 390 F. Supp. 2d 479, 487 (D. Md. 2005) ("Thus, the duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved."). The reality is that Defendants here will do as defendants typically do—they will present far fewer fact witnesses in favor of 30(b)(6) witnesses, which reduces any potential inconvenience for the fact witnesses. In addition, the key legal issues that are in play in this case—FCRA interpretation and compliance—will be decided without reference to live testimony.[7]

> **b.    The existence of potential non-party witnesses in Ohio does not support transfer of the case**

As set out above, a defendant seeking transfer must specifically explain the testimony sought and the pertinence of that testimony to the case. (*See supra*, § II.B.) Defendants have

---

[7] Furthermore, human involvement with Sterling's processes is minimal, as it admits. (*See* Ex. 8, information from Sterling's website regarding criminal background searches at 4 (noting "70% of County, State, & Federal searches are automated").) When records are manually checked, those checks only take place in certain states, of which Ohio is not one. (*Id.* at 8 (explaining that Sterling's statewide record checks are not available in Ohio).)

failed to do so, relying instead on short, vague assessments of witness "knowledge" and their last known location. (*See* Dkt. No. 23 at 15.) Since, as Defendants assert, "[a]ll of these former employees will be relevant, and many will be key witnesses to this action" (*id.*), it would seem that Defendants could explain exactly what these witnesses will provide in the way of testimony, how that testimony is probative, and how it is not cumulative. *See Bd. of Trs.*, 702 F. Supp. at 1258 ("There is no detailed description of the supervisors' testimony and no convincing showing that the supervisors' testimony would be probative."); *see also Mullins*, 2006 WL 1214024, at *7 ("Naturally, in contrast to witness testimony that is merely cumulative, 'greater weight should be accorded inconvenience to witnesses whose testimony is central to a claim and whose credibility is also likely to be an important issue.'"). Defendants have not, defeating their Motion in the process.

Defendants' shortcomings, however, do not stop there. When addressing witnesses and convenience, the Court has concluded that travel must be specifically addressed: "Merely stating that potential witnesses reside beyond a forum's subpoena power does little to assist the court in weighing the convenience of the witness and the necessity of compulsory process." *Mullins*, 2006 WL 1214024, at *8. Defendants have fallen precisely into this trap, limiting their discussion of non-party witness inconvenience to simply explaining that they cannot compel former employees to testify, and those former employees are beyond the Court's subpoena power. (Dkt. No. 23 at 15–16.) As the Court noted in *Mullins*, "[w]hen the 'appearance of witnesses can be secured regardless of the forum's location through court order or persuasion by an employer who is a party to the action, this factor becomes less important.'" 2006 WL 1214024, at *8. While Sterling has stated that it cannot force any of its former employees to

testify, Sterling has provided no evidence that these witnesses would refuse to testify if simply asked to do so.

Defendants likewise ignore that fact that non-party-witness testimony can be preserved through deposition. Not every fact witness is so vital to a case that he or she must present live testimony at trial,[8] and Defendants have not assisted in assessing which witnesses are necessary for trial by providing the requisite detail against which to judge the necessity of its proposed witnesses' testimony. (*See, e.g.*, Dkt. No. 23 at 15 (setting out former employee Michael Cool's "knowledge" as "Company's products, services, compliance procedures, and resolution of Mr. Henderson's dispute").) The Court recognized this facet of the analysis in *Mullins* as well, explaining:

> Although live testimony is the preferred mode of presenting evidence, when non-party witnesses are unavailable to give live testimony, videotaped depositions often are sufficient. Somewhat less weight is given to witness inconvenience when a party is unable to demonstrate with any particularity that videotaped deposition testimony will be inadequate, and that live testimony is critical. This is especially so when the witness is not central to the case. "[L]oss of live testimony of less central witnesses is not so great a price for honoring plaintiff's choice."

*Mullins*, 2006 WL 1214024, at *8 (alteration in original). Here, Defendants have not even addressed the topic of depositions of non-party witnesses, completely failing to meet the Court's mandate from *Mullins*. This additional failure to properly support the Motion is fatal.

