## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This Class Action Settlement Agreement and Release ("Settlement Agreement") is made and entered into by and between: (1) Plaintiffs, Tyrone Henderson, Charles Taylor, and William Wiles ("Plaintiffs"), individually, and as representatives of the Settlement Class, as defined below; (2) Acxiom Risk Mitigation, Inc. now known as Acxiom Identity Solutions, LLC ("ARM"); (3) Sterling Infosystems-Ohio, Inc. ("Sterling-OH"), formerly known as Acxiom Information Security Services, Inc. ("AISS"); and (4) Acxiom Corporation ("Acxiom"), (collectively referred to as the "Defendants"). Plaintiffs and Defendants are collectively referred to as the "Parties." This Settlement Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle all released rights and claims to the extent set forth below, subject to the terms and conditions set forth herein.

## RECITALS

WHEREAS, On August 16, 2012, Plaintiffs filed their initial Complaint in the United States District Court for the Eastern District of Virginia, Civil Action No: 3:12cv589 (the "Lawsuit"), alleging that Defendants failed to comply with certain provisions of the FCRA, including 15 U.S.C. §§ 1681k, 1681i, and 1681b(a), when they issued consumer reports for employment purposes to Plaintiffs' current or prospective employers;

WHEREAS, on October 26, 2012, Defendants filed their Answers denying the allegations therein, denying that the action was suitable for class certification pursuant to Federal Rule of Civil Procedure 23, and asserting affirmative defenses that Defendants contend are meritorious. At the same time, Acxiom Corp. and ARM moved to dismiss the Complaint on the basis that the Court lacked specific and general jurisdiction under both the Virginia long-arm statute and the requirements of Constitutional due process. Contemporaneously, Defendants also moved to transfer the case to the United States District Court for the Northern District of Ohio under 28 U.S.C. § 1404. Those motions were subsequently denied;

EXHIBIT
1
Blumberg No. 5118

WHEREAS, after extensive arm's length negotiations, discovery and at least five days of mediation before a nationally respected mediator over the course of six months, as well as numerous additional in-person and telephonic conferences, written exchanges, and ongoing conversations between the Parties themselves, the Parties agreed to the settlement in principle of their disputes;

WHEREAS, on January 29, 2015, Plaintiffs filed an Amended Class Complaint, which, among other things, modified the class definitions proposed in the original Complaint to limit their scope to the period of August 16, 2007 to May 1, 2013;

WHEREAS, the Parties are willing to enter into this Settlement Agreement to settle the claims of the Settlement Class because of, among other reasons, the attendant expense, risks, difficulties, delays, and uncertainties of continued litigation;

WHEREAS, Plaintiffs and Class Counsel, after discovery and investigation, believe that this Settlement Agreement provides fair, reasonable, and adequate relief to the Settlement Class and that it is in the best interest of the Settlement Class to settle, compromise, and dismiss their claims on the merits and with prejudice as to Defendants on the terms set forth below, subject to the approval of the Court of the Settlement Class as a whole; and

WHEREAS, Defendants deny all claims asserted against them in the Litigation, deny that class certification would be appropriate if the cases were litigated rather than settled, deny all allegations of wrongdoing and liability, and deny that anyone was harmed by the conduct alleged, but nevertheless desire to settle Plaintiffs' claims on the terms and conditions set forth in this Settlement Agreement solely for the purpose of avoiding the burden, expense, risk and uncertainty of continuing the proceedings on those issues in the Litigation and putting to rest the controversies engendered.

NOW THEREFORE, IT IS AGREED that the Litigation and all claims of the Settlement Class be settled, compromised, and dismissed on the merits and with prejudice as to Defendants on the terms set forth below, subject to the approval of the Court.

The recitals stated above are true and accurate and are hereby made a part of the Settlement Agreement.

## I.   DEFINITIONS

1.1.   As used in this Settlement Agreement, the terms defined below shall have the meanings assigned to them when capitalized in the same fashion as in this Section I.  Any other terms that relate to the consumer reporting industry shall have the customary meaning accorded to those terms in the consumer reporting industry.

1.2.   The "Settlement Class" means all consumers as defined in Counts I, II, and III, of the Amended Class Complaint for whom AISS or Sterling-OH issued a consumer report from August 16, 2007 through May 1, 2013: (a) that was requested by an employer or prospective employer for employment purposes and included public record information that could potentially have an adverse effect upon a consumer's ability to obtain employment; or (b) that the consumer disputed to AISS or Sterling-OH; or (c) that was requested by an employer or prospective employer that was or sought to become a vendor for Allstate Corporation; all as respectively defined in Counts I, II, and III of the Amended Class Complaint.  Based on the records maintained by AISS and/or Sterling-OH, the Settlement Class is expected to consist of approximately 461,925 separate consumers.

1.3.   The "Dispute Settlement Sub-Class" means all consumers who are members of the Settlement Class and who also submitted a dispute to AISS or Sterling-OH from August 16, 2007 through May 1, 2013, as defined in Count II of the Amended Class Complaint.  Based on

the records maintained by AISS and/or Sterling-OH, this class will consist of approximately 21,537 consumers.

1.4.    "Settlement Class" or "Settlement Class Member" means each of the members of the Settlement Class set forth in paragraph 1.2, provided, however, that "Settlement Class" and "Settlement Class Member" shall exclude: (i) all persons who timely and validly request exclusion from the Settlement Class; (ii) all consumers who would otherwise qualify for membership in the "Settlement Class" for which the consumer previously has released all claims as to the Defendants; (iii) Defendants' officers, directors, and employees; (iv) Defendants' attorneys; (v) Plaintiffs' attorneys; and (vi) any judge who has presided over either mediation or disposition of this case and the members of his immediate family.

1.5.    "Class Counsel" means Consumer Litigation Associates, P.C., Francis & Mailman, P.C., Caddell & Chapman, and The Law Office of Dale W. Pittman, P.C., and their respective attorneys, including as listed on the operative Complaint.

1.6.    "Named Plaintiffs" means the Plaintiffs named in the Lawsuit: Tyrone Henderson, Charles Taylor, and William Wiles.

1.7.    "Actual Damages Claims Process" means the process set forth in Sections 6.1.1-6.2.4 for assessing the individual claims of the members of the Dispute Settlement Sub-Class.

1.8.    "Litigation" or "Lawsuit" means the matter of *Tyrone Henderson, et al. v. Acxiom Risk Mitigation, Inc. et al.*, in the United States District Court for the Eastern District of Virginia, Civil Action No: 3:12cv589 (REP).

1.9.    "Actual Damages Claimant" means an Actual Damages Claims Settlement Class member who properly submits a claim pursuant to Sections 6.1.1-6.2.4.

1.10.    "Claim" means any and all actions, causes of action, proceedings, adjustments, executions, offsets, contracts, judgments, obligations, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, variances, covenants, trespasses, damages, demands (whether

written or oral), agreements, promises, liabilities, controversies, costs, expenses, attorneys' fees and losses whatsoever, whether in law, in admiralty or in equity, whether by affirmative claim, counterclaim, or setoff, and whether based on any federal law, state law, foreign law or common law right of action or otherwise, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued, existing now or to be created in the future.

1.11.  "Consumer" means a natural person residing in the United States of America or its territories that is a member of the Settlement Class.

1.12.  "Effective Date" is the date on which this Court's entry of the Final Approval Order and this Court's order regarding attorneys' fees have all become final because the following has occurred: (i) the expiration of three business days after the time to file a motion to alter or amend the Final Approval Order under Federal Rule of Civil Procedure 59(e) has passed without any such motion having been filed; (ii) the expiration of three business days after the time in which to appeal the Final Approval Order has passed without any appeal having been filed (which date shall be deemed to be 33 days following the entry of the Final Approval Order, unless the date to take such an appeal shall have been extended by Court order or otherwise, or unless the 33rd day falls on a weekend or a Court holiday, in which case the date for purposes of this Settlement shall be deemed to be the next business day after such 33rd day); and (iii) if such motion to alter or amend is filed, or if an appeal is taken, three business days after a determination of any such motion or appeal that permits the consummation of the Settlement. For purposes of this definition, the term "appeal" includes all writ proceedings. Notwithstanding the above, if there are no objectors or intervenors who have entered an appearance in the case, then the Effective Date will be the date the Final Approval Order is entered.

