UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

TYRONE HENDERSON,
CHARLES TAYLOR, and
WILLIAM WILES,

        Plaintiffs,

v.                                    Civil Action No. 3:12cv589-REP

ACXIOM RISK MITIGATION, INC.,
ACXIOM CORPORATION, and
ACXIOM INFORMATION SECURITY
SERVICES, INC.,

        Defendants.

---

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF UNOPPOSED
MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS**

---

## I.    Introduction

This case resolves years of contentious litigation seeking to hold Defendants accountable for allegedly failing to comply with certain notice and dispute requirements imposed by the Fair Credit Reporting Act ("FCRA"). The Parties fully briefed motions for preliminary and final approval of the Settlement (Dkts. 84; 107) and for attorneys' fees (Dkt. 103), and the Court held a Final Fairness Hearing on July 29, 2015. (*See* Dkt. 112.) At that hearing, the Court requested that Class Counsel provide additional briefing and factual information relating to their requested award of attorneys' fees, which is set forth below.

The gross settlement fund in this case is $20,800,000, which will provide genuine, cash benefits to approximately 460,000 consumers. Class Counsel has requested an award of $6,015,618.30 in attorneys' fees, which represents only 27.97% of this gross fund. Or put

another way, they ask for 30% of the net cash actually going to class members in total for both attorneys' fees and litigation expenses. By their "30%" request, Class Counsel have excluded the $747,939 required for settlement notice and administration and have included in their "fee" percentage *both* attorneys' fees *and* litigation expenses.[1] The actual crosscheck multiplier sought is 3.05, and this ratio will drop below 3.0 as Class Counsel's post-Fairness Hearing lodestar continues to accrue. (*See* Ex. A, Dkt. 104-1 ¶ 23.)

Of course, Defendants do not oppose the fee request but, more importantly, neither regulators, professional (or attorney) objectors, nor any Class Members object to the fee and expense reimbursement sought. Of the ten Class Members who originally objected to the Settlement—none of whom appeared at the Fairness Hearing—only one even mentions attorneys' fees, and that objector does not assert that the fees are unreasonable, undeserved, or should be reduced. (*See* Dkt. 101-1 at 17[2] ("I am objecting to the attorneys fees to be taken from the Plaintiffs [sic] awards, to which is to be paid by the Defendants – if attorneys was [sic] appointed by the Court from this treasury.").) Moreover, both the applicable law and renowned class-action-fee expert Professor Geoffrey Miller confirm that the requested fee is below the crosscheck threshold that would give a court pause and well within the mean of reasonable, awarded class action fees by any measure. Whether analyzed against the percentage of the common fund method or lodestar crosscheck method, the requested fee is reasonable.

---

[1] Once unreimbursed expenses of $200,091.74 are deducted from the proposed $6,015,618.30 fee, the resulting fee is $5,815,526.56, which equates to 27.96% of the Class recovery. (Ex. A, Dkt. 104-1 ¶ 23.)
[2] This page number indicates that in the header affixed by the Clerk upon filing.

## II.      The Circumstances Of This Case Support The Requested Fee.

As Professor Geoffrey Miller explains in his Declaration previously filed in this case[3] (and attached hereto as Exhibit A), class action litigation "involve[s] significant risk and resources—they are always brought on a contingent basis and often result in defeat. As a result, many lawyers are unwilling to risk their financial resources and staff to class cases." (Dkt. 104-1 ¶ 31.) Courts within this Circuit affirm that point, noting the risk that litigation like this presents is serious and genuine:

> In complex, multi-year class actions, the risks inherent in the litigation are immense and the risk of receiving little or no recovery is a major factor in awarding attorney fees. The risk of no recovery in complex cases of this sort is not merely hypothetical. Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and costs advanced, but lost the case despite their advocacy.

*In re LandAmerica 1031 Exch. Servs., Inc. I.R.S. 1031 Tax Deferred Exch. Litig.*, No. 3:09-CV-00054, 2012 WL 5430841, at *4 (D.S.C. Nov. 7, 2012) (citations omitted). Adopting the Court's vernacular, while experienced counsel know which dogs will hunt and which will not, even the best dogs flush skunks sometimes, especially in FCRA class actions given the multitude of complex issues presented both at certification and on the merits. As Mr. Bennett argued in the (otherwise unrelated) *Thomas v. Backgroundchecks.com* fee hearing, this very area of the law and FCRA litigation is amongst the most complex and challenging. Plaintiffs—and present Counsel—do have both merits and class certification risk. *See, e.g.*, *Rodriguez v. Equifax Info. Servs.*, Civ. No. 1:14CV1142 (E.D. Va. July 17, 2015) (Dkt. 131) (granting summary judgment in favor of defendant and denying class certification in Section 1681k(a)(1) case); *Henderson v.*

---

[3] Class Counsel are responsible for the Court's uncertainty regarding more detailed support for their fee request as they relied too heavily on the substance of their previously filed declarations without better or more precise reference to that substance in their actual Memorandum. One example is their failure to include in the fee brief the crosscheck analysis made in his declaration by the very attorneys' fee expert upon whose research Judge Goodwin relied. *See Kay Co. v. Equitable Prod. Co.*, 749 F. Supp. 2d 455, 467 (S.D. W. Va. 2010) (citing 2010 study by Professor Miller).

*InfoMart Inc.*, Civ. No. 1:14CV1609 (N.D. Ga. Aug. 15, 2014) (Dkts. 59, 61) (adopting report and recommendation of the magistrate judge and granting motion to dismiss in Section 1681k(a)(1) case); *Kingery v. Quicken Loans, Inc.*, Civ. No. 2:12CV1353 (S.D. W. Va. June 4, 2014) (Dkt. 281) (reversing its prior certification of the class and granting summary judgment to defendant); *Farmer v. Phillips Agency, Inc.*, 285 F.R.D. 685 (N.D. Ga. 2012) (denying class certification in Section 1681k(a)(1) case); *Gomez v. Kroll Factual Data, Inc.*, No. 13-cv-0445-WJM-KMT, 2014 WL 1456530, at *1 (D. Colo. Apr. 14, 2014) (denying class certification on Section 1681e(b) claim); *Dunford v. American DataBank, LLC*, 64 F. Supp. 3d 1378 (N.D. Cal. 2014) (refusing to certify class asserting Section 1681b(b)(1), 1681b(b)(2), and 1681c(a) claims). Battles can be long, difficult, and uncertain. *See, e.g.*, *Henderson v. Corelogic Nat'l Background Data, LLC*, Civ. No. 3:12CV97 (E.D. Va.). And even if plaintiffs and their counsel are successful, a team largely tied to a percentage-of-the-fund fee philosophy—like this one—can suffer a "less than 1.0" fee multiplier when the class size ends up smaller than targeted. *See, e.g.*, *Wyatt v. Suntrust Bank*, Civ. No. 3:13CV662 (E.D. Va. May 21, 2015); *Lengrand v. WellPoint Inc.*, Civ. No. 3:11CV333 (E.D. Va. May Nov. 13, 2012); *Mayfield v. Memberstrust Credit Union*, 3:07cv506 (E.D. Va. Nov. 7, 2008) (Payne, J.) (because of small class size, the fee sought was $8,300.00, well below the actual time counsel had invested in the case); *Conley v. First Tenn.*, 1:10cv1247 (E.D. Va.) (Dkt. 37) (Ellis, J.) (same, for a fee of only $20,000.00)

Class Counsel's success at obtaining a substantial recovery for Class Members was anything but risk-free, as the case was complex and far-from simple. A fair analysis of the facts here and the applicable authorities confirms the reasonableness of the requested fee.