Finally, Defendants have provided no detail as to how traveling to this District for a trial is inconvenient for any of these non-party witnesses.[9] In sum, Defendants' discussion of non-

---

[8] AISS must certainly agree with this notion, as in a 2009 FCRA case filed in the Western District of Arkansas, it proposed to call only its employee witnesses live, content to present other witnesses by deposition. (*See* Ex. 15, Dkt. No. 75, *Christensen v. AISS, et al.*, No. 4:08-cv-04081-JLH (W.D. Ark.) ¶ 12.)

[9] Defendants' Motion also overlooks the fact that witnesses may move, further obviating the need to transfer venue to Ohio. Since the third-party witnesses identified no longer have ties to Sterling, there is no guarantee they will remain in the Northern District of Ohio throughout the

party witnesses simply states that they at one time lived in Ohio (as Sterling is not certain they still do), and the Court therefore cannot compel them to attend a trial here. (*See* Dkt. No. 23 at 14–16.) Presumptions of inconvenience are insufficient to carry the heavy burden of transferring venue—*actual* proof is required. *See Mullins*, 2006 WL 1214024, at *8 ("As for the third-party witnesses, [defendant] has failed to provide the Court with sufficient information, by affidavit or otherwise, that would permit the Court to assess the materiality and inconvenience to individual witnesses."). Defendants provide no evidence of inconvenience whatsoever, further dooming their Motion.

Ultimately, what Defendants propose is simply cost shifting—they would prefer to have Plaintiffs pay to travel than have to pay to travel themselves. Merely moving the burden of inconvenience across the line to the other party, the Court has recognized, "does not militate persuasively in favor of transfer." *Byerson*, 467 F. Supp. 2d at 633; *see Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 636 (E.D. Va. 2003) (finding witness convenience did not support transfer, noting "where 'the original forum is convenient for plaintiff's witnesses, but inconvenient for defendant's witnesses, and the reverse is true for the transferee forum . . . transfer is inappropriate because the result of transfer would serve only to shift the balance of inconvenience'") (alteration in original). Defendants claim this is not their intention (Dkt. No. 23 at 18), but it clearly is. Defendants trot out what they hope is a long-enough list of possible witnesses and airline ticket quotes that the Court will blindly agree that it is more inconvenient for a Sterling witness to get on a plane and fly to a trial in Richmond than it is to get in a car and drive to a trial in Cleveland. Real evidence of inconvenience is required for Defendants to carry

---

pendency of this case. Sterling appears to believe that while it has no authority over those former employees to compel their testimony at a trial in Richmond (Dkt. No. 23 at 15), it can somehow force these witnesses still in the Northern District of Ohio to remain there throughout the litigation of this case.

their burden, however, and here they provide none. *See Koh*, 250 F. Supp. 2d at 636 ("The party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence *and the degree of inconvenience*.") (emphasis added).

What is more, litigation is *always* burdensome and inconvenient, for both parties. Defendants' arguments regarding inconvenience are wholly unsupported and conclusory, and fail to establish that there is any burden at all for them to litigate in Richmond. If all Defendants have in the way of burden is a $550 airline ticket to Richmond (*see* Dkt. No. 23-3) for the handful witnesses that do need to travel for trial, the burden on Defendants is minimal. The Court should conclude that this factor likewise counsels against transfer.