1.13.  "Defendants' Counsel" means Troutman Sanders LLP and LeClairRyan, P.C.

1.14.  "FCRA" means the federal Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, and any subsequent amendments thereto.

1.15.   "FCRA State Equivalents" means any statute or regulation of any state, U.S. territory, the District of Columbia, or Puerto Rico, that has the purpose or effect of regulating the collection or reporting of consumer information and related actions.

1.16.   "Attorneys' Fees" means the attorneys' fees and expenses applied for by Class Counsel relating to this Settlement Agreement and approved by the Court.

1.17.   "Final Approval" means the approval of the Settlement Agreement by the Court at or after the Final Approval Hearing, and entry on the Court's docket of the Final Approval Order.

1.18.   "Final Approval Order" means a final order and judgment in substantially the form attached hereto as **Exhibit A** entered by the Court giving Final Approval of the Settlement Agreement and dismissing with prejudice Plaintiffs' claims and entering a judgment according to the terms set forth in this Settlement Agreement.

1.19.   "Final Approval Hearing" or "Final Fairness Hearing" means the hearing at which the Court will consider and finally decide whether to approve this Settlement, enter the Judgment, and make such other rulings as are contemplated by this Settlement.   The Final Approval Hearing shall not be scheduled for a date less than 120 days following the granting of Plaintiff's motion for preliminary approval.

1.20.   "Mail Notices" means the notices (in forms substantially similar to that attached hereto as Exhibits B through D and approved by the Court) that will be mailed to Settlement Class Members pursuant to the Notice Plan.

1.21.   "Payment Notices" means the notices sent to the Settlement Class Members at the time of payment pursuant to Sections 8.5 through 8.9.2 of this Settlement Agreement.

1.22.   "Notice Plan" means the plan for disseminating notice to Settlement Class Members, as described in Sections 4.1 through 4.11 herein.

1.23.   "Preliminary Approval" means the preliminary approval of the Settlement Agreement by the Court, conditional certification of the Settlement Class, and approval of the method and content of notice to the Settlement Class.

1.24.   "Released Claims" means those Claims released as set forth in Section IX below.

1.25.   "Released Parties" means and refers to Defendants and their parents, subsidiaries, affiliates, divisions, associates, agents, successors, assignors, assignees, and/or assigns and their respective subsidiaries, affiliates, stockholders, departments, and each of their respective present, former or future officers, directors, shareholders, agents, control persons, advisors, employees, representatives, consultants, Insurers and reinsurers, accountants, attorneys, and any representative of the above.  This definition is not intended to release any consumer reporting agency not affiliated with a named Defendant by at least 25% common ownership.

1.26.   "Settlement" means the agreement between the Named Plaintiffs as proposed representatives of the Settlement Class, and Defendants, to settle and compromise, fully, finally, and forever, the Named Plaintiffs' and the Settlement Class Members' claims in the Litigation, as memorialized in this Settlement Agreement and the accompanying documents attached hereto.

1.27.   "Settlement Administrator" shall mean the administrator for the Settlement Agreement that Class Counsel has proposed, as identified in Section 3.2.

1.28.   "Settlement Agreement" means this Settlement Agreement and Release.

1.29.   "Settlement Fund" means the amount paid pursuant to Section 8.1.1 herein.  The Settlement Fund shall be inclusive of any and all service awards, attorney's fees, costs, expenses, notice to the class members, and settlement administration costs.

1.30.   "Settlement Website" means the internet website established by the Settlement Administrator for purposes of facilitating notice to, and communicating with, the Settlement Class and for receipt of online claims.

1.31.   "Valid Claim" means a claim filed by an Actual Damages Claims Settlement Class Member pursuant to Sections 6.1.1-6.2.4 that the Settlement Administrator determines to be valid pursuant to Sections 6.2.1-6.2.4.

## II.   NO ADMISSION OF LIABILITY OR TO THE ELEMENTS OF CLASS CERTIFICATION

2.1.   Defendants' Denial of Wrongdoing or Liability.   Defendants have asserted and continue to assert many defenses in this Litigation and have expressly denied and continue to deny any fault, wrongdoing or liability whatsoever arising out of the conduct alleged in the Litigation. Defendants expressly deny any fault, wrongdoing or liability whatsoever, as well as the validity of each of the claims and prayers for relief asserted in the Litigation.   The Parties expressly acknowledge and agree that neither the fact of, nor any provision contained in, this Settlement Agreement nor any of the implementing documents or actions taken under them, shall constitute or be construed as any admission of the validity of any claim, any status, or any fact alleged in the Litigation or any fault, wrongdoing, violation of law, or liability of any kind on the part of Defendants and/or the Released Parties, or any admission by Defendants and/or the Released Parties of any claim or allegation made in any action or proceeding against Defendants. Defendants have denied and continue to deny each and all of the claims and allegations in the Litigation. Neither this Settlement Agreement nor any document referred to herein, nor any action taken to carry out this Settlement Agreement and/or the Settlement, or Defendants' willingness to enter into this Settlement Agreement, nor any or all negotiations, communications, and discussions associated with the Settlement are, or may be construed as, or may be used in any proceeding as, an admission by or against any or all Defendants of any fault, wrongdoing or liability whatsoever, or any infirmity of any defenses asserted by any or all Defendants.

2.2.   No Admission by Defendants of Elements of Class Certification.   Defendants deny that a class should be certified other than for purposes of this Settlement and reserve their

8

rights to contest any class certification motion should this Settlement Agreement not be approved by the Court. Defendants contend that this Litigation could not be certified as a class action under Federal Rule of Civil Procedure 23, including Rule 23(b)(3). Nothing in this Settlement Agreement shall be construed as an admission by any Defendant that this Litigation or any similar case is amenable to class certification for trial purposes. Furthermore, nothing in this Settlement Agreement shall prevent any Defendant from opposing class certification or seeking de-certification of the conditionally certified Settlement Class if Final Approval of this Settlement is not obtained, or not upheld on appeal, including any review by the United States Supreme Court.

### III.    MOTION FOR PRELIMINARY APPROVAL

3.1.    On or before February 4, 2015, Class Counsel shall file this Settlement Agreement with the Court together with a motion for Preliminary Approval that seeks entry of an order that would, for settlement purposes only: (i) certify a conditional settlement class and sub-class under Federal Rule of Civil Procedure 23(b)(3) composed of the Settlement Class Members and the Dispute Settlement Sub-Class; (ii) preliminarily approve the proposed Settlement Agreement; (iii) approve the proposed Mail Notices to the Settlement Class and Claim Form in forms substantially similar to those attached hereto as Exhibits B through D; (iv) certify the Named Plaintiffs as representatives of the Settlement Class; (v) appoint Class Counsel; (vi) approve the proposed notice plan; and (vii) appoint the proposed Settlement Administrator.

3.2.    Class Counsel will cause to be hired American Legal Claims Services, LLC as the Settlement Administrator. The Settlement Administrator shall be responsible for carrying out the specified tasks set forth in this Settlement Agreement, including, but not limited to, maintaining records of all its activities, including the dates of Mail and Payment Notices, mailed checks, returned mail, and any other communications and attempted communications with the members of the Settlement Class.

## IV.   NOTICE PLAN

4.1.   Preparation and Production of List of Identified Class Members from the files of Sterling-OH.  To the extent such information exists and can be systematically retrieved, Sterling-OH agrees to use commercially reasonable methods to identify the lists of Consumers in the Settlement Class and to create the class lists.   Sterling-OH agrees to use commercially reasonable methods to provide to the Settlement Administrator a list of names and identifying information (*i.e.*, truncated Social Security numbers, and month/year of birth) for the Consumers on the class lists.  In addition, Sterling-OH agrees to use commercially reasonable methods to provide the most recent mailing address found in and/or available from its records, to the extent such information exists and can be systematically retrieved.  The mailing addresses will be electronically checked and updated against the U.S.P.S. National Change of Address database by the Settlement Administrator.  Other than as provided herein, the parties agree that Sterling-OH shall not be required to search beyond the records already maintained by it to locate class member information.  The class lists shall be used solely for the purpose of effectuating the Settlement.