A.    **The Percentage Of The Fund Is The Appropriate Measure Of Fees In Common Fund Cases In The Fourth Circuit.**

The concept of a contingent attorneys' fee and its integration of a risk-incentive is well-established. It makes sense that the focus of a fee determination in a class settlement is the actual benefit obtained for the class. MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.71 ("Compensating counsel for the actual benefits conferred on the class members is the basis for awarding attorney fees. The 'fundamental focus is the result actually achieved for class members.' That approach is premised on finding a tangible benefit actually obtained by the class members. In comparing the fees sought by the lawyers to the benefits conferred on the class, the court's task is easiest when class members are all provided cash benefits that are distributed."). Plaintiffs have already briefed the question of what percentage of a common fund is appropriate. The "bell curve" range of contingency percentages in class cases, supported with a string cite of class fee award decisions is between 25% and 40%.   But regardless of how the courts get to the fee result, the 30% of recovery outcome is far more often than not found to be reasonable. "Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." 4 NEWBERG ON CLASS ACTIONS § 14:6 (4th ed.); *see also In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) (review of 289 class action settlements demonstrates "average attorney's fees percentage [of] 31.71%" with a median value that "turns out to be one-third").   In an analysis of such historic patterns and guidelines, Reagan W. Silber and Frank E. Goodrich explained:

> Although empirical evidence does not necessarily establish what the court should do in a specific case, it provides benchmark standards for the court to determine the reasonableness of a fee award. Because plaintiffs' attorneys must be able to predict the fee determinations that courts are likely to make years later if they are

to undertake lengthy and risky litigation on a contingent fee basis, such benchmarks have particular importance in this area of the law.

National Economic Research Associates, an economics consulting firm, recently conducted an analysis of fee awards in class actions. Using data from 656 shareholder class actions that were settled, dismissed, or resolved by a jury verdict from January 1991 to December 1994, the Dunbar Study found that attorneys' fees in these class actions averaged approximately 32% of the recovery, regardless of the case size.

When plaintiffs' judicially approved expenses were added to the fee award, the fees and expenses averaged 34.74% of the created fund.

Reagan W. Silber & Frank E. Goodrich, *Common Funds & Common Problems: Fee Objections & Class Counsel's Response*, 17 REV. LITIG. 525, 545–46 (1998).

In the Fourth Circuit, attorneys' fees in common fund cases are almost universally awarded on a percentage-of-the-recovery basis. *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 758 (S.D.W. Va. 2009) ("The percentage method has overwhelmingly become the preferred method for calculating attorneys' fees in common fund cases."); *see Deem v. Ames True Temper, Inc.*, No. 6:10-CV-01339, 2013 WL 2285972, at *4 (S.D. W. Va. May 23, 2013) (noting that "[d]istrict courts within the Fourth Circuit have consistently endorsed the percentage method," and collecting cases supporting this conclusion); *Smith v. Krispy Kreme Doughnut Corp.*, No. 1:05cv00187, 2007 WL 119157, at *1 (M.D.N.C. Jan 10, 2007); *DeLoach v. Philip Morris Cos.*, No. 00-1235, 2003 WL 23094907, at *3 (M.D.N.C. Dec. 19, 2003) (citing, with approval for this same proposition, *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 215 (D. Me. 2003)); *Kidrick v. ABC Television & Appliance Rental*, No. 3:97cv69, 1999 WL 1027050, at *1-2 (N.D. W. Va. May 12, 1999) (awarding 30.6% of approximately $400,000 settlement fund, noting that "[a]n award of fees in the range of 30% of the fund has been held to be reasonable. . . . Fees as high as 50% of the fund have been awarded.") (internal citations omitted); *see also Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 502 (E.D. Va. 1995) (explaining "[a]lthough the Fourth Circuit has not yet ruled on

this issue, the current trend among the courts of appeal favors the use of a percentage method to calculate an award of attorneys' fees in common fund cases.").

District courts within the Fourth Circuit have similarly noted that most percentage fee awards range from 18 percent to 36 percent of the settlement fund. *See In re LandAmerica*, 2012 WL 5430841, at *4 (collecting cases). This is consistent with the practice of other circuit courts: a comprehensive study of attorneys' fees in class action cases—co-authored by Professor Miller—notes "a remarkable uniformity in awards between roughly 30% to 33% of the settlement amount." Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, 1 J. OF EMPIRICAL LEGAL STUDIES 27, 31, 33 (2004); (*see also* Ex. A, Dkt. 104-1 ¶ 27 (finding that the median fee in a range of class actions was 30%, higher than the 27.96% requested here).) This holds true even in instances where the class recovery runs into the hundreds of millions of dollars. *See, e.g.*, *In re Thirteen Appeals*, 56 F.3d at 295 (approving award of thirty percent of $220 million); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1136 (W.D. La. 1997) (awarding thirty-six percent of $125 million). In cases of smaller funds, such as this one, 25% to 33.3% of the fund is the accepted award. *In re LandAmerica*, 2012 WL 5430841, at *4 (noting that the 25% requested fee "falls at the low end of the average range of fees awarded in common fund class actions"); *Deem*, 2013 WL 2285972, at *6 (awarding 33 1/3% of the settlement fund); *In re Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (approving award of 36% of $3.5 million settlement fund); *Gwozdzinnsky v. Sandler Assoc.*, No. 97-7314, 1998 WL 50368, 159 F.3d 1346 (2d Cir. 1998) (unpublished) (affirming district court's award of 25% of $1 million common fund); *In re Educ. Testing Serv.*, 447 F. Supp. 2d 612, 631 (E.D. La. 2006) (concluding the customary fee award for class actions "is between 22% and 27%"); *In re CMS Energy ERISA Litig.*, No. 02-72834, 2006 WL 2109499, at *1 (E.D. Mich.

June 27, 2006) (awarding fee of 28.5% of $28 million settlement fund); *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 995 (D. Minn. 2005) (awarding 25% of $80 million settlement fund); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (granting attorneys' fees in amount of 33 1/3% of $1.5 million settlement fund); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (awarding 33.3% of $3.8 million settlement fund); *Kidrick v. ABC Television & Appliance Rental*, No. 3:97cv69, 1999 WL 1027050, at *1–2 (N.D. W. Va. May 12, 1999) (awarding 30.6% of approximately $400,000 settlement fund, noting that "[a]n award of fees in the range of 30% of the fund has been held to be reasonable. . . . Fees as high as 50% of the fund have been awarded.") (internal citations omitted). Since the Settlement here creates a common fund for the benefit of the Class, it is appropriate for the Court to award fees calculated as a percentage of that fund.