### 6.  The interest of justice factor favors keeping this case in Richmond

In analysis of the "interest of justice" question, courts weigh such things as the pendency of a related action, the court's familiarity with the applicable law, docket conditions, access to premises that might have to be viewed, the possibility of unfair trial, the ability to join other parties, and the possibility of harassment. *Bd. of Trs.*, 702 F. Supp. at 1260. Claiming that most factors in the analysis are neutral, Defendants rest their hopes on their inaccurate, wholly unproven assertion that the Northern District of Ohio is "the situs of this controversy." (Dkt. No. 23 at 19.) As set forth above, however, the interrelation of the FCRA practices of three separate companies—with separate offices in at least two other states besides Ohio, and electronic records and likely witnesses in at least Arkansas, Maryland, and Ohio—are at the core of this case. This case is not, as Defendants would have the Court conclude, simply about how Sterling produced inaccurate reports about Plaintiffs. Given Plaintiffs' allegations and their pertinence to all of the

Defendants' data gathering, management, and sharing habits, the Northern District of Ohio bears no greater a relationship to this case than any of the other districts the Defendants call home.

Defendants also suggest that related cases filed by Plaintiff Henderson should be given no weight because federal law governs this case, meaning the related cases will not provide the Court with additional knowledge of the law. (*See* Dkt. No. 23 at 20.) This case, however, has more than a passing relationship to Plaintiff Henderson's related cases, and keeping this case here will do more than provide the Court with an enhanced knowledge of the law. Defendant's Motion fails to mention that *both* teams of defense lawyers represent Acxiom competitors in Plaintiff Henderson's related cases: AISS's attorneys represent the defendant in *Henderson v. Verifications, Inc.*, No. 3:11cv514 (E.D. Va.), while Acxiom Corp.'s attorneys represent the defendant in *Henderson v. Corelogic, Inc., et al.*, No. 3:12cv97 (E.D. Va.). Those cases involve more than simply the same Plaintiff as here—the involve the same inaccuracy at issue in this case, the same statutory claims, and the classes in all three cases will likely overlap because a consumer applying for employment with multiple employers will face inaccuracy problems with whatever consumer reporting agency the particular employer chooses. Keeping this case in Richmond will avoid inconsistent rulings, as these cases all touch on: what the FCRA demands of reporting agencies, whether a particular procedure willfully violates the FCRA, and the proper measure of punitive damages should willful violations be found. Defendants' suggestion that the weight of this and other factors is "neutral" is merely an attempt to sidestep issues they would undoubtedly lose.

There is no pending action between the Parties outside of the Richmond Division. This factor, therefore, favors keeping the case here.

The third "interest of justice" factor, docket conditions, points to maintaining the case in Richmond. In this District, one in which counsel knows all of the Virginia attorneys take considerable pride, justice is effective in part because it is swift. This swiftness is a direct result of the efficiency with which the Courts in this District manage their dockets. This District is consistently months, if not years, quicker to trial than any other. To the extent that this factor is applicable, it further supports retaining venue in this District.

Plaintiffs recognize that all courts would prefer to have cases move off their dockets. Many Courts, this one included, are faced with increasing burdens imposed by the growing number of Federal criminal cases and budget pressures limiting the addition of new judges and staff. Nevertheless, Plaintiffs' Counsel and Richmond Counsel for each of the Defendants have demonstrated their understanding of the Court's docketing pressures in all previous cases in which they have been involved. Of the large volume of cases filed in this Court by Plaintiffs' Counsel, only a small fraction have been forced to trial or even to dispositive motion. It remains Plaintiffs' Counsel's opinion that the docketing pressures imposed by the filing of these consumer cases require the Parties to be diligent and reasonable in reaching an amicable result. Regardless, this factor does not offer any assistance in support of Defendants' position.

None of the remaining interest-of-justice factors apply to this case.

**D.    Defendants' Remaining Authority Does Not Support a Conclusion Other Than That Transfer is Inappropriate**

Defendants' remaining arguments are based upon the analysis of additional authority on the subject of transfer. The Court should disregard that discussion entirely, as the cited cases share common attributes that make them inapplicable to the Court's analysis here. Three of the cited cases, *Owner-Operator Independent Drivers Ass'n, Inc. v. North American Van Lines, Inc.*, 382 F. Supp. 2d 821, 825 (W.D. Va. 2005); *Klingensmith v. The Paradise Shops, Inc.*, No. 07-