4.2. Notice Process Generally.   For purposes of providing court-approved class notices and establishing that the best practicable notice has been given, the provision of class Mail Notice will be accomplished in accordance with the following provisions.  Within thirty (30) days following Preliminary Approval, the Settlement Administrator shall cause the Mail Notice (in a form substantially similar to that attached hereto as **Exhibits B and C**), to be sent by U.S. mail, postage prepaid to each Settlement Class Member identified on one of the class lists. For any Class Member appearing on two of the class lists, only one mailing shall be required, but in such instances the Mail Notice shall identify each Settlement Class to which the Consumer belongs.  Not later than twenty (20) days before the Final Fairness Hearing, the Settlement Administrator shall cause proof of the mailing of the Mail Notice for the Settlement Class

Members to be filed with the Court.  Neither the Parties nor the Settlement Administrator shall have any further obligation to send Mail Notice of the Settlement to the Settlement Class Members.  For any mailing that is returned to the Settlement Administrator with a forwarding address, the Settlement Administrator shall re-mail the Mail Notice to that forwarding address. Additionally, for any mailing that is returned to the Settlement Administrator without a forwarding address, Acxiom Corp. shall make a good-faith effort to generate an alternate mailing address for that Settlement Class Member from its business records, with the mailing then re-mailed to the alternate address by the Settlement Administrator, if one can be located.  The Settlement Administrator and the Parties shall have no further obligation with respect to any other forms of returned mail.

4.3.    Mail Notice for Dispute Settlement Sub-Class Members.  The Mail Notice for Dispute Settlement Sub-Class Members shall include a tear-away, postage pre-paid, pre-addressed (to the Settlement Administrator) Claim Form, in the form attached as **Exhibit D**.  The Claim Form shall bear a stamped claim number unique for each recipient, which shall state that each Dispute Settlement Sub-Class Member must return the Claim Form to be eligible to be a member of the Actual Damages Claims Settlement Class and to be eligible for the Actual Damages Claims Process and shall provide "check box" options for such election and instructions for any documents that should be included to substantiate the claim.  Any Dispute Settlement Sub-Class Member who does not return a Claim Form will not be eligible for payment resulting from the Actual Damages Claims Process.

4.4.    Internet Notice.  The Settlement Administrator shall establish an Internet website containing information about the Settlement.  The Settlement Website will be accessible no later than five (5) days after the mailing of the Mail Notices described above.  The Settlement Website will set forth the following information: (i) the full text of the Settlement Agreement; (ii) the Mail Notices; (iii) the Preliminary Approval Order and other relevant orders of the Court; and,

(iv) contact information for Class Counsel and the Settlement Administrator.  Any information appearing on the website in addition to the above-listed documents shall be subject to joint approval of the Parties.  The Settlement Website will also offer a Spanish language translation option.  The Settlement Website shall also receive online claims in accordance with Section 6.1.1-6.2.4.  Not later than twenty (20) days before the Final Fairness Hearing, the Settlement Administrator shall cause proof of the establishment and maintenance of the Settlement Website to be filed with the Court.  The Settlement Website shall be disestablished within 90 days following the mailing of the last Payment Notice for Actual Damage Claimants.

    4.5.   Telephone Assistance Program.  The Settlement Administrator will establish a toll-free telephone number, which will be staffed by the Settlement Administrator, to answer questions from Settlement Class Members.  The toll-free number will provide access to live support, a voice response unit ("VRU") or a combination of live support and VRU.  It shall also offer a Spanish language alternative number and VRU.  Not later than twenty (20) days before the Final Fairness Hearing, the Settlement Administrator will cause proof of the establishment and maintenance of the Telephone Assistance Program to be filed with the Court.

    4.6.   Expenses of Notice and Administration.   All Mail Notice, Payment Notice, claims and other class administration costs, excluding the costs associated with Defendants' creation of the class lists pursuant to Section 4.1, shall be invoiced by the Settlement Administrator and paid promptly from the Settlement Fund, as set forth in Sections 8.1.1-8.1.3 below.  Any disputes relating to this Subsection shall be brought to United States Magistrate Judge David J. Novak for resolution.

    4.7.   Furthermore, with respect to any of the costs of any mailing contemplated herein, no later than ten business days before the mailing is accomplished, the Class Administrator shall provide to Class Counsel a detailed statement of the mailing costs that will be incurred.  Any

disputes relating to this Subsection shall be brought to United States Magistrate Judge David J. Novak for resolution.

4.8.    The total expenses associated with Mail Notice, Payment Notice, claims, and other class administration costs, excluding the costs associated with Defendants' creation of the class lists pursuant to Section 4.1, shall not increase the amount paid by Defendants as part of the Settlement under any circumstances.  Any and all payments shall come from the Settlement Fund.

4.9.    Class Counsel and the Settlement Administrator have agreed that the full cost of Mail Notice, Payment Notice, claims and other class administration costs will not exceed $747,939.  All costs of Mail Notice, Payment Notice, and class administration shall be paid from the Settlement Fund before the calculation of net settlement payments to the Settlement Class Members, including the Dispute Settlement Sub-Class who do not submit a valid Claim Form.

4.10.   Notice Under Class Action Fairness Act of 2005 ("CAFA Notice").  The Settlement Administrator will send the CAFA Notice in accordance with 28 U.S.C. § 1715(a), not later than ten (10) days after this Settlement Agreement is filed with the Court.  The expense of this notice shall be paid by Defendants and their Insurers separate and apart from the Settlement Fund.

4.11.   Confidentiality.  The Settlement Administrator (and any person retained by the Settlement Administrator) shall sign a confidentiality agreement in a form agreed to by Defendants' Counsel and Class Counsel.  The confidentiality agreement will provide that the Settlement Administrator (and any person retained by the Settlement Administrator) shall treat as confidential the names, addresses and all other identifying information concerning Settlement Class Members.  The confidentiality agreement will further provide that the Settlement Administrator (and any person retained by the Settlement Administrator) shall use such

information only for the purposes of fulfilling the Settlement Administrator's duties and responsibilities as provided for under this Settlement Agreement.

## V.   PROCEDURES FOR OPT-OUTS AND OBJECTIONS

5.1.   Opt-Out Procedures for Settlement Class Members.   The Mail Notices shall contain information about how a Settlement Class Member may opt out of the settlement, as well as the potential implications of doing so, including that opting out may preclude later participation in any class action against Defendants.   A Settlement Class Member may request to be excluded from the Settlement Class by sending a written request for exclusion to the Settlement Administrator.   To be valid, a request for exclusion must be personally signed by the Settlement Class Member and must include: (i) name, address, telephone number, and the last four digits of the class member's Social Security number; (ii) a sentence stating that he or she is in a Settlement Class; and (iii) the following statement: "I request to be excluded from the class settlement in *Tyrone Henderson, et al.*, United States District Court, Eastern District of Virginia, Case No. 3:12-cv-589-REP."   Opt-out requests must be postmarked no later than thirty (30) days before the Final Approval Hearing.   No person within the Settlement Class, or any person acting on behalf of or in concert or participation with that person, may exclude any other person within the Settlement Class from the Settlement Class.   In no event shall persons who purport to opt out of the Settlement Class as a group, aggregate, or class involving more than one consumer be considered valid opt-outs.   Requests for exclusion that do not comply with any of the foregoing requirements are invalid.

5.2.   List of Opt Outs.   No later than five (5) business days after the deadline for submission of opt-out requests, the Settlement Administrator shall provide to Class Counsel and Defendants' Counsel a complete list of all persons who have properly opted out of the Settlement together with copies of the opt-out requests.

5.3.    Representation of Opt-Outs.  Class Counsel agree that this Settlement Agreement is fair, reasonable, and in the best interest of the Settlement Class Members.  Class Counsel agree that class members who seek to opt-out should be represented by counsel who do not agree that the Settlement Agreement is fair, reasonable, and in the best interest of the Settlement Class Members.