> **B.   An Award Of 27.97% Of The Common Fund Is Reasonable And Appropriate Here.**

Litigation is inherently risky, and those risks are heightened in contingent-fee cases because there is the ever-present possibility that a defense victory on a dispositive motion effectively ends the litigation. In such a situation, plaintiff's counsel is left holding the proverbial bag, as they will receive no fee for their work and will lose all of their incurred expenses. *See In re LandAmerica*, 2012 WL 5430841, at *4. This case presents a significant example of that risk, as Plaintiffs' Counsel has accumulated nearly $2 million in attorney and paralegal time—over five years—and $200,000 in unreimbursed expenses in litigating this case. The percentage-of-the-fund method of awarding attorneys' fees permits "courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" *Muhammad v. Nat'l City Mortgage, Inc.*, No. CIV.A. 2:07-0423, 2008 WL 5377783, at *7 (S.D. W. Va. Dec. 19, 2008) (citing *In re Prudential Ins. Co. Am. Sales Litig.*, 148 F.3d 283, 333 (3d Cir. 1998)).

To evaluate the reasonableness of attorneys' fees under the percentage-of-the-fund approach, courts typically consider several factors, including:

> (1) the results obtained for the class, (2) the quality, skill, and efficiency of the attorneys involved, (3) the complexity and duration of the case, (4) the risk of nonpayment, (5) awards in similar cases, (6) objections, and (7) public policy.

*Jones*, 601 F. Supp. 2d 760. Due to the unique nature of every case, there is no specific formula for applying these factors, meaning that one factor alone may outweigh the rest and support the fee's reasonableness on its own. *Id.*

Class Counsel has expended significant time and energy in litigating this case, covering multiple tasks, as set forth in the following tables, which reflect total hours of 3651—70% of which were incurred prior to reaching a settlement in principle with the Defendants (which is not to suggest that Class Counsel faced no risk or difficulties after having achieved a settlement in principle), and a total lodestar of $1,904,469.72:

## Consumer Litigation Associates (*See* Dkt. 104-2):

| | Timekeeper | | Description: | (A) Attorney (P) Paralegal | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **CLASS COUNSEL:** | | | | | | | | | | |
| **CONSUMER LITIGATION ASSOCIATES** | | | | | | | | | | |
| | | | | | | | | | | |
| | Leonard Bennett (A) | Matthew Erausquin (A) | Susan Rotkis (A) | Casey Nash (A) | Dale Pittman (A) | Karen Graham (P) | Krystyn Brauning (P) | Donna Winters (P) | Vicki Ward (P) | TOTAL |
| **Task** | | | | | | | | | | |
| Pre-filing preparation and research | 81.50 | 35.00 | 0.00 | 3.50 | 12.00 | 2.50 | 0.00 | 0.00 | 0.00 | |
| Internal file and administrative work | 9.00 | 4.50 | 2.00 | 4.00 | 10.50 | 5.00 | 12.50 | 11.75 | 20.00 | |
| Communication with co-counsel | 77.00 | 68.00 | 8.00 | 5.50 | 26.00 | 7.00 | 0.00 | 3.25 | 7.50 | |
| Discovery | 122.00 | 84.00 | 3.25 | 5.20 | 12.00 | 5.00 | 0.00 | 0.00 | 15.00 | |
| Motions Practice | 82.00 | 78.00 | 7.25 | 18.00 | 22.50 | 1.00 | 0.00 | 0.00 | 0.00 | |
| Mediation (includes preparation of submission to mediator) | 95.00 | 55.00 | 4.50 | 6.50 | 4.50 | 0.00 | 0.00 | 0.00 | 0.00 | |
| Settlement Documentation | 92.00 | 62.00 | 1.50 | 9.00 | 3.50 | 1.50 | 0.00 | 0.00 | 0.00 | |
| Settlement Administration (including anticipated future hours) | 100.00 | 100.00 | 50.00 | 50.00 | 2.00 | 3.00 | 50.00 | 0.00 | 50.00 | |
| | | | | | | | | | | |
| **Total Hours** | 658.50 | 486.50 | 76.50 | 101.70 | 93.00 | 25.00 | 62.50 | 15.00 | 92.50 | 1611.20 |
| **Hourly Rate** | 575.00 | 450.00 | 400.00 | 325.00 | 475.00 | 150.00 | 125.00 | 200.00 | 200.00 | |
| **Individual Total Lodestar** | $378,637.50 | $218,925.00 | $30,600.00 | $33,052.50 | $44,175.00 | $3,750.00 | $7,812.50 | $3,000.00 | $18,500.00 | $738,452.50 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| **Class Counsel Total Lodestar** | $738,452.50 | | | | | | | | | |

## The Consumer & Employee Rights Law Firm (*See* Dkt. 104-5):

|  | Christopher North (A) | William Downing (A) | Stephanie Miner (P) | TOTAL |
|---|---|---|---|---|
| **Task :** |  |  |  |  |
| Pre-filing preparation and research | 18.0 | 0.0 | 1.5 |  |
| Internal file and administrative work | 0.0 | 0.0 | 0.0 |  |
| Communication with co-counsel | 3.5 | 0.0 | 0.0 |  |
| Discovery | 21.0 | 0.0 | 0.0 |  |
| Motions | 21.5 | 8.0 | 0.0 |  |
| Mediations | 4.0 | 0.0 | 0.0 |  |
| Settlement Documents | 0.0 | 0.0 | 0.0 |  |
| Settlement Administration | 0.0 | 0.0 | 0.0 |  |
|  |  |  |  |  |
| **Total Hours** | 68.0 | 8.0 | 1.5 | 77.5 |
| **Hourly Rate** | 400.00 | 400.00 | 125.00 |  |
| **Individual Total Lodestar** | 27,200.00 | 3,200.00 | 187.50 | 30,587.50 |
|  |  |  |  |  |
| **Class Counsel Total Lodestar** | **$30,587.50** |  |  |  |

## Caddell & Chapman (*See* Dkt. 104-3):

CLASS COUNSEL:
CADDELL & CHAPMAN

| | Timekeeper | | Description: | (A) Attorney (P) Paralegal | | | |
|---|---|---|---|---|---|---|---|
|  | Michael Caddell (A) | Cynthia Chapman (A) | Craig Marchiando (A) | Kathy Kersh (P) | Felicia Labbe (P) | | TOTAL |
| Task |  |  |  |  |  |  |  |
| Pre-filing preparation and research | 22.70 | 4.60 | 75.30 | 9.40 |  |  | 112.00 |
| Internal file and administrative work | 43.60 | 42.10 | 3.40 | 3.60 | 4.70 |  | 97.40 |
| Communication with co-counsel | 37.30 | 31.60 | 7.30 |  |  |  |  |
| Discovery | 12.40 | 10.40 | 99.50 | 5.20 |  |  | 127.50 |
| Motions Practice | 45.30 | 27.00 | 125.70 | 1.50 |  |  | 199.50 |
| Mediation (includes preparation of submission to mediator) | 124.30 | 83.40 | 32.60 |  |  |  | 240.30 |
| Settlement Documentation | 19.10 | 16.10 | 4.20 |  |  |  | 39.40 |
| Settlement Administration (including anticipated future hours) | 43.60 | 41.10 | 37.60 | 0.40 | 1.30 |  | 124.00 |
|  |  |  |  |  |  |  |  |
| Total Hours | 348.30 | 256.30 | 385.60 | 20.10 | 6.00 |  | 1016.30 |
| Hourly Rate | 875.00 | 675.00 | 425.00 | 250.00 | 193.52 |  |  |
| Individual Total Lodestar | $304,762.50 | $173,002.50 | $163,880.00 | $5,025.00 | $1,161.12 |  | $647,831.12 |
|  |  |  |  |  |  |  |  |
| Class Counsel Total Lodestar | $647,831.12 |  |  |  |  |  |  |