322, 2007 WL 2071677, at *1 (W.D. Pa. July 17, 2007); and *Klutho v. 21st Century Ins. Co.*, No. 07 C 4111, 2007 WL 4224296, at *1 (N.D. Ill. Nov. 26, 2007), all were suits against a single defendant, so it was relatively simple for those courts to conclude that a single proper, alternate forum exists. Here, as explained above, the analysis is complicated by the claims against Acxiom Corp. and ARM, neither of which is located in the Northern District of Ohio and neither of which has produced evidence that they are subject to personal jurisdiction there or that venue is proper as to them there. As these facts doom Defendants' Motion, they also render inapposite cases that were transferred to the home forum of a lone defendant.

Along these same lines, *Georgouses v. NaTec Resources, Inc.*, 963 F. Supp. 728, 731 (N.D. Ill. 1997), does not assist Defendants' position. While that case did allow transfer to Texas despite the existence of multiple defendants, the court there concluded that all defendants and necessary and indispensable parties were subject to jurisdiction in the transferee forum and, in addition, all documentary evidence was likely located there. 963 F. Supp. at 731.  Here, the Defendants and evidence are found in at least four other states, and two of those Defendants have not shown they are subject to personal jurisdiction in the desired forum. As to Sterling, the lone Defendant that is subject to the Northern District of Ohio's jurisdiction, it has only existed in that District since early this year.

Moreover, *Beverly v. ChoicePoint*, No. 3:07-cv-00541 (E.D. Va.), provides no support for Defendants' position. First, in agreeing that transfer was proper in that case, the Court concluded that "[a] substantial part of the events or omissions giving rise to the claim occurred" in the transferee forum, so the case "might have been brought" there. (Dkt. No. 23-4 at 1–2.) As set forth above, however, this case could not have been brought in the proposed district, as Defendants Acxiom Corp. and ARM have not shown they are subject to personal jurisdiction in

the Northern District of Ohio. While the Beverly defendants cleared this initial hurdle of the transfer analysis, Defendants here have not.

Also pertinent to the Court's conclusion was the fact that the plaintiffs did not sue in their home district, "and Richmond has no meaningful ties to the controversy and no particular interest in the parties or the subject matter." (*Id*. at 2.) The Court ultimately explained that Beverly was "not a particularly local controversy" in holding that transfer was appropriate. (*Id*. at 3.) Again, this case is different—it is brought by two of three Plaintiffs who live in Richmond, who were injured in this District, who have evidence and witnesses located in this District, and have sued in this District before.

Equity and fairness likewise support keeping this case in Richmond. Plaintiffs did not initiate or choose to have any connection to Ohio, other than Plaintiff Taylor's employment application may have been sent there. Defendants, on the other hand, affirmatively reached out to Virginia by gathering information from Virginia courts and records into their databases, compiled and created files on Virginia consumers, and then marketed and sold their services to companies outside Ohio for use in the evaluation for employment of Plaintiffs in Virginia. Further, as Defendants admit, they voluntarily conduct business in Virginia, with Acxiom Corp. having home-based employees here and billing more than $3.5 million to customers in this District since 2010, while ARM billed more than $70,000 to customers within this District since 2010. (Dkt. No. 27 at 2.) To have Plaintiffs suffer the burden of litigating in Ohio would be patently unfair where Defendants have actively conducted business here and should not be surprised when those contacts result in a lawsuit arising from their business activities.

Overall, to agree with Defendants' position here is to throw away the permissive venue statute. Defendants would have the Court conclude that a nationally operating entity can only be

sued in the District in which it has chosen to place its corporate offices, even if those offices have only been there a short time and that Defendant did not even exist at the time Plaintiffs' claims arose. Plaintiffs are clearly permitted to file their case in the District in which they live, and Defendants should not be permitted to uproot a case simply because one Defendant's witnesses may prefer a trial at home than in Richmond. Defendants have failed to carry their heavy burden to show that transfer to the Northern District of Ohio is proper, and the Court should therefore deny their Motion.