5.4.    Objections from Settlement Class Members.  Any Class Member who has not previously opted-out in accordance with the terms above may appear at the Final Fairness Hearing to argue that the proposed Settlement should not be approved and/or to oppose the application of Class Counsel for an award of attorneys' fees and costs and the service award to Plaintiffs.  However, no individual within the Settlement Class shall be heard, and no objection may be considered, unless the individual files it with the Court no later than thirty (30) days before the Final Fairness Hearing and serves the objection so that it is received by Counsel and the Settlement Administrator no later than thirty (30) days before the Final Fairness Hearing. (However, objections to the Class Counsel's attorneys' fees or the requested service awards may be supplemented up to seven (7) days after the filing of a motion for such fees or awards to address additional information or materials in the motion.)  Copies of all objection papers must be sent to the following addresses:

| | |
|---|---|
| David N. Anthony<br>TROUTMAN SANDERS LLP<br>1001 Haxall Point<br>Richmond, VA 23219<br>Telephone: (804) 697-1200<br>Facsimile: (804) 698-1339<br>david.anthony@troutmansanders.com | Charles K. Seyfarth<br>LECLAIR RYAN PC<br>Riverfront Plaza - East Tower<br>951 E Byrd Street – 8th Floor<br>Richmond, VA 23219<br>Telephone: (804) 916-7159<br>Facsimile: (804) 916-7259<br>charles.seyfarth@leclairryan.com |
| Michael A. Caddell<br>CADDELL & CHAPMAN<br>1331 Lamar, Suite 1070<br>Houston, TX 77010<br>Telephone: (713) 751-0400<br>Facsimile: (713) 751-0906 | Henderson v. Acxiom Risk Mitigation, Inc.<br>Settlement Objection<br>American Legal Claim Services, LLC<br>P.O. Box<br>Jacksonville, FL 32214 |

| mac@caddellchapman.com | |
|---|---|

All objections must include: (1) the objector's name, address, telephone number, and the last four digits of the class member's Social Security number; (2) a sentence stating that to the best of his or her knowledge he or she is a member of the Settlement Class; (3) the factual basis and legal grounds for the objection to the Settlement; (4) the identity of witnesses whom the objector may call to testify at the Final Fairness Hearing; and (5) copies of any exhibits the objector may seek to offer into evidence at the Final Fairness Hearing.  The written objection must indicate whether the class member and/or his lawyer(s) intend to appear at the Final Fairness Hearing. Any lawyer who intends to appear at the Final Fairness Hearing must also enter a written Notice of Appearance of Counsel with the Clerk of the Court no later than thirty (30) days before the Final Fairness Hearing.  No later than twenty-five (25) days before the Final Fairness Hearing, the Settlement Administrator shall file indexed copies of any objections via the Court's "ECF" system.  To the extent necessary or desired, the Parties may respond to any properly filed objections no later than ten (10) days before the Final Fairness Hearing.

## VI.    ACTUAL DAMAGES CLAIMS CLASS SETTLEMENT PROCESS

6.1.1.  Dispute Settlement Sub-Class Members who elect to submit an actual damages claim in lieu of the fixed statutory damages payment must submit such claims by no later than fourteen (14) days following Final Approval by either: (1) registering for a claim on the Settlement Website; or (2) returning to the Settlement Administrator, via U.S. mail, the correctly completed Claim Form attached to the Mail Notice for potential Actual Damages Claims Settlement Class Members.

6.1.2.  Submission of actual damages claims shall be permitted commencing on the first day on which notice is disseminated.

6.1.3.  To be eligible for an actual damages payment in lieu of the fixed statutory damages payment, a claimant must complete a Claim Form, which shall be provided within the

class notice to the Dispute Settlement Sub-Class Members and also made available for download on the Settlement Website or by request from the Settlement Administrator. The Claim Form shall be streamlined, requiring only the claimant's name, current postal address, current telephone number, date of birth, the class member's Social Security number, and a brief, sworn or attested statement describing the basis for the claim of actual damages. The Claim Form and the Settlement Website shall provide complete instructions for completion of this claims process.

6.1.4. Claim Forms submitted by U.S. mail shall contain the same information as contained in the electronic form (plus the Actual Damages Claims Settlement Class Members signature) and shall be mailed to a separate, dedicated post office box established by the Settlement Administrator exclusively for the purpose of receiving such Claims as provided herein.

6.1.5. Deceased Claimants. Claims may be filed by deceased Actual Damages Claims Settlement Class Members through authorized representatives of their estates if appropriate documentation is provided. Any claim paid to a deceased consumer shall be made payable to the estate of the deceased Actual Damages Claims Settlement Class Member.

6.2.1. Determining the Validity of Claims. Claim Forms and substantiating documents, whether submitted electronically via the Settlement Website or by U.S. mail, that do not meet the requirements as set forth in this Settlement Agreement and in the registration form instructions shall be rejected. The instructions shall provide that any failure to provide accurate information, any failure to submit the required representations and attestations/documents, and any failure to properly sign a claim form will result in rejection of the claim.

6.2.2. The Settlement Administrator shall have the authority to determine whether a claim made by any Actual Damages Claims Settlement Class Member is a Valid Claim. The Settlement Administrator's determination in this regard shall be final and non-appealable unless

Defendants' Counsel or Class Counsel disagree, in which case the determination shall be made by United States District Court Magistrate Judge Novak.  Any Dispute Settlement Sub-Class Member whose Claim is determined to be a Non-Valid Claim shall in all other respects be bound by the terms of this Settlement Agreement and by the Final Approval Order entered in the Litigation.  The Settlement Administrator shall promptly notify such Class Member that his or her claim has been denied and why it has been denied.

6.2.3.  The Settlement Administrator shall notify, in a prompt fashion, any claimant whose actual damages claim has been rejected, setting forth the reasons therefore.  The Settlement Administrator shall timely provide copies of all rejection notices to Class Counsel and to Defendants' Counsel.  A Claimant shall have an additional twenty-one (21) days after the date this notice is mailed to correct and resubmit the defective claim, but any subsequent determination by the Class Administrator on any resubmitted notice shall be final.

6.2.4.  No Liability for Determinations Relating to Validity of Claims.  No person shall have any claim against Defendants, Plaintiffs, the Settlement Class, Class Counsel, Defendants' Counsel, or the Settlement Administrator based on any claims determinations made in accordance with this Settlement Agreement.

## VII.   FINAL FAIRNESS HEARING AND FINAL APPROVAL

7.1.   Final Fairness Hearing.  The Parties will jointly request that the Court hold the Final Fairness Hearing to consider approval of the Settlement of the Litigation as provided for herein not less than one hundred and twenty (120) days after Preliminary Approval.  On or before a date at least ten (10) days prior to the Final Fairness Hearing, Class Counsel shall file a motion for entry of the Final Approval Order.  The Parties agree that, upon entry, the Final Approval Order constitutes a final judgment dismissing the Litigation with prejudice.

7.2.   Final Approval.  All relief contemplated by this Settlement Agreement is expressly contingent upon the Settlement Agreement receiving the Court's Final Approval.

## VIII.   SETTLEMENT FUND

8.1.1.   Creation of and Deposit Into Settlement Fund.  Class Counsel, in conjunction with the Settlement Administrator, shall establish an escrow account or equivalent account at Towne Bank or as otherwise approved by Defendants at a federally-insured financial institution (the "Financial Institution"), which shall be considered a fund created as a result of the Litigation.  The Settlement Administrator shall direct the Financial Institution to make distributions from the Settlement Fund only in accordance with this Settlement Agreement.   No funds shall be distributed or paid by the Financial Institution without written confirmation from both Class Counsel and Defendants' Counsel.  Class Counsel shall promptly notify the other Parties of the date of the establishment of the account.  Except as provided in Section 8.1.3 below, within twenty-five (25) business days following Final Approval, the Defendants and their insurers shall cause to be deposited with the Financial Institution, by draft or by wire, their remaining shares of the respective agreed contributions aggregating to Twenty Million, Eight Hundred Thousand Dollars and no cents ($20,800,000.00), having been credited the amounts that were previously paid by Defendants and their Insurers pursuant to Section 8.1.3 before Final Approval.  The Settlement Fund may not be commingled with any other funds and may be held in cash, cash equivalents, certificates of deposit or instruments insured by an arm of or backed by the full faith and credit of the United States Government.  Interest earned, if any, on the Settlement Fund shall be for the benefit of the Settlement Class in the event this Settlement Agreement is not terminated by the Defendants and the Effective Date otherwise occurs.