**Francis & Mailman (*See* Dkt. 104-4.):**

| TASK | James Francis (A) | Mark Mailman (A) | David Searles (A) | John Soumilas (A) | Erin Novak (A) | Danielle Spang (A) | Lauren Brennan (A) | TOTAL ATTORNEY HOURS |
|---|---|---|---|---|---|---|---|---|
| Pre-filing preparation and research | 30.2 | 7.7 | 0 | 26 | 0 | 0 | 0 | **63.9** |
| Internal file and administrative work | 12.7 | 6.4 | 10.3 | 0 | 2.4 | 0 | 1.5 | **33.3** |
| Communication with co-counsel | 59.1 | 12.8 | 12.6 | 20.7 | 0 | 0 | 0 | **105.2** |
| Discovery | 65.2 | 6.4 | 23.9 | 25.8 | 0 | 0 | 0 | **121.3** |
| Motions Practice | 20.6 | 2.6 | 14.8 | 24 | 0 | 0 | 0 | **62** |
| Mediation (includes preparation of submission to mediator) | 96.5 | 0 | 80 | 0 | 0 | 0 | 0 | **176.5** |
| Settlement documentation | 22.2 | 0 | 28.5 | 0 | 0 | | 0 | **50.7** |
| Settlement Administration (including anticipated future hours) | 68.7 | 15.4 | 58.2 | 5 | 0 | 24.3 | 0 | **171.6** |
| | | | | | | | | |
| Total Hours | 375.2 | 51.3 | 228.3 | 101.5 | 2.4 | 24.3 | 1.5 | **784.5** |
| Hourly Rate | 580.00 | 580.00 | 700.00 | 470.00 | 350.00 | 250.00 | 200.00 | |
| Individual Total Lodestar | 217,616 | 29,754 | 159,810 | 47,705 | 840 | 6,075 | 300 | **$462,100** |
| | | | | | | | | |
| | | | | | | Class Counsel Total Lodestar / Attorneys | | **$462,100** |

| TASK | Krista Donohue (P) | Tina Massa/ Rosie Cimino (P) | Illijana Vukas (P) | Christina Roth (P) | Dania Richardson (P) | Flo Reich (LS) | TOTAL PARALEGAL HOURS | TOTAL HOURS Attorneys & Paralegals |
|---|---|---|---|---|---|---|---|---|
| Pre-filing preparation and research | 0 | 0 | 0 | 0 | 0 | 0 | **0** | 63.9 |
| Internal file and administrative work | 0 | 0 | 0 | 0 | 0 | 0 | **0** | 33.3 |
| Communication with co-counsel | 0 | 0 | 0 | 0 | 0 | 0 | **0** | 105.2 |
| Discovery | 0 | 57 | 0 | 0 | 0 | 0 | **57** | 178.3 |
| Motions Practice | 0 | 0 | 0 | 0 | 0 | 0 | **0** | 62 |
| Mediation (includes preparation of submission to mediator) | 0 | 0 | 0 | 0 | 0 | 0 | **0** | 176.5 |
| Settlement documentation | 0 | 0 | 0 | 0 | 0 | 0 | **0** | 50.7 |
| Settlement Administration (including anticipated future hours) | 19 | 17.6 | 12.6 | 6.2 | 1.8 | 47.6 | **104.8** | 276.4 |
| | | | | | | | | |
| Total Hours | 19 | 74.6 | 12.6 | 6.2 | 1.8 | 47.6 | **161.8** | 946.3 |
| Hourly Rate | 165.00 | 165.00 | 165.00 | 165.00 | 165.00 | 140.00 | | |
| Individual Total Lodestar | 3,135 | 12,309 | 2,079 | 1,023 | 297 | 6,664 | **$25,507** | |
| | | | | | | Class Counsel Total Lodestar / Paralegals | | **$25,507** |
| | | | | | | | | |
| | | | | | | TOTAL CLASS COUNSEL HOURS | | 946.3 |
| | | | | | | TOTAL CLASS COUNSEL TOTAL LODESTAR | | $487,607 |

An analysis of the significant work completed in this case against the factors articulated by Judge

Goodwin in *Jones* easily confirms that an award of 27.97% of the fund is appropriate.

1.        **The results obtained for the Class.**

As offered above, "[t]he result achieved by the attorneys for the class is often cited as one of the most significant factors in determining the reasonableness of a fee award." *Jones*, 601 F. Supp. 2d at 761. Here, the $20.8 million Settlement fund is an excellent result for Class Members who stand to receive genuine, cash relief from a statutory damages fund of $13,265,691.25 (assuming the Court's award of requested attorneys' fees and $747,939 in settlement administration costs), amounting to $35.25 or $11.75 per Class Member. (Dkt. 95-1 ¶¶ 8.1.1–8.1.2.) Significantly, none of these Class Members will have to take *any* action, such as filing a claim or verifying their identity, to receive their payments. Separately, the Parties will fund an actual damages account initially with $546,369.75 (taken from the $20.8 million fund), and later supplement this fund with any unclaimed money from the statutory damages fund. Those Dispute Settlement Sub-Class Members who submit a valid claim will be paid a *pro rata* share of the fund. (*Id.* ¶ 8.1.2.) As they explained to the Court at the Fairness Hearing, Plaintiffs estimate that each of these Dispute Settlement Sub-Class Members is likely to receive approximately $4,000, a significant amount given that they need only return a pre-paid-and-addressed postcard alleging harm resulting from Defendants' inaccurate reporting.

The size of the fund created is significant, and the opposition minimal. Of the more than 450,000 Class Members, only ten have objected. Without question, an objection rate of .00002222 from a class that received *direct* notice of the Settlement "suggests that the class members are pleased with the settlement result." *See Jones*, 601 F. Supp. 2d at 761. This factor therefore favors granting the requested fee.