## III.     CONCLUSION

Facing a heavy burden to make a strong showing that transfer to the Northern District of Ohio is proper, Defendants have failed. Plaintiffs therefore request that the Court deny Defendants' Motion and retain venue here in Richmond.

Dated: November 9, 2012

Respectfully submitted,

CONSUMER LITIGATION ASSOCIATES, P.C.

BY:      /s/ *Leonard A. Bennett*
         Leonard A. Bennett (VSB #37523)
         Matthew Erausquin
         **CONSUMER LITIGATION ASSOCIATES P.C.**
         12515 Warwick Boulevard, Suite 100
         Newport News, VA 23606
         Telephone:  (757) 930-3660
         Facsimile:  (757) 930-3662

         Matthew J. Erausquin, VSB No. 65434
         **CONSUMER LITIGATION ASSOCIATES P.C.**
         1800 Diagonal Road., Suite 600
         Alexandria, VA 22314
         Tel:     (703) 273-6080
         Fax:     (888) 892-3512
         matt@clalegal.com

Michael A. Caddell (*pro hac vice*)
Cynthia B. Chapman (*pro hac vice*)
Craig C. Marchiando (*pro hac vice*)
**CADDELL & CHAPMAN**
1331 Lamar, Suite 1070
Houston TX 77010-3027
Telephone:  (713) 751-0400
Fax:  (713) 751-0906
mac@caddellchapman.com
cbc@caddellchapman.com
ccm@caddellchapman.com

James Francis (*pro hac vice*)
David A. Searles (*pro hac vice*)
**FRANCIS & MAILMAN, P.C.**
19th Floor
100 S. Broad St.
Philadelphia, PA 19110
Telephone: (215) 735.8600
Fax: (215) 940-8000
email: jfrancis@consumerlawfirm.com

Christopher Colt North
**THE CONSUMER & EMPLOYEE RIGHTS LAW FIRM, P.C.**
751-A Thimble Shoals Boulevard
Newport News, VA 23606
Telephone: (757) 873-1010
Fax: (757) 873-8375
cnorthlaw@aol.com

Dale W. Pittman
**THE LAW OFFICE OF DALE W. PITTMAN, P.C.**
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA 23803
Telephone: (804) 861-6000 - Telephone
Fax: (804) 861-3368 - Fax
dale@pittmanlawoffice.com

***Attorneys for Plaintiffs and the Classes***

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of November, 2012, I filed a true and correct copy of the foregoing on the Court's Electronic Case Filing System, which will send a notice of electronic filing to:

Alan D. Wingfield, VSB No. 27489
David N. Anthony, VSB No. 31696
Timothy J. St. George, VSB No. 77349
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Tel:    (804) 697-1200
Fax:    (804) 697-1339
david.anthony@troutmansanders.com
alan.wingfield@troutmansanders.com
Tim.StGeorge@troutmansanders.com

*Counsel for Defendants, Acxiom Risk
Mitigation, Inc.
and Acxiom Corporation*

Charles K. Seyfarth (Va. Bar No. 44530)
LeCLAIRRYAN, A Professional Corporation
Riverfront Plaza – East Tower
951 E. Byrd Street, Eighth Floor
Richmond, Virginia 23219
Telephone: (804) 916-7159
Facsimile: (804) 916-7259
Charles.Seyfarth@leclairryan.com

Megan S. Ben'Ary (Va. Bar No. 47349)
LeCLAIRRYAN, A Professional Corporation
2318 Mill Road, Suite 1100
Alexandria, VA 22314
Telephone: (703) 684-8007
Facsimile: (703) 647-5983
Megan.Benary@leclairryan.com

*Counsel for Defendant, Sterling InfoSystems-
Ohio, formerly known as Acxiom Information
Security Services, Inc.*

                    /s/
Craig C. Marchiando
*Counsel for the Plaintiffs*

CADDELL & CHAPMAN
1331 Lamar, Suite 1070
Houston TX 77010-3027
Telephone:  (713) 751-0400
Fax:  (713) 751-0906