8.1.2.   Settlement Fund Apportionment.  The Settlement Fund will be broken down into two sub-funds: a statutory damages fund and an actual damages fund with distributions to be made from each fund under the process set forth below.  First, at the time of Final Approval, Class Counsel will: (1) request an award of attorneys' fees in the amount of 30% out of the Settlement Fund; and (2) seek the disbursement of the remaining balance of the $747,939 in

agreed-upon costs of class administration (as described in Section 4.9 above) out of the Settlement Fund. Subject to the approval of those two forms of disbursements by the Court out of the Settlement Fund, a statutory damages fund in the amount of $13,265,691.25 will then be created for the payment of statutory damages to all class members. As set forth in Section 8.9.1, each class member who does not submit a valid claim for actual damages shall receive a statutory damages fund payment on a *per capita* basis. Further, to account for defenses relating to the statute of limitations, the Parties have agreed that each class member whose claim accrued within two years of the filing of this action (*i.e.*, between August 16, 2010 and May 1, 2013) will each be entitled to a statutory damages recovery in a ratio of 3:1 relative to any consumer whose claim would have accrued during the period between five to three years prior to the filing of this action (*i.e.*, between August 16, 2007 and August 15, 2010). Second, the Parties will create a separate fund in the amount of $546,369.75 for the payment of actual damages to members of the Dispute Settlement Sub-Class who submit a Valid Claim. Each valid claim will be paid from the actual damages fund and will be in lieu of any statutory damages payment. Actual damages claims are, however, individually capped at Five Thousand Dollars ($5,000.00). To the extent that attorneys' fees are awarded by the Court in an amount that is less than what is sought by Class Counsel at the time of Final Approval, the difference shall be credited to the statutory damages fund. To the extent that the complete costs of administration total less than that contemplated and specified above (*i.e.*, $747,939), those amounts shall be credited to the approved *cy pres* recipient at the end of the class administration process.

8.1.3. Costs of Notice and Administration Expenses Deduction. Prior to Final Approval, costs of notice and any other expenses incurred in the administration of the Settlement shall be paid by Defendants and their Insurers in proportion to the amount each such party is obligated to pay out of the Settlement Fund within ten (10) business days of receiving advance, written notice from the Settlement Administrator for amounts to be invoiced by the Settlement

Administrator to Defendants for costs and any other expenses incurred in the administration of the Settlement.

8.2.1.   Settlement Fund Tax Status.   The Parties agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1. The Settlement Administrator shall timely make such elections as necessary or advisable to carry out the provisions of this Subsection, including the "relation back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date.   Such elections shall be made in compliance with the procedures and requirements contained in such regulations.   It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.   For the purpose of Treasury Regulation § 1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Settlement Administrator.   The Settlement Administrator shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. § 1.468B-2(k)).   Such returns shall be consistent with this Subsection and in all events shall reflect that all federal or state income taxes ("Taxes") (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund, if any, shall be paid out of the Settlement Fund, as provided in Subsection 8.2.2 hereof.

8.2.2.   All (a) taxes (including any estimated Taxes, interest or penalties) arising with respect to any income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (b) expenses and costs incurred in connection with the operation and implementation of this Subsection (including, without

limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns herein ("Tax Expenses"), shall be paid out of the Settlement Fund.  In no event shall the Released Parties have any responsibility for or liability with respect to the Taxes or the Tax Expenses.  The Settlement Administrator shall indemnify and hold the Released Parties harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification).  Further, Taxes and Tax Expenses shall be timely paid by the Settlement Administrator out of the Settlement Fund without prior order from the Court, and the Settlement Administrator shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(l)); the Released Parties are not responsible therefore nor shall they have any liability with respect thereto.  The Parties hereto agree to cooperate with the Settlement Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Section.

8.3.1.  Attorneys' Fees.  No later than fourteen (14) days before the Final Approval Hearing, Class Counsel shall file an application or applications to the Court for reimbursement of Attorneys' Fees and costs from the Settlement Fund, not to exceed thirty percent (30%) of the total Settlement Fund.  The application or applications shall be noticed to be heard at the Final Fairness Hearing. Defendants will not oppose such a request.  To the extent the Court approves an award of Attorneys' Fees in an amount that is less than the above amount, the difference will remain in the Settlement Fund to be used for the benefit of the Actual Damages Claims Settlement Class Members, as detailed below.

8.3.2.  The application or applications for Attorneys' Fees, and any and all matters related thereto, shall not be considered part of the Settlement Agreement, and shall be considered

by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement. Plaintiffs and Class Counsel agree that this Settlement Agreement is not conditional on the Court's approval of Attorneys' Fees in the requested amount or in any amount whatsoever. The Court's ruling on the application or applications for such fees shall not operate to terminate or cancel the Settlement.

8.3.3.  Defendants shall have no responsibility for, nor any liability with respect to, the payment of Attorneys' Fees to the Class Counsel. The sole source of any payment of Attorneys' Fees shall be the Settlement Fund.

8.3.4.  Payment of Attorneys' Fees and Service Awards. Attorneys' Fees and Service awards in the amount approved by the Court will be paid through distribution from the Settlement Fund by the Settlement Administrator within five (5) days after the Effective Date.

8.4.  Service Awards to the Named Plaintiffs. On or before fourteen (14) days before the Final Fairness Hearing, Class Counsel shall file an application (or applications) to the Court for service awards, not to exceed Five Thousand dollars ($5,000.00) each, to be paid to each of the Named Plaintiffs serving as class representatives in support of the Settlement. Defendants do not oppose such a request. To the extent the Court approves service awards in an amount less than $5,000.00 each to each Named Plaintiff, the difference will remain in the Settlement Fund for the benefit of the Actual Damages Claims Settlement Class Members. Any service award payments shall be funded through the Settlement Fund.

8.5.  Settlement Class Member Payments. With the sole exception of the Actual Damages Claims submitted by members of the Dispute Settlement Sub-Class (as detailed below), the Settlement Class Members who appear on the class lists are entitled to payment pursuant to the processes set forth in Sections 8.9.1-8.9.2. The amount of each check to be issued is subject to deduction for attorneys' fees and costs approved by the Court and costs of administration by the Settlement Administrator. To calculate the gross (pre-fees and costs)

amount of each payment, the Settlement Administrator shall divide the amount left in the statutory damages Settlement Fund after all other payments and costs required by this Settlement Agreement have been deducted.

8.6.   All settlement checks shall state: "This payment is tendered to you as a class member in *Tyrone Henderson, et al.,* No. 12-cv-589, in consideration for your release of the Released Parties as set forth in the Class Action Settlement Agreement and Release."

8.7.1.   Dispute Settlement Sub-Class Actual Damages Claims Payments.   The actual damages claims settlement fund shall be no less than the gross amount of $544,308.75, but it shall be increased by the payment into this fund of all checks disbursed to the other Settlement Class Members pursuant to Subsection 8.9.1 that remain un-cashed more than sixty (60) days after mailing, as well as potentially by the other terms of this Agreement.

8.7.2.   The payment to each Dispute Settlement Sub-Class who is determined to have submitted a Valid Claim shall be made *per capita* based on the number of Valid Claims and the amount of the Actual Damages Claims Settlement Fund as calculated after the end of the sixty (60) day period described in Section 8.7.1. To calculate the amount of each payment, the Settlement Administrator shall divide the amount left in the actual damages settlement fund after all other payments from the Settlement Fund required by this Settlement Agreement have been satisfied by the total number of Valid Claims.  Notwithstanding the foregoing, individual payments to Dispute Settlement Sub-Class with valid claims may not exceed $5,000.

8.7.3.   If the Settlement Administrator determines that a Dispute Settlement Sub-Class Member's claim is not a Valid Claim, then such Dispute Settlement Sub-Class Member's Actual Damages Award shall be converted into a payment out of the statutory damages fund pursuant to Sections 8.5 and 8.6.