## 2.        The quality, skill, and efficiency of the attorneys involved.

As the Court is likely aware, Class Counsel consists of some of the most experienced and knowledgeable FCRA and class action practitioners in the country. (*See* Dkts. 104-2 through 104-6.) Class Counsel has litigated to successful conclusion some of the largest FCRA class and individual cases on record. (Dkt. 84-8 ¶¶ 11–13; 104-2 ¶¶ 8–10; Dkt. 104-4 ¶¶ 4–6.) Convincing a group of well-funded, sophisticated Defendants that there was genuine risk in taking this case to the class certification and dispositive motion stages of litigation requires outstanding reputations, skills, and experience. The Settlement achieved here verifies that Class Counsel possesses those traits—as Professor Miller confirms: "It takes excellent lawyering to achieve a result as beneficial to the class as the one embodied in the present settlement." (Ex. A, Dkt. 104-1 ¶ 31.)

Moreover, the manner in which the Settlement was reached speaks to Class Counsel's efficiency. The Parties engaged a dual-track litigation strategy, pursuing discovery while simultaneously discussing settlement possibilities along the way. (Dkt. 104-2 ¶¶ 23–29.) While hard-fought and necessitating ingenuity and countless meetings, phone calls, and emails, the settlement in principle was obtained after roughly 19 months of litigation in *this* case. (*Id.* ¶¶ 19, 29.) Apart from the work completed litigating this case, Class Counsel spent significant time and energy investigating potential claims against these same Defendants for roughly two years before filing the present case, including developing knowledge of Acxiom's practices through litigation in Alabama (which case was ultimately settled on an individual basis and for which none of the time spent litigating that matter is included in Counsel's instant lodestar). Such skill and efficiency should be rewarded, as Judge Goodwin noted under similar circumstances in *Jones*:

> Not only did Class Counsel bring significant experience to this case but their participation in eight mediation sessions over the course of a year indicates that

they thoroughly advocated on behalf of the class. Also, the achievement of settlement for the class within two years of commencing litigation demonstrates Class Counsels' efficiency. One of the primary benefits of the percentage method over the lodestar method is its allowance for rewards to attorneys for efficient work and these attorneys should be rewarded accordingly.

*Jones*, 601 F. Supp. 2d at 761. The Court should conclude that this factor favors approving the proposed fee.

### 3.      Complexity and duration of the litigation.

Evaluation of this factor involves the time between filing and settlement as well as the amount of motions practice and nature of discovery supporting the settlement. *Id.* Cases are considered more complex where discovery is formal and disputes arise, and where the law is new, changing, or unclear. *Id.* at 761–62. The duration is measured against the amount of time spent in most other, similar class cases. *Id.* at 762.

Discovery here involved the Parties exchanging information both formally and informally, without the need for Court involvement. In addition to document discovery, Plaintiffs and one of their experts interviewed an Acxiom database employee, and took the depositions of Acxiom witnesses in Little Rock and New York. (Dkt. 104-2 ¶¶ 22–23.) This discovery took place after the Parties fully briefed motions to dismiss the Complaint and to transfer venue, none of which were successful. (*Id.* ¶ 21.)

Regarding complex legal issues, the issue of Defendants' willfulness—proof of which is required to trigger the statutory damages provision of the FCRA—is always difficult because defendants can typically present *some* rationale for arriving at their procedures. Convincing Defendants here that willfulness was at least a fact issue that would survive summary judgment and potentially result in a statutory damages award required significant time and effort, as evidenced by the Parties' eight days of face-to-face settlement negotiations. (*Id.* ¶¶ 24–29.)

### 4.        Risk of non-payment.

This factor pits the relative risk of the specific case against the general risks attendant to class action litigation on a contingency basis. *Jones*, 601 F. Supp. 2d at 762. The risks counsel face is measured by, among other things, the presence of governmental action before the suit, the ease of proving liability and damages, and, if settled, the relative speed at which the settlement was reached. *Id.*

As Judge Goodwin notes, "attorneys undertaking class actions bear substantial risks that the litigation will not result in payment. The attorneys risk defeat at several stages of litigation: class certification, dispositive motions, and finally, trial." *Id.* Professor Miller echoes that point, explaining:

> [C]lass cases involve significant risk and resources—they are always brought on a contingent basis and often result in defeat. As a result, many lawyers are unwilling to risk their financial resources and staff to class cases. It takes excellent lawyering to achieve a result as beneficial to the class as the one embodied in the present settlement.

(Ex. A, Dkt. 104-1 ¶ 31.) The risk to Counsel here was significant given that the Defendants' litigation positions and defenses were ever present. (Dkt. 104-2 ¶ 28.) Thus, unlike *Jones*, where the court concluded that the early settlement discussions and an eye toward resolution weighed against a higher fee, 601 F. Supp. 2d at 763, the discussions and mediations here were drawn out and did not foreshadow a settlement, ending without agreement on multiple occasions despite mediator Randall Wulff's skill and participation. (Dkt. 104-2 ¶¶ 25–29.) As these discussions alone lasted approximately ten months—during which time discovery was actively taking place—and settlement was never certain (*id.* ¶¶ 24–29), there was always risk that Defendants would file—and win—a dispositive motion. The Court should therefore conclude that the risk

that Counsel would end up with no fee and loss of their $200,000 in expenses favors granting the proposed award.

### 5.        Awards in similar cases support the requested fee here.

The Court is aware of course of the years of comparable 25–33% fee awards in other FCRA cases in this District. But these percentage awards are not an anomaly in this District, for present Counsel or in the FCRA. Professor Miller has completed extensive research on the issue of class action attorneys' fees, and is widely recognized as the preeminent expert on the subject in all Circuits (including the Fourth Circuit).[4] In his attached Declaration, Professor Miller notes that, since 1999, attorneys' fee awards generally range from 31 to 33% of the class recovery. (Ex. A, Dkt. 104-1 ¶ 25.) Research in 2003, covering a ten-year period, revealed mean fees across the study of 27%, with the median fee being 30%. (*Id.* ¶ 27.) And although Professor's own research from the 2000s showed that mean fees in federal cases was 24% and the median fee 25%, he characterized "the difference [a]s not substantial." (*Id.* ¶ 28.) Indeed, regarding the fee request here, he concluded that his own study's "data support the inference that a 27.96% fee is entirely reasonable on the facts of this case." (*Id.*) His ultimate finding is that the requested "27.96% fee is within the range of reason when compared against similar cases in this Circuit and around the country." (*Id.* ¶ 24.)