8.7.4.   All Actual Damages Claims Settlement Class Member payments shall be funded through the Settlement Fund.

8.8.1.  Use and Disbursement of Settlement Fund.  The Settlement Fund shall be used only in the manner and for the purposes provided for in this Agreement.  No portion of the Settlement Fund shall be disbursed except as expressly provided for herein.

8.8.2.  Upon Preliminary Approval, the Settlement Administrator shall disburse funds as previously contracted for the costs of notice and related administrative expenses incurred with respect to effecting the Notice Plan.

8.8.3.  The Settlement Administrator shall distribute payments from the Settlement Fund pursuant to the Distribution Plan set forth in Sections 8.9.1-8.9.2.  The Settlement Administrator may deduct from the Settlement Fund any and all reasonable and necessary expenses for the administration of such payments (*e.g.*, costs associated with generating and mailing checks), as well as all reasonable expenses for the determinations as to the validity of Claims.

8.9.1.  General Distribution Plan.  With the sole exception of the Actual Damages Claims payments to certain members of the Dispute Settlement Sub-Class in lieu of the fixed statutory damages payment, within seventy five (75) days after the Effective Date, the Settlement Administrator shall mail payments out of the statutory damages settlement fund to the Settlement Class Members, as set forth in Sections 8.5 and 8.6 via U.S. mail.  Each Consumer will receive only one statutory damages payment, regardless of the number of counts in the Amended Complaint (excluding the Actual Damages Claims Settlement Class) that may have applied to that Consumer.  The Payment Notices accompanying the payment check shall notify the recipients that the checks must be cashed within sixty (60) days from the date on the Payment Notice and that the enclosed check shall not be valid after that date.  Sixty (60) days after the date on the Payment Notice, if the check has not been deposited or cashed, the amount of the check shall remain in the Settlement Fund for further distribution to the Actual Damages Claims Settlement Class Members pursuant to Sections 8.7.1-8.7.3.

8.9.2.  Actual Damages Claims Payments.  No later than one hundred (100) days and no sooner than Seventy (70) days after the date of the last Payment Notice mailed pursuant to Subsection 8.9.1, the Settlement Administrator shall mail via U.S. mail a Payment Notice and check in the amount calculated pursuant to Subsection 8.7.2 to the last known address of each Dispute Settlement Sub-Class who has been determined to have submitted a Valid Claim.  The amount of the payment shall be calculated as set forth in Subsection 8.7.2.  Each class member will be entitled to only one Actual Damages claim and payment.  The Payment Notices accompanying the payment check shall notify the recipients that the checks must be cashed within sixty (60) days from the date on the Payment Notice and that the enclosed check shall not be valid after that date.  Sixty (60) days after the date on the Payment Notice, if the check has not been deposited or cashed, the amount of the check shall remain in the Settlement Fund for further distribution pursuant to the *cy pres* recipient under Section 8.10.

8.10.  In conjunction with the motion for Final Approval, the Parties shall propose a non-profit organization or foundation to receive any residue from the Settlement Fund under the terms set forth herein.  Any excess funds remaining in the Settlement Fund after all distributions have been made in accordance with this Agreement to the Settlement Class Members shall be donated to the *cy pres* entity selected by Class Counsel, subject to approval by the Court and reasonable approval by Defendants' Counsel.  In the absence of agreement, the Court shall designate the *cy pres* entity to receive the balance of the Settlement Fund.  The *cy pres* distribution shall be distributed by the Settlement Administrator within ninety (90) days of the mailing of the final payment under the provisions of paragraph 8.9.2.

8.11.  Capped Fund.  Except for Defendants' costs to generate the class lists pursuant to Section 4.1 and the mailing of the CAFA notices, all of the following must be paid from the Twenty Million, Eight Hundred Thousand Dollars and no cents ($20,800,000.00) paid into the Settlement Fund by Defendants and Defendants' Insurers: (i) notice and administration costs; (ii)

payments to the Settlement Class Members; (iii) payments of Service awards to the named Plaintiffs; (iv) and payments to Class Counsel for Attorneys' Fees.   The Parties and their respective counsel agree that under no circumstances will Defendants, Released Parties, and/or Defendants' Insurers pay or cause to be paid more than their respective contributions aggregating to Twenty Million, Eight Hundred Thousand Dollars and no cents ($20,800,000.00) pursuant to this Settlement.

8.12.   The Parties Agree, and the Court shall order, that no Settlement Class Member has a vested interest in any amount to be paid to him or her under the Settlement Agreement unless and until he or she has cashed a settlement check under the parameters and timeframe set forth herein.

## IX.   RELEASE OF CLAIMS

9.1.   Upon the Effective Date, Named Plaintiffs, for themselves and as representatives of the Settlement Class, and on behalf of each member of the Settlement Class and/or his or her respective spouses, heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors and assigns and all those acting or purporting to act on their behalf acknowledge full satisfaction of, and shall be conclusively deemed to have fully, finally and forever settled, released and discharged the Released Parties of and from the Released Claims.

9.2.   Subject to the requirements of due process, this Settlement Agreement shall bind all Settlement Class Members and all of the Released Claims shall be dismissed with prejudice and released as against the Released Parties, even if the Settlement Class Member claims or can later show that he or she did not receive actual notice of the Settlement prior to the hearing on final approval of the Settlement.

9.3.1   Release.   In exchange for the relief described in this Settlement Agreement and the creation of the Settlement Fund, the Settlement Class Members and the Named Plaintiffs and any of their respective heirs, spouses, executors, administrators, partners, attorneys,

27

predecessors, successors, assigns, agents and/or representatives, and/or anyone acting or purporting to act on their behalf agree to release the Released Parties from all duties, obligations, demands, claims, actions, causes of action, suits, damages, rights or liabilities of any nature and description whatsoever, whether arising under local, state or federal law, whether by Constitution, statute (including, but not limited to, the FCRA and FCRA State Equivalents), tort, contract, common law or equity or otherwise, whether known or unknown, concealed or hidden, suspected or unsuspected, anticipated or unanticipated, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, fixed or contingent related to the allegations in the Complaint, Amended Complaint and/or any claims that could have been brought arising out of the allegations set forth in the Complaint and Amended Complaint. It is the intent of the Parties that this release cover every possible claim that could have been brought under the FCRA and FCRA State equivalents, regardless of whether it was a claim relating to accuracy, privacy, disclosure, notification, dispute processing, or any other requirement imposed by federal or state law in connection with furnishing consumer reports. This release includes, but is not limited to all claimed or unclaimed compensatory damages, actual damages, damages stemming from any allegations of willfulness, recklessness, damages for emotional distress, statutory damages, consequential damages, incidental damages, treble damages, punitive and exemplary damages, as well as all claims for equitable, declaratory or injunctive relief under any federal or state statute or common law or other theory that was alleged or could have been alleged in the Litigation, including but not limited to any and all claims under deceptive or unfair practices statutes, or any other statute, regulation or judicial interpretation. This release also includes interest, attorney's fees, costs and expenses arising out of any of the claims described above. Nothing in this Settlement Agreement shall be deemed a release of the Parties' respective rights and obligations under this Settlement Agreement.

9.3.2.  Expressly excluded from the scope of the release of Section 9.3.1 shall be claims under 15 U.S.C. § 1681e(b) or FCRA State Equivalents to 15 U.S.C. § 1681e(b) as to members of the Settlement Class, with the sole exception of the members of the Dispute Settlement Sub-Class.  Thus, for purposes of clarity and not limitation, the Parties agree that the release of Section 9.3.1 shall include claims under 15 U.S.C. § 1681e(b) or FCRA State Equivalents to 15 U.S.C. § 1681e(b) as to members of the Dispute Settlement Sub-Class, regardless of whether a member of the Dispute Settlement Sub-Class is also included as a class member under any other count of the Amended Complaint.  Further, nothing in this Settlement Agreement shall be deemed a release of the Parties' respective rights and obligations under this Settlement Agreement.

9.3.3.  The claims described in Sections 9.3.1 and 9.3.2 are released regardless of whether they are unknown, concealed or hidden, unsuspected, unanticipated, unasserted, unforeseen, contingent, unliquidated, or contingent.