### 6.        Objections.

The Settlement Administrator estimates that the Class Notice reached approximately 94.9% of Class Members. (Dkt. 102-1 ¶ 10.) As noted above, of the 457,000 Class Members, only ten objected, with only one of those objectors even mentioning attorneys' fees. Judge Goodwin characterized a similar notice-success rate as "remarkably high, especially compared to

---

[4] Both Judge Goodwin in *Kay Co. v. Equitable Production Co.*, 749 F. Supp. 2d 455, 467 (S.D. W. Va. 2010) and Judge Chasanow in *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 685 (D. Md. 2013) cite to Professor Miller's study in their discussion of attorneys' fees.

class actions in which class members are unknown, direct notice is impossible, and notice is instead provided through public outlets." *Jones*, 601 F. Supp. 2d at 763. While the settlement in *Jones* garnered only one objection—which was actually an objection to the *amount* of the fees requested—the objection rate there was higher given that the size of the class (25,000) was significantly smaller than here. Therefore, Judge Goodwin's conclusion that the number of objections in *Jones* supported the requested fee applies with greater force here: "[T]his very low incidence of objections, especially in light of the success of the direct notification, not only demonstrates the Class Members' satisfaction with the settlement result, but also shows their implicit approval of its terms, including the attorneys' fee provision." *Id.*

> **7.     Public policy.**

The public policy analysis relates to the perception that class action attorneys are paid too generously, which in turn undermines the integrity of the legal system in the public's eyes. *Id.* at 764. The lone objection to attorneys' fees in *Jones* stated that "[t]wenty-five percent plus expenses is an exorbitant amount requested by attorneys," and that class attorneys "are not doing this for the public good but only as a way to increase their wealth." *Id.* at 764. Courts and attorneys have a duty to safeguard the legal system, and one way in which that is done is adhering to the requirement that attorneys' fees be reasonable. *Id.*

On the other hand, however, is the competing policy "encouraging 'counsel to accept worthy engagements.'" *Id.* at 765. "At the heart of the class action lies the belief 'that the interests of justice are well served by class actions that vindicate rights that might otherwise go unprotected and that spare courts the burden of handling numerous lawsuits, some small and some not so small, arising from a common set of facts.'" *Id.* (quoting Third Circuit Task Force Report, *Selection of Class Counsel*, 208 F.R.D. 340, 355 (Jan. 15, 2002)). Public policy therefore

favors attorneys' fees that ensure "competent, experienced counsel will be encouraged to undertake the often risky and arduous task of representing a class." *Id.*

In this case, public policy favors granting the requested fee. As the Court fairly acknowledged, the rights of the Class would never have been otherwise enforced or vindicated absent the efforts and work of Class Counsel. Because this case deals with a claim for a large Class who received inadequate notice, the Settlement vindicates the rights of thousands of individuals who likely never knew that their rights were violated in the first place. Thus, without Class Counsel's willingness and fortitude to see this case through to a very valuable conclusion for the Class, those individuals would be left with nothing. The Court should therefore conclude that this factor weighs in favor of awarding the requested fee.

## III.    A Lodestar Crosscheck Confirms The Reasonableness Of The Fee Award.

In cases in which fees are awarded as a percentage of the common fund, courts sometimes use a lodestar crosscheck to confirm the reasonableness of the award. *See Jones*, 601 F. Supp. 2d at 760. Use of the crosscheck injects an element of objectivity into the analysis, and permits the Court to take advantage of both commonly used methods of fee evaluation. *Id*. When used for crosscheck purposes, "the 'exhaustive scrutiny' normally required by that method is not necessary" and "the Court may accept as reasonable class counsel's estimate of the hours they have spent working on the case." *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 482–83 (D. Md. 2014) (citing *Kay Co. v. Equitable Prod. Co.*, 749 F. Supp. 2d 455, 469 (S.D. W. Va. 2010) and *Jones*, 601 F.Supp.2d at 766). Strict adherence to numbers should be avoided in the crosscheck context, however, as otherwise it re-introduces "the problems of the lodestar method." *Jones*, 601 F. Supp. 2d at 766; MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.724 (explaining that in common fund cases, judges sometimes ask "for an estimate of the number of hours spent on

the litigation and a statement of the hourly rates for all attorneys and paralegals who worked on the litigation. Such information can serve as a 'cross-check' on the determination of the percentage of the common fund that should be awarded to counsel.").

The traditional lodestar is calculated by multiplying the hours dedicated to a case by each timekeeper's billing rate. *Savani v. URS Prof'l Solutions LLC*, No. 1:06-CV-02805-JMC, 2014 WL 172503, at *8 (D.S.C. Jan. 15, 2014). Dividing the fee requested by the lodestar results in the risk multiplier, with a lower multiplier validating the reasonableness of the fee. *See id.* (noting that "a multiplier of two (2) is preferable to a multiplier of four (4), and so forth"). "Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee." *Jones*, 601 F. Supp. 2d at 766.

While Class Counsel did not properly detail such in their original Memorandum, Professor Miller performed the crosscheck in his analysis of the proposed fee in the Declaration attached thereto (*see* Ex. A), and that analysis confirms the requested fee's reasonableness. Professor Miller began with Class Counsel's accumulated $1,904,469.72 lodestar, which was independently affirmed by a declaration from each Firm setting out their respective billing rates and tasks (Dkts. 104-2 through 104-6; *see also supra*, Section II.B.), amounting to $1,904,469.72. (Ex. A, Dkt. 104-1 ¶ 32.) Class Counsel's declarations also attested to the reasonableness of their hourly rates, citing multiple examples of courts—including those within this District—that have approved them. (Dkt. 104-2 ¶ 34 (noting approval of rates by Judge Spencer in *Berry v. LexisNexis Risk & Information Analytics Group, Inc., et al.*, 3:11cv754-JRS-MHL); Dkt. 104-3 ¶¶ 19–22 (identifying approval of rates by Judge Spencer also in *Berry*); Dkt. 104-4 ¶¶ 14–15; Dkt. 104-6 ¶¶ 18–19, 23.)

Dividing the effective fee of $5,815,526.56 (the total amount requested *less* expense reimbursement), by the lodestar yields a multiplier of 3.05, which Professor Miller noted "is in line with or below multipliers awarded by many other federal courts." (Ex. A, Dkt. 104-1 ¶ 33 (collecting cases from district courts within the Second, Third, Fourth, Ninth and Eleventh Circuits).) This conclusion is consistent with court holdings from across the country, with many courts approving multipliers far higher than 3.05 in cases in which less work was completed. *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) (finding that requested fee amount with a lodestar multiplier of 7.89 was not unreasonable "[g]iven the outstanding settlement in this case and the noticeable skill of counsel"); *In re Charger Commc'n, Inc., Sec. Litig.*, No. MDL 1506, 4:02CV1186CAS, 2005 WL 4045741, at *1, *18 (E.D. Mo. June 20, 2005) (approving lodestar multiplier of 5.61); *In re Excel Energy, Inc., Sec., Derivative & ERISA Litig.,* 364 F. Supp. 2d 980, 989 (D. Minn. 2005) (approving a multiplier of 4.7 in a case that only involved document review, and was resolved without any depositions after two days of mediation); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 589 (E.D. Pa. 2005) (awarding lodestar multiplier of 6.96 despite the fact that the parties engaged mostly in informal discovery and took no depositions); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y 2002) (describing multiplier of 4.65 as "modest" in a case in which plaintiffs conducted no depositions, only interviews, and confirmatory discovery consisted of tens of thousands of pages of documents); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (awarding 3.97 multiplier, reasoning that multipliers between 3 and 4.5 were common); *DiGiacomo v. Plains All Am. Pipeline,* Nos. Civ. H-994137, Civ. H-99-4212, 2001 WL 34633373, at *3, *11 (S.D. Tex. Dec. 19, 2001) (endorsing multiplier of 5.3 despite the fact no depositions were taken and most of the discovery was informal or document review);

*Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1051 (9th Cir. 2002) (affirming multiplier of 3.65 to compensate class counsel for risk of taking the case); *Roberts v. Texaco, Inc.,* 979 F. Supp. 185, 197–98 (S.D.N.Y. 1997) (approving multiplier of 5.5 in what the court described as risky and hard fought litigation); *In re Interpublic Sec. Litig.*, No. 02 Civ.6527(DLC), 03 Civ.1194(DLC), 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) (awarding multiplier of 3.96); *In re WorldCom, Inc., Sec. Litig.*, 388 F. Supp. 2d 319, 353 (S.D.N.Y. 2005) (awarding multiplier of 4). Indeed, both Professor Miller—the leading commentator on class action fees—and the applicable law confirm the reasonableness of the requested fee here.