9.4.  Waiver of California Civil Code Section 1542.  The Parties agree that this Settlement Agreement shall not require a class member to provide to Defendants a general release and that the release is limited to those claims encompassed by the provisions of Sections 9.3.1-9.3.3.  Notwithstanding that understanding, to the extent applicable under Sections 9.3.1-9.3.3, Plaintiffs, for themselves and for each Settlement Class Member, acknowledge that they are aware that they may hereafter discover facts in addition to or different from those that they or Class Counsel now knows or believes to be true with respect to the subject matter of these releases, but it is their intention to, and they do hereby, upon the Effective Date of this Settlement Agreement, fully, finally and forever settle and release any and all Released Claims, without regard to the subsequent discovery or existence of such different or additional facts.  Plaintiffs, for themselves and for each Settlement Class Member, waive any and all rights and benefits afforded by California Civil Code Section 1542, which provides as follows: "A GENERAL RELEASE

DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR." Plaintiffs and Class Counsel understand and acknowledge the significance of this waiver of California Civil Code Section 1542 and/or of any other applicable federal or state law relating to limitations on releases.

## X.    TERMINATION AND SUSPENSION

10.1.  Defendants' Rights to Terminate Agreement.  Defendants' willingness to settle this Litigation on a class-action basis and to agree to the certification of conditional Settlement Class is dependent upon achieving finality in this Litigation, and the desire to avoid the expense of this and other litigation.  Consequently, Defendants shall have the unilateral right in their sole discretion to individually terminate this Settlement Agreement, declare it null and void, and have no further obligations under this Settlement Agreement to the Plaintiffs, Settlement Class Members, or Class Counsel if any of the following conditions subsequently occurs: (1) the Court fails or declines to grant Preliminary Approval pursuant to the terms of the Preliminary Approval Order; (2) more than 5% of the Settlement Class Members request to opt-out of the Settlement pursuant to Section 5.1; (3) the Court materially modifies the terms of the Release or the Released Parties; (4) the Effective Date does not occur for any reason, including the entry of an order by any court that would require either material modification or termination of the Settlement Agreement or the Final Approval Order.

10.2.  Plaintiffs' Rights to Terminate Agreement.  Plaintiffs shall have the unilateral right in their sole discretion to individually terminate this Settlement Agreement, declare it null and void, and have no further obligations under this Settlement Agreement to the Defendants if any of the following conditions subsequently occurs: (1) the Court fails or declines to grant

Preliminary Approval pursuant to the terms of the Preliminary Approval Order; (2) the actual size of any class or subclass is greater than the estimate of class size stated herein by more than 5%, unless the Defendants agree to increase the gross amount of the Settlement Fund in proportion to the class size increase; (3) the Court materially modifies the terms of the Release or the Released Parties; (4) the Effective Date does not occur for any reason, including the entry of an order by any court that would require either material modification or termination of the Settlement Agreement or the Final Approval Order.

10.3.   The failure of any Court to approve the Attorneys' Fees in the requested amounts, or any amounts whatsoever, shall not be grounds for the Named Plaintiffs or Class Counsel to terminate this Settlement Agreement.

10.4.   Effect of Termination on This or Future Litigation.  If this Settlement Agreement is rejected by the Court or terminated for any reason: (1) the class-certification portions of the Settlement Agreement shall have no further force and effect and shall not be offered in evidence or used in the Litigation or in any other proceeding; (2) counsel for the Parties shall seek to have any Court orders, filings, or other entries in the Court's file that result from this Settlement Agreement set aside, withdrawn, and stricken from the record; (3) the Settlement Agreement and all negotiations, proceedings, and documents prepared, and statements made in connection with either of them, shall be without prejudice to any Party and shall not be deemed or construed to be an admission or confession by any Party of any fact, matter, liability, or proposition of law; and (4) the Parties shall stand in the same procedural position as if the Settlement Agreement had not been negotiated, made, or filed with the Court, and no doctrine of waiver, estoppel, or preclusion will be asserted in any litigated certification proceedings in the Litigation against either party.

10.5.   Effect of Termination on Monies Paid by Defendants and Defendants' Insurers Pursuant to Settlement Agreement.  If this Settlement Agreement is terminated, the Settlement Fund, including any interest earned, less any Taxes, Tax Expenses, and notice, claims, and other

administration costs (including fees, costs, and other expenses of the Settlement Fund) that have been properly disbursed pursuant to this Settlement Agreement, shall be returned to Defendants and Defendants' Insurers in equal proportions to their contributions into the Settlement Fund.

## XI.    PUBLIC STATEMENTS

11.1.   Class Counsel agree to make no public statements regarding the Settlement without the consent of the Defendants until sixty (60) days after the Effective Date; provided, however, that this provision is not intended to limit communications of Class Counsel with any client, Settlement Class Member, or other person involved in this case.  Further, even after the expiration of that sixty (60)-day period, Class Counsel will negotiate and obtain agreement from all Defendants for any language that may be used in press releases concerning the Settlement.

## XII.   MISCELLANEOUS PROVISIONS

12.1.   Admissibility of Settlement Agreement.  This Settlement Agreement shall not be offered or be admissible in evidence in any action or proceeding except: (1) the hearings necessary to obtain and implement Court approval of this Settlement; or (2) any hearing to enforce the terms of this Settlement Agreement or any related order by the Court.

12.2.   Successors and Assigns.  The terms of this Settlement Agreement shall apply to and bind the Parties as well as their heirs, successors, and assigns.

12.3.   Communications Relating to Settlement Agreement.   Unless specified otherwise above, all notices or other formal communications under this Settlement Agreement shall be in writing and sent by mail to the following addresses:

| Leonard A. Bennett, Esq. CONSUMER LITIGATION ASSOCIATES, P.C. 763 J. Clyde Morris Blvd. Suite 1A Newport News, VA 23601 | David N. Anthony, Esq. TROUTMAN SANDERS, LLP 1001 Haxall Point Richmond, VA 23219 | Charles K. Seyfarth, Esq. LECLAIRRYAN, P.C. Riverfront Plaza - East Tower 951 E Byrd Street – 8th Floor Richmond, VA 23219 |
|---|---|---|

Any Party may, by written notice to all the other Parties, change its designated recipient(s) or notice address provided above.

12.4.   **Defendants' Communications with Consumers in the Ordinary Course of Business.**   Defendants reserve the right to continue communicating with their customers and Consumers, including Settlement Class Members, in the ordinary course of business.   To the extent Consumers initiate communications regarding this Agreement, Defendants may confirm the fact of a settlement and refer inquiries to the Settlement Administrator.   Nothing herein is intended to prohibit Defendants from communicating with Consumers regarding disputes relating to the provision of consumer reports for employment purposes.

12.5.   **Efforts to Support Settlement.**   The Parties and their counsel agree to cooperate fully in seeking Court approval for this Settlement Agreement and to use their best efforts to effect the consummation of the Settlement and to protect the Settlement Agreement by applying for appropriate orders enjoining others from initiating or prosecuting any action arising out of or related to facts or claims alleged in the Litigation, if so required.

12.6.   **Procedures for Disputes Between Parties Relating to the Settlement Agreement.**   To the extent any disputes or issues arise with respect to documenting or effecting the Settlement Agreement, the Parties agree to use their best efforts to informally resolve any such disputes or issues; but in the event any such dispute or issue cannot be resolved informally, to bring any such dispute or issue to Magistrate Judge David J. Novak for resolution.

12.7.   **Entire and Voluntary Agreement.**   The Parties intend the Settlement Agreement to be a final and complete resolution of the Litigation.   The Parties agree that the terms of the Settlement Agreement were negotiated at arm's length and in good faith and were reached voluntarily after consultation with competent legal counsel.   There shall there be no presumption for or against any Party that drafted all or any portion of this Settlement Agreement.   This Settlement Agreement contains the entire agreement and understanding

concerning the subject matter between the Parties and supersedes all prior negotiations and proposals, whether written or oral. No other party or any agent or attorney of any other party has made any promise, representation or warranty whatsoever not contained in this Settlement Agreement and the other documents referred to in this Settlement Agreement to induce them to execute the same. The Parties represent that they have not executed this instrument or the other documents in reliance on any promise, representation, or warranty not contained in this Settlement Agreement and the other documents referred to in this Settlement Agreement. Any modification must be in writing signed by the Parties and their respective counsel and, to the extent necessary, approved by the Court.