## IV.   The Requested Fee Is Reasonable Under The Caselaw The Court Identified At The Fairness Hearing.

At the Fairness Hearing, the Court discussed the holdings of *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665 (D. Md. 2013), *Kay Company v. Equitable Production Co.*, 749 F. Supp. 2d 455 (S.D. W. Va. 2010), and *Jones v. Dominion Resource Services, Inc.*, 601 F. Supp. 2d 756 (S.D. W. Va. 2009), all common-fund cases in which courts ultimately awarded class counsel slightly less than the percentage-of-the-fund fee they requested. The pertinent aspects of those settlements and the present one are:

| Case | Size of Common Fund | Amount of Common Fund Requested For Attorneys' Fees [Requested Multiplier] | Amount of Fees Awarded [Awarded Multiplier] |
|---|---|---|---|
| *Singleton* | $2,500,000 | 30% [3.8] | 25% [3.12] |
| *Kay* | $28,000,000 to $30,000,000 | 25% [3.4 to 4.3] | 20% [2.8 to 3.4] |
| *Jones* | $40,000,000 to $50,000,000 | 25% [4.2 to 5.3] | 20% [3.4 to 4.3] |
| **This Case** | **$20,800,000** | **27.97% [3.05]** | |

When compared to the fee request here, these cases only underscore the reasonableness of the proposed fee award.

*Singleton*, also an FCRA class action, involved claims for an employer's alleged use of a disclosure form to obtain background reports on applicants that contained an impermissible liability release, and failing to first provide notice to consumers before taking adverse employment actions against them based on information contained in background reports. 976 F. Supp. 2d at 671–72. After briefing a motion to dismiss, "limited written discovery," and one day of mediation and further negotiations,[5] the Parties presented a proposed settlement to the court for approval. *Id.* at 672. The settlement required Domino's to establish a $2.5 million fund to be distributed to class members making a valid claim. *Id.* at 673. After the parties addressed issues the court raised with the settlement, the court granted preliminary approval and ordered the classes be given notice. *Id.* The parties then moved for final approval of the settlement, and class counsel moved for an award of 30% percent of the settlement fund as attorneys' fees, plus litigation expenses, settlement administration costs, and service awards for the named plaintiffs. *Id.* at 673–74.

The court analyzed the proposed fee using the percentage-of-the-fund method, noting that "fee award reasonableness factors 'need not be applied in a formulaic way' because each case is different, 'and in certain cases, one factor may outweigh the rest.'" *Id.* at 682 (quoting *In re AT&T Corp.*, 455 F.3d 160, 166 (3d Cir. 2006)). The court discussed several factors that were neutral or favored the proposed fee, but noted that in cases of similar size, an award of 25% of the common fund was more the norm. *Id.* at 685. Further, the court emphasized the fact that cases "where discovery is informal and does not involve conflicts over privilege or access to documents are considered less complex and time consuming," and cases are more complex if

---

[5] Plaintiffs do not suggest that these facts show that the *Singleton* settlement was not the product of genuine negotiations and appropriate discovery but, rather, mention them to contrast that case with the discovery that took place here, the expert retentions and consultations, and the multiple face-to-face and telephonic settlement conferences the Parties convened over many months that led to the Settlement. (*See* Dkt. 104-2 ¶¶ 19–33.)

"the applicable laws are new, changing, or unclear," finding the case to be neither. *Id.* at 686. In addition, the court characterized discovery as "relatively straightforward" because of a lack of evidence that discovery was challenging or that counsel "had to fight" for access to the 600 pages of documents Domino's produced. *Id.* at 687. In its lodestar crosscheck analysis, the court justified lowering the percentage from 30 to 25 in large part due to "the lesser complexity and risk of th[e] action." *Id.* at 689 ("Considering the nature of this litigation, the 'technical' violations involved, and the limited discovery, a multiplier closer to 3 is more reasonable under the circumstances and well within the normal range of lodestar multipliers.").

The Settlement here provides a larger common fund than that in *Singleton*, and was preceded by extensive discovery—production of thousands of pages of documents, expert retention and consultations, and depositions. In addition, settlement negotiations here were protracted and contentious, taking multiple in-person and telephonic sessions with one of the most sought-after mediators in the country. (Dkt. 104-2 ¶¶ 21–29.) Ultimately, with far less discovery, effort, and risk, the *Singleton* court arrived at a multiplier of "closer to 3," which at 3.12 is actually *higher* than the 3.05 requested here. *Singleton*, 976 F. Supp. 2d at 689. *Singleton* therefore supports the requested fee and lodestar multiplier here.

*Kay* also supports the requested fee here. In that case, alleging a class of individuals were underpaid oil and gas royalties, class counsel obtained a settlement fund that would, depending on class members' participation, amount to between $28 and $33 million. *Kay*, 749 F. Supp. 2d at 461. Class counsel sought an award of 25% of the fund, making the proposed fee award between $6.75 and $8.25 million, with a multiplier—well above the multiplier sought here—of 3.4 to 4.3. *Id.* This award would have resulted in an hourly rate of between $1,425.34 and $1,794.87. *Id.* at 470. One class member objected to the fee award, noting his displeasure with

class members having to contribute to fees and costs. *Id.* at 467. Applying the percentage method with a lodestar crosscheck (as Class Counsel has done in Sections II.B. and III.), the court concluded that an award amounting to 20% of the fund, which produced a multiplier of between 2.8 and 3.4, was appropriate. *Id.* at 471.

The court highlighted the public policy concerns of protecting the integrity of the legal profession by combating the perception that class action attorneys are overpaid. *Id.* at 468. On the other hand, however, the court also acknowledged "the policy encouraging 'counsel to accept worthy engagements.'" *Id.* at 469. "Attorneys' fees must be sufficient "to ensure that competent, experienced counsel will be encouraged to undertake the often risky and arduous task of representing a class. . . ." *Id.* (alteration in original).

Here, the public policy concerns identified in *Kay* are not present. While the requested award here is higher than in *Kay* as a percentage of the fund, the resulting multiplier (3.05) and hourly rate (approximately $1,590) are far lower than the 3.4 multiplier (should the full amount be funded) and $1,794.87 (high end) hourly rate ultimately awarded in *Kay*, confirming the reasonableness of the proposed award. There is therefore little danger that the fee here could be characterized as exorbitant or undeserved, as it appropriately incentivizes counsel to bring cases like this one.