12.8.   Headings for Convenience Only.   The headings in this Settlement Agreement are for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

12.9.   Settlement Agreement Controls.   All of the Exhibits attached hereto are hereby incorporated by reference as though fully set forth herein. To the extent that there is any conflict between the terms of this Settlement Agreement and the Exhibits attached hereto, this Settlement Agreement shall control.

12.10. Amendments.   The Settlement Agreement may be amended or modified only by a written instrument signed by Defendants' Counsel and Class Counsel, or their respective successors-in-interest.

12.11. Authorization of Counsel.   Class Counsel, on behalf of the Settlement Class, are expressly authorized by Plaintiffs to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to the Settlement Agreement to effectuate its terms, and also are expressly authorized to enter into any modifications or amendments to the Settlement Agreement on behalf of the Settlement Class that they deem necessary or appropriate. Each attorney

executing the Settlement Agreement on behalf of any Party hereto hereby warrants that such attorney has the full authority to do so.

    12.12.  Class Counsel agree that they will: (a) not solicit, bring, represent any plaintiff or actively pursue any civil action against the Released Parties under any legal theory or claim, for the same types of claims pled in the initial Complaint and/or in the Amended Class Complaint for business activity, conduct, action or inaction during the period of August 16, 2007 through May 1, 2013; and (b) not solicit to represent any plaintiff under any legal theory or claim, for the same type of claims pled in the initial Complaint and/or in the Amended Class Complaint against Wal-Mart, Inc., Allstate Corporation, DistTech, Inc. and Service King with respect to any claim arising out of the business activities, conduct, action or inaction of the Released Parties for the period of August 16, 2007 through May 1, 2013.  Class Counsel agree not to sue Released Parties for the legal theories and claims described in the initial Complaint and/or in the Amended Class Complaint with respect to any claim arising out of the business activities, conduct, action or inaction of the Released Parties for the period of August 16, 2007 through May 1, 2013. Notwithstanding the foregoing, the parties and Class Counsel agree that the terms of this paragraph will apply only if approved by the Court and does not apply to: (a) any pending litigation against any of the Released Parties by Class Counsel as of the date of the execution of this Settlement Agreement (other than the Lawsuit that is the subject of this Settlement Agreement); or (b) any claims against Sterling Infosystems, Inc. or any of its affiliates other than Sterling-OH that do not arise out of claims pled in the initial Complaint and/or in the Amended Class Complaint for business activity, conduct, action or inaction during the period of August 16, 2007 through May 1, 2013.

    12.13.  Confidentiality.  All agreements made and Orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

12.14. Court's Jurisdiction.   The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement and all orders entered in connection therewith.  The Parties and their attorneys submit to the jurisdiction of the Court regarding these matters.

12.15. Construction.  Each of the Parties has cooperated in the mutual drafting and preparation of this Settlement Agreement.   Hence, in any construction to be made of this Settlement Agreement, the same shall not be construed against any of the Parties.   Before declaring any provision of this Settlement Agreement invalid, a court should first attempt to construe the provision as valid to the fullest extent possible consistent with applicable precedent so as to find all provisions of this Settlement Agreement valid and enforceable.

12.16. No Claims Arising from this Settlement Agreement.  No person shall have any claim against any Defendant, Released Party, Defendants' Counsel, Named Plaintiffs or Class Counsel based on distribution of benefits made substantially in accordance with this Settlement Agreement or any Settlement Agreement-related order(s) of the Court.

12.17. Applicable Law.  This Settlement Agreement shall, in all respects, be interpreted, construed and governed by and under the laws of the United States of America.  To the extent state law applies for any reason, the laws of the Commonwealth of Virginia shall be applied.  All judicial proceedings regarding this Settlement Agreement shall be brought only in this Court. Any notice period set forth in this Settlement Agreement shall be calculated pursuant to the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Eastern District of Virginia.

12.18. Waiver.  The waiver by one party of any provision or breach of this Settlement Agreement shall not be deemed a waiver of any other provision or breach of this Agreement.

12.19. Counterparts and Date of Agreement.   This Settlement Agreement may be executed in one or more counterparts and by facsimile.  All executed counterparts and each of

them shall be deemed to be one and the same instrument.  Counsel for the Parties shall exchange among themselves signed counterparts, and a complete set of executed counterparts shall be filed with the Court.  The Settlement Agreement shall become effective upon its execution by all of the undersigned.

IN WITNESS THEREOF, the Parties hereto have caused this Agreement to be executed by their duly authorized representatives.

**Plaintiff:**

---

**TYRONE HENDERSON**
Dated: _____, 2015

**Plaintiff:**

_____

**WILLIAM WILES**
Dated: _____, 2015

**Plaintiff:**

_____

**CHARLES TAYLOR**
Dated: _____, 2015

Defendant:

ACXIOM CORPORATION
By: _____
Its: _____
Dated: _____, 2015

Defendant:

ACXIOM   RISK   MITIGATION,
INC.
By: _____
Its: _____
Dated: _____, 2015

Defendant:

STERLING INFOSYSTEMS-OHIO,
INC., F/K/A ACXIOM INFORMATION
SECURITY SERVICES, INC.
By: ANDREW PORTER
Its: GENERAL COUNSEL
Dated: FEB 9th, 2015

Class Action Settlement Agreement & Release

Leonard A. Bennett, Esq. (VSB No. 37523)
Susan M. Rotkis, Esq. (VSB No. 40693)
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd, Suite 1A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: srotkis@clalegal.com

Matthew J. Erausquin, Esq. (VSB No. 65434)
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Rd., Suite 600
Alexandria, VA 22314
Telephone: (703) 273-7770
Facsimile: (888) 892-3512
Email: matt@clalegal.com

Dale Wood Pittman, Esq. (VSB No. 51673)
The Law Office of Dale W. Pittman, P.C.
112-A W Tabb St.
Petersburg, VA 23803-3212
Telephone: (804) 861-6000
Facsimile: (804) 861-3368
Email: dale@pittmanlawoffice.com

James A. Francis, Esq.
David A. Searles, Esq.
FRANCIS & MAILMAN PC
100 S Broad Street, 19th Floor
Philadelphia, PA 19110
Telephone: 215-735-8600
Facsimile: 215-940-8000
Email: jfrancis@consumerlawfirm.com
Email: dsearles@consumerlawfirm.com

Christopher C. North, Esq.
751-A Thimble Shoals Blvd.
Newport News, VA 23606
Telephone: (757) 873-1010
Email: cnorthlaw@aol.com

Michael A. Caddell, Esq.
CADDELL & CHAPMAN
1331 Lamar St, Suite 1070
Houston, TX  77010
Telephone: (713) 751-0400
Facsimile:  (713) 751-0906
mac@caddellchapman.com

*Counsel for Plaintiffs*

Alan D. Wingfield (VSB No. 27489)
David N. Anthony (VSB No. 31696)
Timothy J. St. George (VSB No. 77349)
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, VA  23219
Telephone: (804) 697-1200
Facsimile:  (804) 698-1339
alan.wingfield@troutmansanders.com
david.anthony@troutmansanders.com
tim.stgeorge@troutmansanders.com

*Counsel for Defendants, Acxiom Corporation and Acxiom Risk Mitigation, Inc.*

Charles K. Seyfarth (VSB No. 44530)
LeClair Ryan PC
Riverfront Plaza - East Tower
951 E Byrd Street – 8th Floor
Richmond, VA  23219
Telephone: (804) 916-7159
Facsimile:  (804) 916-7259
charles.seyfarth@leclairryan.com

Megan S. Ben'Ary (VSB No. 47349)
LeClairRyan PC
2318 Mill Road, Suite 1100
Alexandria, VA  22314
Telephone: (703) 647-5933
Facsimile:  (703) 647-5983
megan.benary@leclairryan.com

*Counsel for Defendant, Sterling Infosystems-Ohio, Inc.,
    Formerly known as Acxiom Information Security Services, Inc.*

**Class Administrator:**

**AMERICAN LEGAL CLAIMS
SERVICES, LLC**

By:_____

Its:_____

Dated:   _____, 2015