Moreover, the requested award here is justified in that the case involves claims of inadequate notice under the FCRA, meaning that many Class Members were likely unaware that their statutory rights were ever violated. Because this case was brought to a successful, classwide conclusion, Class Members have been provided notice of their FCRA rights and potential claims. On the whole, the rationale and result in *Kay* supports the award of the requested fee in this case.

*Jones* likewise supports the granting of Class Counsel's request. There, counsel secured a settlement fund of between $40 and $50 million, and requested 25% of that fund as their fee, estimated to be between $10 and $12.5 million. *Jones*, 601 F. Supp. 2d at 757–58. That fee would have returned a multiplier of 4.2 to 5.3, and an hourly rate of $2,130.20 to $2,662.75. *Id.* at 766. Like in *Kay*, one class member objected to the fee, which she characterized as "exorbitant." *Id.* at 764. The court ultimately concluded that a 20% fee was appropriate, as it adequately compensated counsel for its work and returned a "multiplier between 3.4 and 4.3 which is closer to the middle of the range considered reasonable by courts." *Id.* at 766. It also avoided the "windfall" counsel would have received with an award yielding an hourly rate of at least $2,130.20. *Id.*

Again, like in *Kay*, the reasoning and conclusion in *Jones* supports granting Class Counsel's request. Although the percentage is higher than that requested by *Jones* counsel, the reasonableness of the requested fee here is confirmed by a lodestar multiplier (3.05) and hourly rate (about $1,590) that are far below those awarded in *Jones*. The multiplier here is well under the 3.4 to 4.3 range the *Jones* court considered reasonable, and the hourly rate is well below even the lower-end estimate of $1,704.16 awarded in *Jones*. Based on these same points, the Court should conclude that the requested award here is reasonable and justified.[6]

At the Fairness Hearing, the Court also inquired as to the nature of the time expended by Class Counsel, noting that it was unable to perform the appropriate analysis of the fee request without such data. The Court posited that the type of time expended by Class Counsel, and the

---

[6] Additionally, the issue of settlement administration and litigation costs supports granting the requested fee here. In *Singleton*, settlement administration fees were separately reimbursed, as were counsel's costs of litigation. *Singleton*, 976 F. Supp. 2d at 689–90. In *Kay* and *Jones*, administration costs were not mentioned, but $96,113.54 and $91,883.50 in expenses were separately reimbursed. *Kay*, 749 F. Supp. 2d 471–72; *Jones*, 601 F. Supp. 2d at 767. As noted above, Class Counsel has deducted the costs of settlement administration—a significant $747,939—before calculating the percentage fee, and they will not be separately reimbursed for the $200,000 in expenses reasonably incurred in litigating this case.

endeavors performed in order to obtain the Settlement, was relevant to assessing the reasonableness of the multiplier. Class Counsel have provided that documentation, and it additionally supports the fee requested. As set forth in the declarations of Class Counsel and schedules of time expended, Class Counsel has supplied a breakdown of the time spent in connection with this litigation by type of task and stage of the litigation. (*See supra*, Section II.B.) As the Court can see, the hours expended by Class Counsel broadly span all aspects and stages of this litigation, and were necessary not only to bring this matter to its conclusion, but also to effectuate proper administration of it. The diversity of time expended documents that this is not a case, for example, where a disproportionate amount of time was spent simply reviewing correspondence, and where a multiplier of 3 would perhaps be unwarranted.

## V.   Conclusion.

For the reasons set forth above and in Plaintiff's earlier briefing, the Court should award attorneys' fees of $6,015,618.30, or effectively 27.96% of the entire common fund (30% after the deduction of estimated settlement notice and administration costs), in compensation for the benefit conferred on the Class and grant the Class Representatives service awards of $5,000 each.

July 31, 2015

Respectfully submitted,

_____/s/_____
Susan M. Rotkis, VSB 40693
Leonard A. Bennett, VSB 37523
Matthew J. Erausquin, VSB 65434
Casey S. Nash, VSB 84261
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J Clyde Morris Blvd., Suite 1A
Newport News VA 23601
srotkis@clalegal.com
lenbennett@clalegal.com
matt@clalegal.com
casey@clalegal.com
757-930-3660
757-930-3662 (FAX)

Michael A. Caddell *pro hac vice*
Cynthia B. Chapman *pro hac vice*
Craig C. Marchiando *pro hac vice*
**CADDELL & CHAPMAN**
1331 Lamar St., Suite 1070
Houston TX 77010

James A. Francis *pro hac vice*
David A. Searles *pro hac vice*
John J. Soumilas *pro hac vice*
**FRANCIS & MAILMAN PC**
Land Title Building
100 S. Broad Street, 19th Floor
Philadelphia PA 19110

Dale W. Pittman VSB 15673
**THE LAW OFFICE OF DALE W. PITTMAN, P.C.**
The Eliza Spottswood House112-A W. Tabb St.
Petersburg VA  23803-3212
dale@pittmanlawoffice.com
804-861-6000

Christopher Colt North VSB 16955
**THE CONSUMER & EMPLOYEE RIGHTS LAW**
**FIRM, P.C.**
751-A Thimble Shoals Boulevard
Newport News, VA 23606

cnorthlaw@aol.com
Phone: (757) 873-1010
Fax: (757) 873-8375

***Attorneys for Plaintiffs and the Class***

## CERTIFICATE OF SERVICE

I certify that on the 31st day of July, 2015, I electronically filed the foregoing Plaintiffs' Memorandum in Support of Motion For Attorneys' Fees, Expenses, and Service Awards with the Clerk of Courts using the CM/ECF system, which will send notification of such filing to all counsel of record, including:

Charles K. Seyfarth, Esq.
LeClair Ryan PC
Riverfront Plaza - East Tower
951 E Byrd St.
Richmond, VA 23219
Telephone: (804) 916-7159
Facsimile: (804) 916-7259
charles.seyfarth@leclairryan.com

Megan S. Ben'Ary, Esq.
LeClair Ryan PC
2318 Mill Road. Suite 1100
Alexandria, VA 22314
Telephone: (703) 647-5933
Facsimile: (703) 647-5983
megan.benary@leclairryan.com

*Counsel for Sterling Infosystems-Ohio, Inc, formerly known as Acxiom Information Security Services, Inc.*

Alan D. Wingfield (VSB No. 27489)
David N. Anthony (VSB No. 31696)
Timothy J. St. George (VSB No. 77349)
Troutman Sanders LLP
1001 Haxall Point
Richmond, Virginia  23219
Telephone: (804) 697-1200
Facsimile:  (804) 698-1339
alan.wingfield@troutmansanders.com
david.anthony@troutmansanders.com
tim.stgeorge@troutmansanders.com

*Counsel for Defendants, Acxiom Corporation and Acxiom Risk Mitigation, Inc.*

_____/s/ Leonard A. Bennett_____
Leonard A. Bennett